UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHILOMENA AFFUM<br>d/b/a Asafo Market<br>1309 Fifth Street, N.E.<br>Washington, D.C. 20002,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>and<br><br>ED SCHAFER<br>Secretary of Agriculture<br>1400 Independence Avenue, S.W.<br>Washington, D.C. 20250,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

**COMPLAINT FOR
DECLARATORY AND OTHER RELIEF**

Plaintiff Philomena Affum d/b/a Asafo Market, for her complaint against defendants

United States of America and Ed Schafer, Secretary of Agriculture, alleges as follows:

**NATURE OF ACTION**

1.    Plaintiff, who operates a small food store, has herself been charged with no wrongful

conduct, but will be permanently disqualified from participation in the federal food stamp

program if the determination made by the Secretary of Agriculture is permitted to stand. Plaintiff

brings this action pursuant to 7 U.S.C. § 2023(a)(13)-(17) to set aside that determination.

Pursuant to 7 U.S.C. § 2023(a)(15), this action is a "trial de novo" in which "the court shall

determine the validity of the questioned administrative action in issue." Plaintiff also challenges the constitutionality and validity of certain administrative procedures governing the disqualification of stores that participate in the food stamp program.

2.   Since plaintiff took over operation of the store and began participating as a retailer in the food stamp program in 2006, approximately 90 to 95% of the store's gross receipts have been derived from food stamps, which are primarily redeemed through the electronic benefits transfer system. Permanent disqualification would force plaintiff out of business, and, as a result, her store's very existence is threatened by the Secretary's action.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction under 7 U.S.C. § 2023, 28 U.S.C. § 1331, and 5 U.S.C. § 701 *et seq*. An actual controversy exists between plaintiff and defendants, justiciable in character, in respect to which plaintiff requests a declaration of her rights and appropriate further relief pursuant to the provisions of 28 U.S.C. §§ 2201, 2202, and 1651.

4.   Venue is proper in this district pursuant to 7 U.S.C. § 2023(a)(13) and 28 U.S.C. § 1391(e).

## PARTIES

5.   Plaintiff Philomena Affum d/b/a Asafo Market ("Affum") is engaged in the retail sale of food products in the District of Columbia.

6.   The United States of America is a named defendant pursuant to 7 U.S.C. § 2023(a)(13).

7.   Defendant Ed Schafer, Secretary of Agriculture (the "Secretary"), has responsibility for the Department of Agriculture, a subdivision of which is the Food and Nutrition Service. The

Food and Nutrition Service (formerly the Food and Consumer Service) administers the federal food stamp program pursuant to authority delegated by the Secretary.

## ALLEGATIONS RELATING TO ALL COUNTS

### A.  The Charges

8.  Affum owns and operates a small food store -- Asafo Market -- in the D.C. Farmer's Market, located at 1309 5th Street, N.E., Washington, D.C.  Affum operates the store by herself, although she had a part-time employee during some of the time material to this action.

9.  As a result of Asafo Market's location near low-income neighborhoods, a substantial percentage of its sales -- 90 to 95% -- are paid for with benefits from the federal food stamp program, which provides assistance to persons below a certain income level.  Food stamp recipients were formerly issued coupons that could be used to purchase food items.  By mid-1998, the use of coupons in the Washington, D.C. metropolitan area was almost entirely replaced by the issuance of electronic benefit cards (automated debit cards) to food stamp recipients.

10.  The buying or selling of food stamp coupons or electronic benefits is known as "trafficking," 7 C.F.R. § 271.2, and is prohibited.  A retail store in the food stamp program violates the Secretary's regulations if it accepts coupons or electronic benefits in exchange for cash.  *Id.* § 278.2(a).

11.  In October 2007, Affum received a letter from the Food and Nutrition Service ("FNS"), the subdivision of the Department of Agriculture that administers the food stamp program.  The letter, which was dated October 10, 2007, and the enclosed, redacted investigative report charged that an Asafo Market employee had, during February through April 2007, done the following:  (a) on two separate days, gave a total of $30 cash back to an undercover agent who had purchased food with an electronic benefits card, which constituted trafficking; and

(b) on six occasions, allowing the purchase of items "obviously ineligible" under the food stamp program in violation of 7 C.F.R. § 278.2(a).

12. The latter offense was the less serious of the two, and the range of sanctions depended, in large part, on (a) the participation and/or knowledge of the store's management in the violations; and (b) the degree of care exercised by management in training and supervising the store's employees. *See, e.g.,* 7 C.F.R. § 278.6(e)(4), (5).

13. With regard to the alleged trafficking, the charging letter did not allege that Affum herself knew of or benefited from the trafficking, nor was the letter required to do so. Under the provisions of the Food Stamp Act, as amended, 7 U.S.C. § 2011 *et seq.,* store owners who are entirely unaware of their employees' unauthorized illegal acts are held strictly liable for those acts and are subject to all applicable penalties. The letter stated that "[b]ecause of the seriousness of these [trafficking] charges, your firm is being considered for PERMANENT disqualification from participation in the [food stamp program] or for the imposition of a Civil Money Penalty."

**B. The Statutory and Regulatory Scheme as to Trafficking**

14. Between 1982 and 1988, permanent disqualification was the only punishment available to a store whose employee trafficked in food stamps. *See* 7 U.S.C. § 2021(b) (1982). In 1988, however, Congress amended the Food Stamp Act to allow the Secretary to impose a monetary sanction instead of a permanent disqualification in some trafficking cases where the store ownership and management neither knew of nor benefited from the transaction. *See* 7 U.S.C. § 2021(b)(3)(B).

15. Under the amended statute, such a proprietor -- generally called an "innocent owner" -- is eligible for a "civil money penalty" in lieu of permanent disqualification "if the Secretary determines that there is substantial evidence that such store . . . had an effective policy and

program in effect to prevent violations of the [statute] and the regulations . . . ." 7 U.S.C. § 2021(b)(3)(B).

16. The 1988 amendment gave the Secretary significant discretion in determining the appropriate sanction for an innocent owner whose employee engaged in trafficking.    The Secretary, however, promulgated new regulations that (a) created an arduous procedure for innocent owners seeking to benefit from that newly-conferred discretion; and (b) effectively eliminated the Secretary's ability to exercise that discretion.

17. Those regulations require a store accused of trafficking to respond to the charging letter within 10 days of receipt.    That response must include (a) all of the store's evidence in defense of the charges; (b) a request for consideration of a civil money penalty in lieu of permanent disqualification; and (c) evidence that establishes the store's eligibility for a civil money penalty.  7 C.F.R. § 278.6(b)(2)(i)-(iii).

18. Although the 1988 amendment to the statute stated only that "substantial evidence" of the store's policy and program to prevent violations was needed in order to qualify for the civil money penalty, the Secretary's regulations created a rigid standard – called "criteria for eligibility" – that is invariably applied.  A store, regardless of its size, in order to qualify for the civil money penalty, must have the following in place prior to the alleged violation: a "written and dated" policy concerning compliance with the food stamp statute and regulations that reflects (a) the "development and/or continued operation of firm policy and procedures" as to discipline of employees who traffic or commit other violations; and (b) the "development and/or continued operation of procedures for internal review of firm employees' compliance with [food stamp] regulations." 7 C.F.R. § 278.6(i)(l).

19. In addition to the written policy described in the preceding paragraph, a store must, prior to the alleged violation, "have developed and implemented an effective training program for all managers and employees" that includes (a) "dated training curricula"; (b) initial and follow-up training sessions for employees and records of the dates of those sessions; (c) contemporaneous documentation of the participation of each employee in the training sessions; and (d) "[w]ritten materials, which may include [FNS] publications and program regulations." *Id.* § 278.6(i)(2).

20. The FNS, however, publishes no materials for stores to use in order to qualify for a civil money penalty in the event of a trafficking charge. Although the FNS provides retailers with a brochure entitled "The Food Stamp Program -- Training Guide for Retailers," that publication (also available on the Department of Agriculture website) makes no mention of the "criteria for eligibility." Nor does the retailer training video on the same website. There are no official "training curricula," or "written materials," or instructions on how to create and maintain the extensive written records required by the regulations. Indeed, the FNS does not even notify stores of the "criteria for eligibility," other than by providing a 70-page compilation of regulations excerpted from the Code of Federal Regulations. The "criteria" are buried in the 70 pages. The owner of a store who does not have an in-house lawyer typically learns of the "criteria" when the FNS references them in the charging letter. By then, however, it is too late.

21. The Secretary's refusal to exercise the discretion conferred by Congress extends to the civil money penalty itself. Even when this monetary sanction is applied, the formula for assessing it is based solely on the store's legitimate food stamp redemptions, and consequently punishes an innocent owner for doing good business. Under this formula, the Secretary applies a

series of arithmetic multipliers designed to guarantee that virtually every innocent owner will

incur the statutory maximum penalty of $54,000[*] for a first offense. 7 C.F.R. § 278.6(j)(1)-(3).

### C. The Administrative Adjudication Process

22. A proceeding against a store owner begins with the charging letter from the FNS

regional office with responsibility for the store's geographic area. 7 C.F.R. § 278.6(b)(1). A

redacted version of the investigative report is provided as well. As stated above, the accused

store owner is required to provide a response in 10 days that must include (a) all evidence in

opposition to the charge; (b) a request for a civil money penalty in lieu of permanent

disqualification, if the former is desired; and (c) all evidence that establishes the store's

eligibility for the civil money penalty. 7 C.F.R. § 278.6(b)(2)(i)-(iii).

23. The charging letter also directs the store owner to serve his response on -- or,

alternatively, to meet with -- the "officer-in-charge," an FNS employee located in an FNS field

office that is within the region in question. That officer-in-charge typically makes the initial

determination as to whether (a) the alleged violation(s) occurred; (b) the store qualifies for the

civil money penalty; and (c) the amount of the civil money penalty, if applicable. The officer-in-

charge then sends the store owner a letter setting forth the determination and the sanction.

24. Although the Secretary's regulations require the FNS regional office -- or its agent,

the officer-in-charge -- to "review" all of the available evidence, 7 C.F.R. § 278.6(c), the process

cannot be fairly characterized as an evaluation of the evidence by disinterested arbiter. Upon

---

[*] The statutory amount of $40,000 was increased to $54,000 by The Federal Civil Penalties
Inflation Adjustment Act of 1990, as amended. *See* 70 Fed. Reg. 29,573, 29,577 (May 24,
2005); 7 C.F.R. §§ 3.91(b)(3)(ii); 278.6(j).

information and belief, the officer-in-charge generally relies on the investigative report and finds that a violation occurred.

25. In trafficking cases, once a violation is found, the officer-in-charge has no discretion whatsoever in the choice of sanction. The civil money penalty, which may be substituted for permanent disqualification, is available only to those store owners who, prior to the alleged violation, had in place an exceedingly formal training program and written materials, and extensive, contemporaneous records of such a program. In real terms, this requirement makes the civil money penalty available only to chain stores and other concerns large enough to employ in-house counsel or outside general counsel.

26. In trafficking cases, therefore, the officer-in-charge/regional office level yields a predetermined result. The next level – the "Administrative Review Division" – is no different. An employee in that division -- called an administrative review officer -- makes the final agency decision. 7 U.S.C. § 2023(5); 7 C.F.R. § 279.1 *et seq*. The Secretary's regulations give the administrative review officer no more discretion in trafficking cases than that accorded the officer-in-charge.

### D. Judicial Review and the 1996 Elimination of the Automatic Stay

27. Until 1996, the lack of a meaningful administrative adjudication process posed no problem to an innocent owner charged with trafficking. The Food Stamp Act and the Secretary's regulations provided that the decision reached and penalty imposed by the regional office (the first stage of the process) would be automatically stayed upon a request for administrative review. 7 U.S.C. § 2023(a) (1996); 7 C.F.R. § 278.8(a) (1995).

28. As a result of the automatic stay, the administrative decisions, both initial and final, had no impact on a store charged with trafficking until the administrative adjudication process

had been completed. The decision of the administrative review officer became effective 30 days after receipt by the store. 7 U.S.C. § 2023(a) (1996); 7 C.F.R. § 279.8(g) (1995).

29. Within that 30-day period, however, the store could obtain *de novo* judicial review of the administrative decision by filing a complaint in a United States District Court or an appropriate state court. 7 U.S.C. § 2023(a) (1996). That action is "a trial *de novo* . . . in which the court shall determine the validity of the questioned administrative action in issue." *Id.* Moreover, the court was given great discretion with regard to the appropriate remedy: "If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." *Id.*

30. The statute also specifically gave the court the power to stay the administrative action until conclusion of the trial or appeal, upon a showing by the store of (a) irreparable injury if no stay would issue; and (b) a likelihood of success on the merits. *Id.*

31. That judicial review procedure remains in place today with one critical exception: on August 22, 1996, Congress amended 7 U.S.C. § 2023(a) by eliminating the automatic stay in all cases in which permanent disqualification is administratively imposed, including trafficking. The amendment also (a) made the permanent disqualification effective immediately, i.e., upon receipt of notice from the FNS regional office, 7 U.S.C. § 2023(a)(1); and (b) conferred immunity on the Secretary if the decision to permanently disqualify a store was later found to be erroneous by the administrative review officer or by a court: "If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period." *Id.* (18).

32. With the elimination of the automatic stay for trafficking cases and the immediate effect of the regional office's decision to permanently disqualify, the innocent owner now feels acutely the deficiencies in the administrative process.

**E.    The Administrative Proceedings Concerning Affum**

33. After receiving the October 10, 2007 charging letter, Affum opted to meet with the officer-in-charge and did so on November 5. Affum had no basis to contest the charges, and told the officer-in-charge that her employee had admitted the charged conduct. Affum also told the officer-in-charge that the store employee had been trained and that the employee knew that it was prohibited to (a) exchange cash for food stamp benefits; and (b) to accept food stamp benefits for ineligible items. Affum had terminated the employee and so informed the officer-in-charge.

34. On November 14, the FNS regional office, through the officer-in-charge, issued its decision in letter form. The regional office found that (a) the trafficking violations occurred; (b) Affum was not eligible for the civil money penalty because she "failed to submit sufficient evidence to demonstrate that [her business] had established and implemented an effective compliance policy and program to prevent violations of the Food Stamp Program; and (c) Affum was "permanently disqualified from the Food Stamp Program, effective upon receipt of this letter[,] . . . in accordance with [7 C.F.R. §§] 278.6(c) and 278.6(e)(1) . . . ."

35. The November 14 regional office decision did not address the charges that ineligible items had been purchased with electronic benefits other than the general statement that "[w]e find that [all] the violations cited in our charge letter occurred at your firm."

36. Affum submitted a timely request for review of the regional office decision, which was received by the FNS Administrative Review Branch on November 26. By letter dated December 26, 2007, Affum further stated her position, explaining, *inter alia*, that the employee

"who was responsible for this great error was informed from the very beginning that the [electronic food stamp benefits were] strictly for use with food items only and nothing else."

37. Consistent with the FNS practice and procedure, the administrative review officer affirmed the regional office's finding as to the trafficking violation and affirmed the sanction of permanent disqualification.

38. As to the ineligible items charges, the administrative review officer generally affirmed the regional office finding that such violations occurred, but did not address the issue of punishment.

## COUNT I
### (Trial de Novo Pursuant to 7 U.S.C. § 2023)

39. Affum incorporates paragraphs 1 through 38 as if fully pleaded.

40. Under the provisions of 7 U.S.C. § 2023(a)(13)-(17), Affum is entitled to a trial *de novo* in this Court. The Court is to "determine the validity of the questioned administrative action in issue" and, if such action is invalid, the Court "shall enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023(a)(15), (16).

41. After all the proceedings contemplated by the statute, including the trial *de novo*, the Court should issue a judgment declaring that the final agency decision is set aside.

## COUNT II
### (The Secretary's Wrongful Disqualification of Affum from Eligibility for a Civil Money Penalty in Lieu of Permanent Disqualification)

42. Affum incorporates paragraphs 1 through 41 as if fully pleaded.

43. Under 7 U.S.C. § 2021(b)(3)(B), an innocent owner charged with trafficking is eligible for a civil money penalty in lieu of permanent disqualification "if the Secretary determines that there is substantial evidence that [the] store . . . had an effective policy and program in effect to prevent violations of the [statute] and the regulations . . . ." The Secretary,

however, has refused to exercise the discretion mandated by Congress and has promulgated regulations that directly contravene the letter and the spirit of the statutory provision.

44. The regulations in question, 7 C.F.R. § 278.6(i), create onerous requirements for written materials and record-keeping. These requirements, which are given the misnomer "criteria," must be satisfied *in toto* if a store is to become eligible for a civil money penalty. The unfairness of the regulations is exacerbated by the failure of the Secretary to notify store owners in any meaningful way of (a) the strict liability rule and its consequences; (b) the "first-strike-and-out" permanent disqualification; and (c) the rigid "criteria" that must be satisfied. The Secretary has also failed to consider an important aspect of the regulations: their negative and harsh impact on small stores, which typically do not have company counsel to advise them regarding the development of formal training programs that would satisfy the "criteria."

45. The regulations contravene the express intent of Congress, are manifestly contrary to the statute, and are, therefore, invalid. The regulations also violate the Fifth Amendment's due process guarantee, for they are not sufficiently related to any legitimate state interest, are gravely unfair and drastic, flout the law, and trammel upon important property rights. Finally, the regulations are arbitrary, capricious, and otherwise contrary to law.

## COUNT III
### (The Secretary's Unlawful, Arbitrary, and Capricious Computation of the Civil Money Penalty)

46. Affum incorporates paragraphs 1 through 45 as if fully pleaded.

47. The formula contained in the Secretary's regulations for the computation of the civil money penalty, 7 C.F.R. § 278.6(j), is contrary to both the statute and Congress' intent to give stores access to Secretarial discretion. The formula is another example of the Secretary's hostile attitude toward the alternative money sanction that Congress enacted in 1988. The formula is, in

fact, designed to guarantee that every unknowing first offender will incur the statutory maximum $54,000 penalty.

48. In addition to being manifestly contrary to the statute and congressional intent, the regulations containing the formula are arbitrary, capricious, and otherwise contrary to law.

### RELIEF REQUESTED

WHEREFORE, Affum prays for judgment against defendants and asks this Court to:

1. issue a temporary stay of the Secretary's permanent disqualification of Affum from the food stamp program, upon application to be made pursuant to 7 U.S.C. § 2023(17);

2. issue a judgment that (a) sets aside the final agency decision; (b) declares the Secretary's regulations governing eligibility for the civil money penalty in lieu of permanent disqualification to be manifestly contrary to the statute and the Fifth Amendment's guarantee of due process, and to be arbitrary, capricious, and otherwise unlawful; and (c) declares the Secretary's regulations governing computation of the civil money penalty to be manifestly contrary to the statute and the Fifth Amendment's guarantee of due process, and to be arbitrary, capricious, and otherwise unlawful; and (d) imposes a reasonable penalty consistent with the statute and the Constitution;

3. award Affum attorney's fees, disbursements, costs, and interest; and

4. grant Affum such other and further relief as the Court may deem just and proper.

Charles B. Wayne (#935858)
DLA Piper US LLP
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 (fax)

*Counsel for Plaintiff*

JS-44
(Rev.1/05 DC)

## I. (a) PLAINTIFFS
Philomena Affum d/b/a Asafo Market

*1001*

**DEFENDANTS**
United States of America and Ed Schafer, Secretary of Agriculture

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ D.C.

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Charles B. Wayne
DLA Piper US LLP
500 8th Street, N.W.
Washington, D.C. 20004 - (202) 799-4253

Case: 1:08-cv-00300
Assigned To : Lamberth, Royce C.
Assign. Date : 2/21/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U. S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP... (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ A.*Antitrust*

☐ 410 Antitrust

☐ B. *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☒ C.*Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☒ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

☐ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

* (If Antitrust, then A governs)*

## ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt
Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination under
equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if not
administrative agency review or
Privacy Act

*(3)*

| ☐ G. Habeas Corpus/ 2255 | ☐ H. Employment Discrimination | ☐ I. FOIA/PRIVACY ACT | ☐ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| ☐ K. Labor/ERISA (non-employment) | ☐ L. Other Civil Rights (non-employment) | ☐ M. Contract | ☐ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Trial *de novo* under 7 U.S.C. § 2023(a)(13)-(17); challenge to constitutionality and validity of certain statutes and regulations under 28 U.S.C. § 1331 and 5 U.S.C. § 701 *et seq.*

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES ☒ NO   If yes, please complete related case form.

DATE   February 21, 2008 SIGNATURE OF ATTORNEY OF RECORD   *Charles B. Wayne*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

American LegalNet, Inc.<br>www.USCourtForms.com