UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHILOMENA AFFUM<br>d/b/a Asafo Market,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES OF AMERICA<br>and ED SCHAFER,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 08-300 (RCL)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR STAY
OF ADMINISTRATIVE ACTION AND FOR PRELIMINARY INJUNCTION**

Pursuant to 7 U.S.C. § 2023(a)(17), (18) and Federal Rule of Civil Procedure 65, the

Defendants hereby oppose Philomena Affum's application for a stay of the administrative action

and for preliminary injunction. (Dkt. 6.) Affum, the owner of a store that was eligible to accept

food stamp benefits, seeks to stay the administrative penalties resulting from her store's admitted

and repeated violations of the Food Stamp Act. These penalties include a six-month

disqualification from the Food Stamp Program for the sale of ineligible items and a permanent

disqualification from the program for "trafficking" in food stamp benefits (i.e., selling food

stamp benefits for cash).

As the United States Department of Agriculture ("USDA") sets forth below, the Court

should deny the plaintiff's application for three reasons. First, Affum's request for a preliminary

injunction is premature. She has not sought review of the six-month disqualification for selling

ineligible items, and that time period does not lapse until May 16, 2008. Thus, regardless of the

permanent disqualification, Affum is not eligible to participate in the program at this time.

Second, the Food Stamp Act prohibits store owners from obtaining preliminary injunctive relief

when they have been permanently disqualified from the program. Third, Affum cannot meet the standard for preliminary injunctive relief set forth in the Food Stamp Act or Rule 65. In particular, Affum is not likely to prevail on the merits, she has not shown a likelihood of suffering irreparable injury, and the USDA and the public will suffer great harm if a store owner who admits to violating the Food Stamp Act is permitted to re-enter the program.

## BACKGROUND

### A.  THE FOOD STAMP PROGRAM

The USDA's Food and Nutrition Service ("FNS") administers the Food Stamp Program. *See* 7 U.S.C. §§ 2011-2036; 7 C.F.R. 271.3. The Food Stamp Program is designed "to safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011. The program helps increase the food purchasing power of eligible households by supplementing the funds families have to spend on food with food stamp benefits. 7 U.S.C. § 2013. Recipients may use these benefits (or allotments) to purchase food items at authorized retail food stores. *Id.*

The FNS currently delivers food stamp benefits through electronic benefit transfer ("EBT") cards. These EBT cards operate similarly to automated teller machine ("ATM") cards used by banks. At the beginning of each month, the FNS credits a Food Stamp recipient's card with a dollar amount of food stamp benefits for that month. A recipient may then use the EBT card at authorized retail food stores to purchase eligible food items.

A retail store must apply to the USDA to be authorized to accept and redeem food stamp benefits. Once admitted into the program, retail food stores receive one or more EBT terminals. As a recipient makes a purchase, the retailer swipes the EBT card through the EBT terminal, the recipient enters a personal identification number ("PIN") code on a keypad, and the amount of

the purchase is deducted from the recipient's EBT card.  The EBT terminal generates a receipt

for each transaction that reflects the balance remaining in the recipient's account for the month.

The amount of the recipient's purchase is electronically credited to the retail food store owner's

bank account through an arrangement between the store owner and FNS.

The Food Stamp Act strictly prohibits retail stores from exchanging food stamp benefits

for cash.  *See* 7 U.S.C. § 2021(b)(3).  This type of fraudulent transaction is called "trafficking."

The Food Stamp Act and the accompanying regulations also expressly prohibit retail food stores

from accepting food stamp benefits as payment for "ineligible" items, which are generally non-

food items and some prepared hot food items.  *See, e.g.*, 7 U.S.C. § 2021; 7 C.F.R. § 271.2.

Congress has repeatedly emphasized the importance of combating fraud in the Food

Stamp Program.  *See, e.g.*, H.R. Rep. No. 100-828, at 27 (1988) ("Sale of food stamps at a

discount price or trading food stamps for non-food items is a serious offense.  It violates the

purpose of the food stamp program and harms needy food stamp families.")  Trafficking in food

stamp benefits is estimated by the USDA to exceed $1 billion each year.  *See* H.R. Rep. 104-651,

at 68-69 (June 27, 1996), accompanying Pub. L. No. 104-193, 1996 U.S.C.C.A.N. 2202.  "The

USDA has found that most trafficking occurs in smaller retail food stores."  *Id.*  Therefore, FNS

monitors stores, conducts periodic reviews of stores, and will initiate an investigation of a store

when the Agency believes it is warranted by suspicious data.

Selling ineligible items and engaging in trafficking are both punishable by

disqualification from the Food Stamp Program.  *See, e.g.*, 7 U.S.C. § 2021(b)(3).  For selling

ineligible items, the disqualification may last only six months for a first offense.  7 C.F.R. §

278.6.  The disqualification for trafficking, however, is permanent even for a first time offender

unless the USDA, in its discretion, imposes a civil money penalty ("CMP" or "fine") instead.  *Id.*

In order to be eligible for a CMP, the store owner must show, among other things, that she had

an effective policy and program in place to prevent trafficking.  7 U.S.C. § 2021(b)(3).

### B.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The essential facts in this case are undisputed.  Affum owns and operates Asafo Market, a

retail food store located at 1309 5th Street, N.E., Washington, D.C.  (Administrative Record

("A.R.") at 3.)  In July 2006, Affum applied to participate in the Food Stamp Program.  (*Id.* at 3.)

In her application, Affum explicitly agreed that:

- I will follow, and ensure that employees will follow, the Food Stamp Program regulations.  I am aware that violations of program rules can result in fines, legal sanctions, withdraw, or disqualification from the Food Stamp Program.

- I accept responsibility on behalf of the firm for violations of the Food Stamp Program regulations, including those committed by any of the firm's employees, both paid or unpaid, new, full-time or part time.  These include violations, such as but not limited to:  . . . – Trading cash for food stamp benefits . . . – Accepting food stamp benefits as payments for ineligible items.

(*Id.* at 9.)  The FNS authorized Affum to participate in the Food Stamp Program as a retailer in

August of 2006.  (*Id.* at 1.)  In doing so, the FNS informed Affum of all applicable rules and

regulations, including the prohibition on trafficking and selling ineligible items and the penalties

for violations.  (*Id.* at 1-2.)

FNS employs fraud monitoring software to assist in the detection of trafficking.  Within

just two months of becoming an authorized retailer, the Asafo Market triggered several

suspicious activity reports.  In the first category, the Asafo Market processed multiple

transactions (or swipes of the EBT card) on EBT accounts at a single terminal, with most swipes

occurring within just a few minutes of each other and totaling over $100.  (*Id.* at 13-15.)  This

type of activity is suspicious because the size, inventory and check-out lanes of a store like the

Asafo Market generally do not substantiate this amount of EBT activity.  Second, the Asafo

Market processed repeated transactions on the same EBT account within a short period of time. (*Id*. at 16.) In this situation, retailers often attempt to hide trafficking involving a single food stamp recipient by disguising the transaction as multiple transactions. The last report shows 26 suspicious high dollar transactions which occurred at Affum's store. (*Id*. at 17.) Notably, the average transaction for a store similar in size and location to the Asafo Market is only $10.18. (*Id*.) The Asafo Market's average transaction in September 2006, however, was **$140.93**.[1] (*Id*.)

As a result of this suspicious activity, FNS referred Affum for formal investigation. From February 2007 until April 2007, an undercover investigator for FNS witnessed several significant violations of the Food Stamp Act at the Asafo Market. (*Id*. at 25-49.) On two separate occasions, an employee of Affum engaged in trafficking. (*Id*. at 25.) In particular, the employee exchanged a total of $30 in food stamps benefits for $30 in cash for an undercover investigator on April 19 and 27, 2007. (*Id*. at 25, 44-49.) On six separate occasions, the employee (or perhaps Affum herself (*Id*. at 28)) also sold ineligible items to the investigator. (*Id*. at 25-43.) For example, the undercover investigator was able to purchase non-food items such as soap, shaving cream, cleaning pads, plastic containers, deodorant, and body lotion at the Asafo Market using food stamp benefits. (*Id*.)

On October 10, 2007, the FNS informed Affum of the investigation and told her that she was being considered for a permanent disqualification from the Food Stamp Program as a result of the trafficking charge. (*Id*. at 22-24). The letter invited Affum to submit evidence that she qualified for the alternative penalty of a CMP, either in writing or in person. (*Id*.) Affum was also given the opportunity to present "any information, explanation, or evidence regarding the

---

[1] These reports were not ultimately used to substantiate either charge against the Asafo Market because, as set forth below, the FNS undertook a formal investigation.

trafficking violations" to the Officer-in-Charge of the Towson, Maryland Field Office. (*Id.*) The letter emphasized that even if Affum qualified for the CMP for the trafficking charge, she would still be required to serve the six-month disqualification for the sale of ineligible items. (*Id.* at 23.) The letter also informed Affum that if the trafficking violations were found to have occurred and she was ineligible for the CMP, she would be permanently disqualified from the program when she received the letter informing her of the Agency's final decision. (*Id.*)

On November 5, 2007, Affum chose to meet with Officer-in-Charge Sarah Duncan and Program Specialist Joseph Pecora in the Towson, Maryland office to discuss the charges. (A.R. at 50.) At this meeting, Affum admitted that the violations alleged in the October 10 letter occurred and further stated that both she and the clerk knew that the clerk had violated the rules of the Food Stamp Program. (*Id.*; *see also* Affum Affidavit at ¶ 4.) She said she believed the clerk had broken the rules in order to please the customer, and emphasized that it was the employee who broke the rules. (*Id.*) At the meeting, Affum did not provide any documentation to indicate that she should be granted a CMP. Nor did she describe in any detail a training program for her employee to prevent trafficking from occurring. (*Id.*)

On November 14, 2007, the FNS sent its decision letter to Affum. (*Id.* at 57-58.) The FNS informed Affum that it had determined that the alleged violations occurred at her store, and that she would be permanently disqualified from the Program when she received the letter. (*Id.*) The letter also informed her that while she had been considered for the CMP rather than permanent disqualification, she was not eligible for the fine because she had not provided any supporting evidence to show that she had an effective policy and program in place to prevent trafficking. On November 19, 2007, the FNS turned off the EBT terminal at the Asafo Market. (*Id.* at 62.)

On November 24, 2007, Affum appealed the decision to disqualify her permanently from the program to the Administrative Review Branch. (*Id.* at 63.) She did not, however, enclose any supporting documentation or give any further explanation regarding the details of a training policy or program. Notably, Affum did not appeal the six-month disqualification for the sale of ineligible items. Rather, she simply requested that the penalty of permanent disqualification be reduced. (*Id.* at 63, 69-70.)

On January 22, 2008, after a thorough review of the record, the Agency issued its "Final Agency Decision." (*Id.* at 72-76.) The Agency upheld the decision to permanently disqualify Affum from the Food Stamp Program. (*Id.*) This litigation followed.

## ARGUMENT

## I.    PLAINTIFF MUST SERVE A SIX-MONTH DISQUALIFICATION FOR SELLING INELIGIBLE ITEMS

Affum does not dispute that her store committed two separate and distinct violations of the Food Stamp Act: (1) selling ineligible items for food stamp benefits, and (2) trafficking in food stamp benefits. (A.R. at 22-24.) The penalty for selling ineligible items is disqualification from the Food Stamp Program for six-months. *See* 7 C.F.R. § 278.6(e)(5). The penalty for trafficking in food stamp benefits is either permanent disqualification from the Food Stamp Program or a CMP. *Id.*, § 278.6(e)(1)(i). In seeking preliminary injunctive relief, Affum challenges her permanent disqualification for trafficking in food stamp benefits. (Dkt. 6 at 1.) However, she does not challenge the six-month disqualification for selling ineligible items for food stamp benefits. (*Id.*)

Even if Affum prevails on reducing the penalty for the trafficking offense from permanent disqualification to a CMP, she still would be subject to the six-month disqualification

for selling ineligible items.  The USDA made this clear to Affum in its October 10, 2007 letter, which states in pertinent part:

> If you meet all the conditions for a CMP in lieu of **PERMANENT** disqualification, you would still be subject to serving the **SIX MONTH** disqualification for the aforementioned sale of ineligible items.

(A.R. at 22) (emphasis in original).  The relevant regulations also explicitly provide that "Firms assessed a CMP . . . *shall be subject to the applicable penalties included in § 278.6(e)(2) through (6) for the sale of ineligible items*."  *See* 7 C.F.R. § 278.6(i) (emphasis added).  Thus, even if the Court concludes that Affum's permanent disqualification for trafficking should be stayed, she has failed to provide any basis for this Court to order her reinstatement into the program before the six-month disqualification period for selling ineligible items is complete.  *Id.*

Affum's disqualification from the Food Stamp Program began on November 16, 2007. (A.R. at 62.)  The six-month disqualification for selling ineligible items remains in effect through May 16, 2008.  Affum's March 20, 2008 request for an injunction reinstating her into the Food Stamp Program is plainly premature at this time, and should therefore be denied.

## II.    PRELIMINARY RELIEF IS NOT AVAILABLE IN CASES OF PERMANENT DISQUALIFICATION

Affum relies on 7 U.S.C. § 2023(a)(17) in seeking preliminary injunctive relief.  (Dkt. 6 at 13-14.)  Section 2023(a)(17) empowers the Court to "temporarily stay" the "administrative action pending disposition of [the] trial or appeal."  However, Affum completely ignores 7 U.S.C. § 2023(a)(18), which provides that a stay of administrative action is *not* available in cases where, as here, a store owner has been permanently disqualified from the Food Stamp Program. Specifically, § 2023(a)(18) states that:

> Suspension of stores pending review – Notwithstanding any other provision of this subsection, any permanent disqualification of a

> retail food store . . . shall be effective from the date of receipt of
> the notice of disqualification.  If the disqualification is reversed
> through administrative or judicial review, the Secretary shall not be
> liable for the value of any sales lost during the disqualification
> period.

*See* 7 U.S.C. § 2023(a)(18).  The implementing regulation also plainly provides that "permanent disqualification actions taken in accordance with § 278.6(e)(1) of this chapter shall not be subject to such a stay of administrative action."  *See* 7 C.F.R. § 279.7(d) (formerly found at § 279.10.)

At least two courts have held that store owners subject to permanent disqualification are statutorily barred from obtaining preliminary injunctive relief.  *See Ameira Corp. v. Veneman*, 169 F. Supp.2d 432, 436-37 (M.D.N.C. 2001); *Ilaian v. United States Dep't of Agriculture*, 87 F. Supp.2d 1047, 1048 (S.D.Cal 2000).  In *Ameira Corporation*, the owner of a grocery store sought preliminary injunctive relief after the USDA permanently disqualified him based on two incidents of trafficking.  *Ameira Corp.*, 169 F. Supp.2d at 433-34.  The court held, however, that the Food Stamp "Act does not allow a stay to be granted in the case of food stamp trafficking." *Id.* at 436.

In reaching this conclusion, the court relied on the text of the statute as well as the legislative history of 7 U.S.C. § 2023(a)(18).  *Id.*  In particular, the court noted that the House Report accompanying § 2023(a)(18) provides that:  "To combat trafficking . . .  [t]he committee believes that where an authorized retail food store or wholesale food concern is permanently disqualified, such disqualification should be effective from the date of receipt of the notice of disqualification *pending any administrative or judicial review*.  *Id.*  (emphasis added).  The court found that while Congress enabled a store owner to challenge the permanent disqualification, it did not enable a store owner to obtain preliminary relief.  *Id.* ("Because a district court may not

stay an administrative action during judicial review in trafficking cases such as this one, Plaintiff is not entitled to a stay pending a trial *de novo* or pending administrative review.")

Moreover, in *Ilaian*, the owners of a small market that "caters to a large number of food stamp recipients" sought a stay of their permanent disqualification from the Food Stamp Program. *Ilaian*, 87 F. Supp.2d at 1047. In denying the plaintiffs' motion, the court found that "the plain language of 7 U.S.C. § 2023(a)(18) reflects that a stay is not available in cases of permanent disqualification for trafficking." *Ilaian*, 87 F.Supp.2d at 1048. The court further found that "the regulations promulgated to implement this section support this plain meaning" (i.e., 7 C.F.R. § 279.7) and that the regulation is "entitled to deference." *Id.*[2]

In this case, Affum has availed herself of the detailed remedial scheme set forth in the Food Stamp Act. Under this scheme, Affum is entitled to a trial *de novo* on her trafficking claim. This standard of review is plainly more favorable to Affum than she would otherwise be afforded under the Administrative Procedure Act ("APA"). *Bon Supermarket v. United States*, 87 F.Supp.2d 593, 598 (E.D.Va. 2000) (noting that, under the APA, agency decisions are reviewed under the arbitrary and capricious standard). However, the Food Stamp Act does not permit store owners who have been permanently disqualified from the program to obtain preliminary injunctive relief. The court should accordingly hold that Affum, like the plaintiffs in *Ameira* and *Ilaian*, may not seek preliminary injunctive relief.[3]

---

[2] Defendants note that the court in *Lazaro v. United States*, 186 F. Supp.2d 1203 (M.D. Fla. 2001) reached a contrary result. The court found that 7 U.S.C. § 2023(a)(18) was ambiguous and that the USDA's interpretation of that provision was not reasonable. *Id.* Defendants respectfully submit that the decisions in *Ameira* and *Ilaian* present the more persuasive analysis.

[3] In seeking interim relief, Affum also relies on Rule 65. (Dkt. 6 at 13-14.) However, where Congress has implemented a detailed remedial scheme, that scheme trumps generally applicable rules. *Cf. Harrison v. Bowen*, 815 F.2d 1505, 1514-15 (D.C. Cir. 1987).

### III.    PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

The grant of a preliminary injunction is a drastic and unusual judicial measure. *Marine Transport Lines, Inc. v. Lehman*, 623 F. Supp. 330, 334 (D.D.C. 1985). "[T]he party seeking injunctive relief bears a substantial burden to show that the party is entitled to such an extraordinary remedy." *Competitive Enterprises Institute, Inc. v. United States Department of Agriculture*, 954 F. Supp. 265, 269 (D.D.C. 1996).

Issuance of a preliminary injunction under Rule 65 is appropriate only if the plaintiff clearly demonstrates that: (1) she has a substantial likelihood of succeeding on the merits; (2) she will suffer irreparable harm if the injunction is not granted; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest will be furthered by the injunction. *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1317-18, 1325 (D.C. Cir. 1998); *see also Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958). The standard set forth in the Food Stamp Act similarly requires the party seeking a stay to demonstrate a likelihood of prevailing on the merits and irreparable harm. 7 U.S.C. § 2023(17); 7 C.F.R. § 279.7(d). However, the Food Stamp Act does not include as factors the public interest or the impact a stay would have on other interested parties. *Id*. As the USDA demonstrates below, Affum has failed to meet these standards in this case. Thus, even assuming that interim injunctive relief is available in a case of this type, Affum is not entitled to such interim relief in this case.

### A.  Affum Is Likely To Fail On The Merits

Affum admits that her store violated the Food Stamp Act several times by selling ineligible items and trafficking in food stamp benefits. (Compl. ¶ 33; Affum Affidavit at ¶ 4.)

Thus, she does not contest the factual predicate for her disqualification from the Food Stamp Program.

Instead, Affum contends that the penalty for trafficking in food stamp benefits is unlawful. Specifically, she alleges that the applicable USDA regulations are arbitrary and capricious and that they violate her substantive due process rights under the Fifth Amendment. Affum further contends that, even though the FNS did not assess a CMP against her, the amount of any CMP would be too high. None of these claims has merit.

**1. Standards Of Review**

The court's review of Affum's permanent disqualification for trafficking is subject to two markedly different standards. *Bon Supermarket*, 87 F. Supp.2d at 598. Under the first standard, the Court reviews *de novo* the FNS' finding that Affum violated the Food Stamp Act. *Id.* "The scope of [this] review . . . is significantly beyond the scope of review available under the general provisions of the Administrative Procedure Act." *Id.*; *see also Cross v. United States*, 512 F.2ds 1212, 1216 (4th Cir. 1975). Affum has the burden of showing by a preponderance of the evidence that the violations did not occur. *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997).

The appropriate standard for the second inquiry is less clear. The United States Court of Appeals for the Sixth Circuit has found that the decision to impose a specific penalty for trafficking (i.e., permanent disqualification or CMP) is committed to agency discretion by law and is, therefore, not reviewable by a court. *See, e.g.*, *Goldstein v. United States*, 9 F.3d 521, 524 (6th Cir. 1993) ("The regulations confer on the FNS discretion to mitigate by imposing only a civil money penalty, the sanction of permanent disqualification for trafficking and the regulations also require the satisfaction of certain criteria before such discretion may be

exercised.  As the decision to mitigate relates to the severity of the sanction, the FNS' denial of

Goldstein's request for a civil money penalty in lieu of permanent disqualification is precluded

from our review[.]") (internal citations omitted); *Bakal Bros., Inc. v. United States*, 105 F.3d

1085, 1088-89 (1997) (same).  Under this standard, the Court would simply conduct a *de novo*

review of whether trafficking occurred.  It would not review the USDA's exercise of discretion

to disqualify Affum permanently in lieu of a fine.  *Id.*

      Other courts have concluded that they can review the penalty imposed for trafficking.

However, these courts recognize that the inquiry at this stage "is strictly cabined – the court only

determines whether the agency's sanction was arbitrary and capricious."  *Bon Supermarket*, 87 F.

Supp.2d at 598; *see also Carlson v. United States*, 879 F.2d 261, 263 (7th Cir. 1989) (noting that

"a penalty may only be set aside if [it is] arbitrary and capricious"); *Willy's Grocery v. United

States*, 656 F.2d 24, 26 (2d Cir. 1981) (same).  Where the FNS has "followed the applicable laws

and regulations, its decision may not be overturned as arbitrary and capricious."  *Kassem v.

United States*, 2003 WL 21382906, at *3 (W.D.N.Y. April 15, 2003).  Affum has failed to meet

either standard.

      **2.  The Asafo Market Engaged In Trafficking**

      The undisputed evidence in this case reflects that trafficking occurred in the Asafo

Market.  Indeed, Affum herself has repeatedly admitted that trafficking occurred on two separate

occasions in her store.  In the Complaint, Affum states that when she met with the FNS regarding

the trafficking allegations she "had no basis to contest the charges, and told the officer-in-charge

that her employee had admitted the charged conduct."  (Compl. ¶ 33.)  Similarly, in her affidavit,

Affum acknowledges that her employee "admitted" to trafficking in food stamps.  (Affum

Affidavit ¶ 4.)

The documentary evidence in the Administrative Record confirms that trafficking took place in the Asafo Market. (A.R. at 22-49.) For example, the investigative reports plainly detail an employee at the Asafo Market exchanging cash for food stamp benefits. (*Id.* at 44-49.) On two separate occasions, the employee of Asafo Market provided cash to an FNS agent in exchange for food stamp benefits. (*Id.*) Even under the *de novo* standard of review, the Court should find that trafficking took place at the Asafo Market. *See, e.g.*, *Phany Poeng v. United States*, 167 F. Supp.2d 1136, 1140 (S.D. Ca. 2001) (finding that violations took place since the "plaintiff candidly admits that violations did occur").

The fact that Affum, the owner of Asafo Market, may not have personally engaged in trafficking does not change this result because owners are strictly liable for the actions of their employees. *Traficanti v. United States*, 227 F.3d 170, 174-75 (4th Cir. 2000). "Congress chose such a strict liability regime in order to ensure that the person in the best position to prevent fraud – the owner – had sufficient incentive to stop wayward employees from stealing from the government." *Traficanti*, 227 F.3d at 174-75; *see also Kim*, 121 F.3d at 1274 ("Congress believed that punishing innocent employers for the misdeeds of their employees would create a powerful incentive for employers to guard against illegal or improper conduct.") Thus, "[t]he innocence of the store owner is relevant only to determine *which* sanction shall be imposed – a civil penalty or permanent disqualification – not *whether* a sanction shall be imposed." *Bakal Bros.*, 105 F.3d at 1088 (emphasis in original).

Under the Sixth Circuit's approach in *Goldstein*, 9 F.3d at 523, and *Bakal Brothers*, 105 F.3d at 1088-89, this should end the Court's inquiry. The decision whether to disqualify Affum permanently or to issue her a fine is committed to the discretion of the USDA. 7 U.S.C. § 2021(b)(3)(B) ("[T]he Secretary shall have the discretion to impose a civil money penalty[.]")

The Court should not review the USDA's exercise of that discretion in this case. Moreover, even if the Court reviews the penalty in this case, it should not disturb the UDSA's exercise of discretion because it is not arbitrary or capricious.

### 3.  The Food Stamp Act Mandates Permanent Disqualification For Affum

The Food Stamp Act requires the FNS to disqualify permanently a store owner, even upon the first occasion of trafficking, unless it "determines that there is substantial evidence that" the store "had an effective policy and program in effect to prevent violations[.]"  7  U.S.C. § 2021(b)(3)(B).  The store owner also must show that she "was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation."  7 U.S.C. § 2021(b)(3)(B).  In accordance with the Food Stamp Act, the USDA promulgated regulations to determine if a store owner qualifies for a fine.  Under these regulations, a store owner must show that:  (1) the store had an effective compliance policy; (2) the store's compliance program was in effect prior to the violation; (3) the store developed and instituted an effective personnel training program; and (4) the store's ownership was not involved in the violation.  *See* 7 C.F.R. § 278.6(i).  If the FNS concludes that the store owner meets this standard, then it may assess a CMP in lieu of permanent disqualification.  7 U.S.C. § 2021(b)(3)(B).

Congress added § 2021(b)(3) to the Food Stamp Act by enacting the Hunger Prevention Act of 1988, Pub. L. No. 100-435.  The House Report accompanying the Hunger Prevention Act recognizes that the FNS has the discretion to impose a CMP instead of disqualification, but states that the FNS may exercise that discretion *only if* it determines that there is substantial evidence that the store had an effective policy in place to prevent these violations.  H.R. Rep. No. 100-828, at 27-28 (1988).  *See also Freedman v. United States Dep't of Agriculture*, 926 F.2d 252, 257 (3d Cir. 1991) ("The amendment to section 2021(b) was meant to provide discretion for

imposition of a less severe punishment than disqualification for trafficking offenses, provided the employer had implemented an effective program to prevent such independent violations.").  The House Report also emphasized that it "expects the Department of Agriculture to continue to vigorously pursue and punish those perpetrators involved in food stamp fraud, including store personnel and owners that are culpable and negligent with respect to trafficking offenses."  *Id.*

In this case, Affum alleges that she told the Officer-in-Charge that "the store employee had been trained and that the employee knew that it was prohibited to (a) exchange cash for food stamp benefits; and (b) to accept food stamp benefits for ineligible items."  (Affum Affidavit, ¶ 4.)  On appeal at the administrative level, Affum further stated that "My helper who was responsible for this great error was informed from the very beginning that the EBT was strictly for use with food items only and nothing else."  (A.R. at 69.)  Even assuming that these facts are true, the FNS did not abuse its discretion in concluding that Affum did not provide "substantial evidence" that she "had an effective policy and program in effect to prevent violations[.]"  7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i).

Affum has failed to explain to the USDA (and this Court) when this employee received training; the specific training that she received; who provided the training; whether the employee received training one time or whether there was follow-up training; whether the store tested this employee's understanding of the Food Stamp Act; and whether Affum monitored the employee's compliance with the Food Stamp Act's prohibition on trafficking.  Nor has Affum submitted *any* written documentation that reflects the training provided to this employee.

A store owner's uncorroborated assertion that she told her employee not to exchange food stamp benefits for cash is insufficient to justify a fine instead of permanent disqualification. *See Traficanti*, 227 F.3d at 175; *Thabit v. United States Dep't of Agriculture*, 2003 WL 1798302,

16

at *4 (N.D. Cal. April 3, 2003).  In *Traficanti*, for example, a permanently disqualified store

owner argued that he should have received a fine instead of being disqualified.  *Traficanti*, 227

F.3d at 175.  In rejecting his argument, the Fourth Circuit held that:

> Traficanti's permanent disqualification from the food stamp
> program is well within the bounds of agency discretion.  Indeed his
> permanent disqualification is mandated by the statute itself.
> Congress specifically required innocent owners to show that an
> effective anti-fraud program existed in order to qualify for the
> monetary fine in lieu of disqualification. . . . **Store owners cannot
> simply attest to having effective antifraud programs; rather,
> they must prove it.  Traficanti fell well short of meeting the
> standards of the statute or the regulations.  The FNS decision
> not to convert the permanent disqualification into a fine was
> mandated by statute**.

*Id.* (emphasis added); *see also Goldstein*, 9 F.3d at 522-25 (rejecting argument by store owner

that he had effective policy based on "training sessions with his employees [that] instruct[ed]

them on the applicable regulations."); *Thabit*, 2003 WL 1798302, at *4 (upholding FNS

conclusion that a store owner's providing an employee "walkthrough training" was insufficient.)

A contrary ruling would render the statutory language regarding an "effective policy and

program" null, because every store owner could assert after trafficking occurred that she had told

the culpable employee not to exchange food stamp benefits for cash.  Such a result is plainly

inconsistent with the penalty scheme set forth in the Food Stamp Act.  *Cf. Kim*, 121 F.3d at 1276

(observing that the Food Stamp Act prohibits the FNS from imposing "a civil money penalty in

lieu of permanent disqualification for a trafficking violation where the store did not have in

effect an effective policy and program to prevent violations[.]").  In these circumstances, the

FNS' decision to disqualify Affum permanently was not only consistent with the Food Stamp

Act, it was required by the statute.  *Traficanti*, 227 F.3d at 175.

In her application for a stay, Affum makes no effort to show how she satisfied the requirements of the Food Stamp Act.  (Dkt 6 at 16-23.)  Rather, she devotes her entire brief to addressing alleged deficiencies in the FNS' implementing regulations.  (*Id.*)  Affum's failure to show how she fulfilled the *statutory* requirements is dispositive.  *Traficanti*, 227 F.3d at 175.

In addition, Affum's arguments regarding the deficiencies in the implementing regulations lack merit.  Affum contends that the regulations contain "unyielding requirements" that "reflect a reluctant or hostile attitude toward the alternative monetary sanction."  (Dkt. 6 at 17-19.)  However, cases cited in plaintiff's own brief show that the FNS has granted fines in lieu of permanent disqualification in trafficking cases.  *See, e.g.*, *Corder v. United States*, 107 F.3d 595, 596 (8th Cir. 1997) ("FNS determined that Corder meets the criteria for a monetary penalty set forth in 7 C.F.R. § 278.6(i)[.]"); *Freedman*, 926 F.2d at 254 ("[T]he FNS informed Freedman that it had determined that she did have an effective policy to prevent violations[.]")  Other reported cases also demonstrate that the FNS has issued fines instead of permanently disqualifying store owners.  *See, e.g.*, *Vasudeva v. United States*, 214 F.3d 1155, 1157-58 (9th Cir. 2000) ("The government agreed that all of the store owners in this case met [the necessary] conditions and offered them the opportunity to pay a CMP.").  In *Vasudeva*, the court further noted that "[t]he USDA in fact exercises discretion on a case-by-case basis in evaluating whether store owners are qualified for a CMP in lieu of permanent disqualification[.]"  *Id.* at 1159.  Indeed, "[e]ach year retail food stores qualify and are issued CMPs in lieu of permanent disqualification for trafficking."  (Gold Decl. at ¶ 22.)

Affum relies heavily on the Eighth Circuit's decision in *Ghattas v. United States*, 40 F.3d 281 (8th Cir. 1994), but that case is entirely consistent with the FNS' decision in this case.  (Dkt. 6 at 18-19.)  In *Ghattas*, the Eighth Circuit concluded that the FNS had improperly refused to

even consider whether the store owner was eligible for a CMP.  *Ghattas*, 40 F.3d at 287.  The

store owner had not responded to the FNS' charge letter within ten days, as required by the

regulations.  *Id.*  In this case, however, the FNS did consider Affum for a CMP.  (A.R. at 57.)

Specifically, the FNS informed Affum that "[w]e considered your eligibility for a trafficking

civil money penalty (CMP) . . . [but] we have determined that you are not eligible for the CMP

because you failed to submit sufficient evidence to demonstrate that your firm had established

and implemented an effective compliance policy and program to prevent violations of the Food

Stamp Program."  (*Id.*)  The FNS' ultimate conclusion that Affum was not eligible for a fine

does not mean that it did not consider her for one.

        Affum also alleges that the USDA's implementing regulations – which have been in

effect for over 15 years – are "in direct conflict with the Food Stamp Act."  (Dkt. 6 at 16-19.)

Specifically, she contends that the regulations require a store owner to present more evidence

than the statute requires in showing that they have an effective training program.  (*Id.*)  This

argument fails for two reasons.  First, as noted above, Affum failed to meet the standard set forth

in the Food Stamp Act itself.  Thus, regardless of the regulations, Affum is not entitled to a CMP

under the statute.

        Second, the USDA's promulgation of the regulations at issue in this case is based on a

reasonable interpretation of the Food Stamp Act and is well within the agency's discretion.

Indeed, numerous federal circuit courts have applied these regulations in cases similar to

Affum's.  *See, e.g.*, *Traficanti*, 227 F.3d at 174-75; *Kim*, 121 F.3d at 1274-75.  These courts have

done so without even hinting that they are inconsistent with, let alone "in direct conflict with,"

the Food Stamp Act.  *Id.*  The USDA's decision to articulate the type and substance of the

evidence that it considers in determining whether to exercise its discretion to grant a CMP in lieu

of permanently disqualifying a store owner is in full accord with the Food Stamp Act's provision

that "the Secretary shall have the discretion to impose a civil money penalty . . . if the Secretary

determines that there is substantial evidence that such store . . . had an effective policy and

program in effect to prevent violations." *Id.* Affum's inability to meet that standard in this case

does not mean that the regulations violate the Food Stamp Act.

Finally, Affum contends that the Secretary's regulations are arbitrary and capricious

because they fail to consider the impact on small stores. (Dkt. 6 at 20-22.) Affum asserts that

"the documentation requirements virtually ensure that a small store owner will never qualify for

a civil money penalty and, thus, never trigger the exercise of secretarial discretion contemplated

by Congress." (*Id.*) However, two cases cited in plaintiff's own brief belie this contention. *See*

*Corder*, 107 F.3d at 596 (fine issued to owner of "a small 7-Eleven store in St. Louis.");

*Freedman*, 926 F.2d at 253 (fine issued to owner of "Superior Store Number 3 in Harrisburg,

Pennsylvania.")  In addition, "[l]arge, medium, and small retail food stores have all qualified for

trafficking CMPs" in lieu of permanent disqualification. (Gold Decl. ¶ 22.)

Moreover, Affum's claim of undue burden on small store owners is exactly backwards:

owners of smaller stores should have an easier time documenting the training that they provide to

employees than large retail stores. Affum had a single employee to train. She was able to apply

for entry into the Food Stamp Program herself, and she was able to accept on average more than

$15,000 in benefits from the program each month. Affum should have been able to train

effectively her lone employee. Affum's assertion that it was more difficult for her to comply

with the regulatory requirements than it would be for a large retail store with many employees to

train is not supported by the record or by logic.

In addition, the USDA notes that it thoughtfully considered this issue in the preamble to the final regulation.  *See* 55 Fed. Reg. at 31810.  In responding to a comment regarding small stores, FNS stated that:  "Trafficking is a serious offense for which the statute requires permanent disqualification unless substantial evidence of an effective policy and program to prevent such violations exists. The Department believes that it is imperative that firms wishing to be determined eligible for a civil money penalty in lieu of permanent disqualification for trafficking provide written evidence of an effective policy and program to prevent such violations in order for an appropriate determination to be made. . . .  Although such firms may not have developed written policies in the past, small business[es] are not precluded from eligibility for a civil money penalty since they may now establish and implement such a compliance policy and program.  Further, the Committee report did not differentiate between acceptable compliance programs in smaller stores and those acceptable in larger stores."[4]  *Id.*

### 4.  The FNS Did Not Violate Affum's Substantive Due Process Rights

Affum contends that her permanent disqualification from the Food Stamp Program violates her Fifth Amendment substantive due process rights because it is "not sufficiently keyed to any legitimate state interest." (Dkt. 6 at 22.)  However, "it is beyond dispute that the prevention of illegal trade in food stamps is a legitimate government purpose, which itself serves the overarching purposes of the food stamp program." *TRM, Inc. v. United States*, 52 F.3d 941, 946 (11th Cir. 1995).  Accordingly, the decision to disqualify Affum permanently does not run afoul of the Fifth Amendment as long as it is rationally related to this end.  *Id.*

---

[4] Affum contends that she never received any information about how to train employees and that the agency did not inform her of the potential penalties for trafficking.  (Dkt. 6 at 21.)  Both assertions are demonstrably false.  (A.R. at 1-9.)

"Congress believed that punishing innocent employers for the misdeeds of their employees would create a powerful incentive for employers to guard against illegal or improper conduct." *Kim*, 121 F.3d at 1274.  Moreover, "[a] strict liability regime places ultimate economic responsibility for fraud on the owner, who is in the best position to deter deception *ex ante*. *Traficanti*, 227 F.3d at 175.  Thus, in short, "[t]he imposition of liability on innocent store owners for their employees' trafficking violations is a rational method of deterring illegal food stamp trade." *TRM, Inc.*, 52 F.3d at 947; *Kim*, 121 F.3d at 1274 ("Clearly, permanently disqualifying store owners guilty of intentionally trafficking in food stamps is rationally related to the legitimate goal of reducing the instances of trafficking violations."); *Traficanti*, 227 F.3d at 174-75 (holding in the case of a permanently disqualified store owner that "[n]o violation of substantive due process occurred[.]")[5]  In this case, the FNS did not violate Affum's substantive due process rights by permanently disqualifying her from the Food Stamp Program.[6]

### C.  A Stay Will Adversely Affect Food Stamp Recipients And The United States

Trafficking in food stamps is anathema to the primary objective of the Food Stamp Program – namely, increasing the food purchasing power of low income households.  *Bon Supermarket*, 87 F.Supp.2d at 601-02 (noting that "trafficking is directly at odds with the

---

[5] Nor is plaintiff's permanent disqualification "gravely unfair."  (Dkt. 6 at 22.)  As Affum herself recognizes, "grave unfairness" requires "a deliberate flouting of the law[.]"  (*Id.*)  The FNS did not flout the law in this case.  To the contrary, the FNS applied the standard set forth in the Food Stamp Act to Affum, as it did to the store owners in cases such as *Traficanti* and *Kim*.

[6] The FNS did not issue a CMP to Affum; it permanently disqualified her from participating in the program.  Affum nevertheless contends that a fine would have been too high, had one been imposed.  (Dkt. 6 at 22-23.)  This assertion, even if true, is not a ripe issue in this case at this juncture.  Indeed, as someone who is permanently disqualified from the program, Affum lacks standing to challenge the manner in which the FNS calculates CMPs.  *Cf. Middleton v. Kelly*, 2008 WL 859189, at *1 (D.D.C. April 1, 2008).

principal purpose of the food stamp program[.]")  "Congress has repeatedly expressed its

concern that trafficking in food stamps was undermining the goals of the food stamp program."

*Abdelaziz v. United States*, 837 F.2d 95, 98 (2d Cir. 1988).  This concern, which is shared by the

USDA, is plainly valid and warranted.  Indeed, the USDA's Office of Inspector General believes

that trafficking in food stamp benefits exceeds $1 billion dollars each year.  *See* 1996

U.S.C.C.A.N. at 2202.  In an effort to reduce trafficking, Congress has implemented a strict

liability regime that imposes permanent disqualification even for first time offenders.  *See, e.g.*, 7

U.S.C. § 2021(b)(3)(B).  Permitting the owners of stores in which trafficking occurs (like Affum)

to remain in the Food Stamp Program without satisfying the applicable statutory and regulatory

requirements will likely hurt food stamp recipients and the USDA's ability to fulfill the goals of

the Food Stamp Act because it will diminish the deterrent effect of the strict liability regime

Congress created.  *Cf. Kim*, 121 F.3d at 1274.

Moreover, the USDA trusts retail food store owners like Affum to comply with the

applicable rules and regulations of the program and not to engage in trafficking.  When, as here,

that trust is broken, it is ultimately the public and the very people that the Food Stamp Program

was designed to assist who suffer the most, as already limited federal funding is reduced even

more through trafficking.[7]

Affum argues that "during the pendency of this litigation, [she] has every incentive to

ensure that no violations occur."  (Dkt. 6 at 15)  But this same incentive existed *before* her

employee engaged in trafficking during 2007.  However, even though the FNS provided Affum

---

[7] FNS conducted a review of other authorized retail food stores located within 1 mile of Asafo
Market and found that there are at least 60 other authorized retail stores within the 1 mile radius;
therefore, FNS is not concerned about the potential hardship for recipients who were previously
customers at Asafo Market.

with written materials and a video when she entered the program (A.R. at 1-2), Affum has not presented any evidence that shows that she presented these materials to her employee.  Indeed, Affum falsely contends "that the Department of Agriculture . . . never provided me with any written materials that would have assisted me in achieving compliance."  (Affum Affidavit at ¶ 6.)  In these circumstances, the public, the USDA, and the recipients of food stamp benefits should be able to rely on the enforcement mechanism established by Congress in combating fraudulent trafficking.  Affum should remain disqualified from the program.

### D.  Plaintiff has Failed to Establish Irreparable Injury

Affum alleges that her store will go out of business if the Court does not grant a stay of administrative action because "90-95% of Asafo Market's gross receipts [are] derived [from] food stamp purchases."  (Dkt. 6 at 14-15.)  However, even assuming that this type of economic injury is "irreparable," Affum has not presented any evidence to substantiate these claims other than her own affidavit.  That is not enough.  In *Phany Poeng v. United States*, 167 F.Supp.2d 1136 (S.D. Cal. 2001) the plaintiff argued that losing "half his customer base will force him out of business."  *Phany Poeng*, 167 F. Supp.2d at 1142.  In concluding that the plaintiff had not shown irreparable harm, the court noted that he "has not established, via objective and reasonable documentary evidence, that [he] will necessarily lose fifty percent of his business while barred from the food stamp program."  *Id.* at 1143; *see also Junel Food Center Corp v. U.S.*, 1997 WL 634175 (S.D.N.Y. 1997) ("Even assuming that food stamps constitute a high percentage of Junel's sale, Junel has not presented any evidence proving that it would lose all of its business now attributed to food stamps. Thus, Junel has not demonstrated that it will be irreparably injured if a preliminary injunction is not granted.").  Notably, on her application to enroll into the Food Stamp Program, Affum represented that her annual retail sales were

approximately $650,000.  (A.R. at 6.)  Yet, her reported sales using food stamp benefits appear

to be well below this amount.  (A.R. at 12 (noting that in October 2006, the Asafo Market had

$19,106 in food stamp benefits redeemed).)  In addition, the FNS disqualified the Asafo Market

from the Food Stamp Program more than four months ago.  It still remains open, however, even

though Affum claims that 90-95% of her store's sales are comprised of food stamp benefits.  *Id.*

Moreover, the administrative review process concluded on January 22, 2008.  At that

point, Affum had been disqualified from the program for two months.  But Affum waited nearly

two additional months to seek a stay and preliminary injunctive relief.  (Dkt. 6 (filed 3/20/08).)

The "seeming lack of urgency on the part of a plaintiff who has been denied interim relief tends

to confirm the view that irreparable harm was not imminent."  *Cf. Federal Express Corp. v.*

*Federal Espresso, Inc.*, 201 F.3d 168, 178 (2d Cir. 2000).

## CONCLUSION

For the foregoing reasons, the Court should deny Affum's application for a stay and

preliminary injunction.

Respectfully submitted,

_____ __

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/ Harry B. Roback_____

HARRY B. ROBACK, D.C. Bar # 485145
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
Tel: 202-616-5309

April 4, 2008                                    harry.roback@usdoj.gov

<u>CERTIFICATE OF COMPLETENESS OF RECORD</u>
<u>OF PROCEEDINGS BEFORE</u>
<u>ADMINISTRATIVE REVIEW OFFICER</u>

RE:   ASAFO MARKET
      WASHINGTON, DC

The undersigned hereby certifies:

1.      That as Chief of the Administrative Review Branch of the Benefit

Redemption Division, he is the duly designated supervisor of Jerry Masefield, the

Administrative Review Officer who made the Final Agency Determination complained

of in this action;

2.      That in his position, he is the designated custodian of records in this matter;

3.      That he has examined the administrative appeal record of Asafo Market,

attached hereto as pages A.R. 1 through A.R. 84, and states that the attached is a true

and correct copy of the said administrative appeal record, and of the record considered

by Jerry Masefield in upholding the decision of Sarah A. Duncan, Food and Nutrition

Service, to permanently disqualify Asafo Market from participation in the Food Stamp

Program, as elaborated in his determination dated January 22, 2008.  The SSN's, EIN's

and DOB's were redacted to comply with the E-Government Act.

                                            Courtney L. Wilkerson, Esq.
                                            Chief, Administrative Review Branch
                                            Benefit Redemption Division


Certified on this 20th day of March 2008.

FOR OFFICIAL USE ONLY – INDEFINITE RETENTION

FORM FNS-238
(12-75)

**STORE CONTACT RECORD**

USDA-FNS

SECTION I - STORE IDENTIFICATION, SALES AND REDEMPTION DATA, AND BACKGROUND INFORMATION FROM LAST VISIT
(Complete this section prior to visit to store)

| 1. NAME AND ADDRESS OF STORE | 2. AUTHORIZATION NO. | 3. PROJECT AREA & MAIN TRACT NUMBER |
|---|---|---|
| Arafo Market 1309 5th St NE, Stand 39840 Wash, DC 20002 | 0079513 | |

4. TYPE OF STORE
☐ CHAIN  ☐ ROUTE
☐ INDEPENDENT  ☐ OTHER (Specify)

| 5. NAME OF OWNER | 6. NAME OF MANAGER | 7. NO. OF EDUCATIONAL VISITS EACH YEAR | 8. DATE NEXT EDUCATIONAL VISIT DUE |
|---|---|---|---|
| | | | |

9. SALES AND REDEMPTION DATA

A. AVERAGE MONTHLY FOOD SALES
$

E. REDEMPTION DATA LISTED ON THE MOST RECENT ADP REPORT

| B. REDEMPTION RATIO | C. TRACT AVERAGE | D. DIFFERENCE | AVERAGE MONTHLY REDEMPTIONS FOR THE FOUR QUARTERS | | REDEMPTIONS FOR THE MOST RECENT THREE MONTHS | |
|---|---|---|---|---|---|---|
| | | | QUARTER | AMOUNT | MONTH | AMOUNT |
| % | % | % | | $ | | $ |

10. DATE OF LAST VISIT

11. NAME AND TITLE OF PERSON CONTACTED ON LAST VISIT

12. SUMMARY OF DISCUSSION AND PROBLEMS FROM LAST VISIT

Outh Ltr typ't mailed 08/25/06    store opens 8/15/06    Store BOS pe 8/9/06

SECTION II - CURRENT VISIT (Complete this section immediately after visit)

| 13. TYPE OF VISIT (If COMPLIANCE, complete items 21 and 22 on reverse) | 14. CONFIRMING LETTER TO BE SENT | 15. NAME AND TITLE OF PERSON CONTACTED |
|---|---|---|
| ☐ EDUCATIONAL  ☐ COMPLIANCE | ☐ YES  ☐ NO | MRS. Affum/owner |

16. UPDATED FOOD SALES DATA
A. NEW AVERAGE MONTHLY FOOD SALES
$

17. MATERIAL(S) PROVIDED

| B. NEW REDEMP- TION RATIO | C. TRACT AVER- AGE | D. NEW DIFFER- ENCE |
|---|---|---|
| % | % | % |

18. SUMMARY OF DISCUSSION

~~ALL RULES AND REGULATIONS INCLUDING THOSE ON THE BACK OF THIS FORM HAVE BEEN COVERED WITH THE OWNER. I TOLD HIM/HER THAT AN AUTHORIZATION TAPE WILL BE MAILED SHORTLY, AND THAT THE TAPE MUST BE VIEWED BY ALL EMPLOYEES. OWNER HAS BEEN WARNED THAT VIOLATIONS OF THE FSP COULD LEAD TO DISQUALIFICATION FROM THE FOOD STAMP PROGRAM.~~

~~RECOMMEND AUTHORIZATION UNDER CATEGORY A/B~~

19. DATE OF VISIT
8/25/06

FOR OFFICIAL USE ONLY – INDEFINITE RETENTION

(OVER)

A.R. 1

*U.S. GOVERNMENT PRINTING OFFICE: 1985-516-623:40106

## MATERIALS COVERED AT AUTHORIZATION

1. Ineligible foods (hot foods, medicines, household Products, alcohol, tobacco, pet foods, etc)     _____

2. No sales tax on food items for Food Stamp customers     _____

3. No credit accounts (including deposits)     _____

4. No buying or selling EBT benefits (trafficking)     _____

5. Owner is responsible for actions of all employees     _____

6. No minimum purchase price     _____

7. ID cards, not all FS customers will have them     _____

   EBT

8. Brief description of terminal operation     _____

9. NEVER ask for customer/client's PIN     _____

10. Deposits are done through direct deposit     _____

11. Must continue to accept paper Food Stamps     _____

12. Other/Comments:

OMB Burden Statement: According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0584-0008. The time required to complete this information collection is estimated to average 15.04 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have comments regarding the accuracy of the time estimate(s) or suggestions for improving this form, please write to: BRD/FNS, Room 400, 3101 Park Center Drive, Alexandria, VA 22302.

## USDA - FOOD STAMP APPLICATION FOR STORES

Form Approved
OMB No 0584-0008.
Expiration Date 10/05

**Date Authorized**
MM 08 / DD 25 / YYYY 2006

**FOR FNS USE ONLY**
FNS Number 0079513

County Code    A/B    Authorization Initials

RECEIVED
AUG - 3 2006
USDA FCS
TOWSON MD FIELD OFFICE

**FNS Tracking Number**

0079513
ASAFO MARKET

The purpose of the Food Stamp Program is to promote nutrition and health among low-income people. The USDA seeks to operate the Food Stamp Program through retail grocery stores that consistently stock a variety of staple foods in each of the four food groups or who do 50% or more of their gross sales in staple foods. Please answer each of the following items completely and accurately so we may determine your store's eligibility to accept food stamp benefits.

SEE EXAMPLE BELOW: Please use a pen, not a pencil.
Write like this:

ART'S MARKET

Shade circles like this: ●
Not like this: ⊗ ⊘

### BASIC STORE INFORMATION

1. Store Name
ASAFO MARKET

2. Store Location Address (Do Not Use Post Office Box)
Street Number 309    Street Name STH STREET NE SPACE #39-40
City WASHINGTON    State DC    Zip Code 20002 —
County NW A

3. Store Mailing Address (Do Not complete if the same as #2 above)
Street Number    Street Name (or Post Office Box)
City    State    Zip Code —

Telephone Number 202 548 — 9770    Fax Number (If applicable) —
E-Mail address: (If applicable)

240-354-1155 cell

A.R. 3

5. Shade the box that best describes your store:

○ Supermarket
● Grocery Store
○ Convenience Store

○ Delivery Route
○ Farmers Market/Produce Stand
○ Other (describe): _____

○ Drug Store
○ Super Store

6. Federal Employer Identification Number (EIN)
   (If applicable)

An EIN is a nine-digit number assigned by the Internal Revenue Service (IRS). The IRS uses the number to identify businesses that are required to file certain Federal tax returns.

**OWNERSHIP INFORMATION**

7. Type of Ownership - Shade one type:

● Sole Proprietorship          ○ Limited Liability Company     ○ Government-owned
                                                                 (If you shade this item, skip to #10)

○ Partnership                  ○ Cooperative
                                                                 ○ Limited Liability Partnership

○ Privately-held corporation   ○ Publicly-owned corporation (If you shade this item, skip to #9)

8. a. Enter primary owner(s) or major shareholder(s) if the store is owned by one or more people or a private corporation. In community property States, the spouse's information must be entered. Community property states are: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, the state of Washington and Wisconsin. Enter officer's information if the store is owned by a cooperative. Print name as it appears on the social security card.

First Name: PHILOMENA

Middle Name:

Last Name: AFFUM

Street Number: 2917

Street Name (or Post Office Box): EAGLES NEST DRIVE

City: BOWIE

State: MD

Zip Code: 20716 - ____

Title: SOLE PROPRIETOR

Social Security Number:

Date of Birth: MM/DD/YYYY

NS-252 (10/04) Previous Editions Obsolete

Electronic Form Version Designed in JetForm 5.01 version

Page 2 of 7

A.R. 4

b. Enter other owners/shareholders or officer information (If any):

First Name

N I A

Middle Name

Last Name

Street Number

Street Name (or Post Office Box)

City

State

Zip Code

—

Title

Social Security Number

—

—

Date of Birth: MM/DD/YYYY

/ /

NOTE: If there are more owners, shareholders or officers, enter the same information above on the Attachment on page 5.

9. Is this store a franchise? ○ Yes  ● No

10. Enter name and address of parent corporation or franchise (If applicable):

Name

Street Number

Street Name (or Post Office Box)

City

State

Zip Code

—

Telephone Number

—

Fax Number (If applicable)

—

E-Mail address: (If applicable)

11. When did or when will the store open for business under this ownership?

M M / D D / Y Y Y Y
0 8 / 1 5 / 2 0 0 6

12. a. Will this store be open year round? ● Yes, (If yes, skip to #12c.) ○ No

b. If no, shade all months you will be open:

○ Jan ○ Feb ○ Mar ○ Apr ○ May ○ Jun ○ Jul ○ Aug ○ Sept ○ Oct ○ Nov ○ Dec

c. Will this store be open 7 days, 24 hours? ○ Yes, (If yes, skip to #13.) ● No

d. Print your store hours and days of operation: TUESDAY - THURSDAYS 7AM- 5:30PM FRIDAY - SATURDAY 7AM- 6:30PM; SUNDAYS 7AM - 2:30PM

Shade Days Closed: ● Mon ○ Tues ○ Wed ○ Thu ○ Fri ○ Sat ○ Sun

NS-252 (10/04) Previous Editions Obsolete    Electronic Form Version Designed in JetForm 5.01 version

Page 3 of 7

A.R. 5

**ELIGIBILITY INFORMATION**

13. Estimate your annual RETAIL sales:
(all food and non-food items at this location)    $ [ ] , [ ] [ ] [6][5][0] , [0][0][0] . [0][0]

14.a. Do you sell all the items listed below?   ● Yes   ○ No    $ 650 / 000 cents
(If yes, skip to item #14c)   (If no, complete item #14b)

b. Shade the following items your store stocks and sells:

| Bread/Cereal | Dairy Products | Fruits/Vegetables | Meat/Poultry/Fish |
|---|---|---|---|
| ● Bread | ● Milk | ● Fresh Fruits/Vegetables | ● Beef |
| ● Cereal | ● Cheese | ● Canned Fruits/Vegetables | ● Chicken |
| ● Pasta | ● Butter | ● Frozen Fruits Vegetables | ● Pork/Bacon/Ham |
| ● Rice | ● Infant Formula | ● 100% Fruit/Vegetable Juices | ● Fish/Shellfish |
| ● Flour | ● Yogurt | ○ Other _____ | ● Eggs |
| ● Grains | ○ Other _____ | | ● Sandwich Meats/Hot Dogs |
| ○ Other _____ | | | ● Canned Meats/Fish |
| | | | ○ Other _____ |

c. Estimate the percentage (%) of your annual retail sales (#13) that comes from the items above

15. a. Shade the types of foods below your store stocks and sells:    [1][0][0] % ?○

● Condiments/Spices    ○ Cold Sandwiches    ● Candy

● Coffee/Tea/Cocoa    ● Prepared Salads/Foods    ● Carbonated/Noncarbonated Drinks

b. Estimate the percentage (%) of your annual retail sales (#13) that comes from the types items you shaded in #15a.    [8][0] % ○

16. Estimate the percentage (%) of your annual retail sales (#13) that comes from the sale of hot foods and non-food items such as: Gas, Tobacco, Alcoholic Beverages, Lottery Tickets, Paper and Cleaning Products, etc.    [2][0] % ○

NOTE: Boxes #14c, #15b, and #16 should total 100%

17. a. In addition to sales to the general public, will this location do business as a WHOLESALER to other businesses, hospitals, restaurants, etc.?    ○ Yes   ● No
(If yes, complete #17b)   (If no, skip to #18)

b. Estimate your annual sales to these businesses (all food and non-food):    $ [ ] , [ ] [ ] [ ] , [ ] [ ] [ ] . [0][0] cents

18. Has the owner(s), manager(s), and/or officer(s) ever had a license denied, withdrawn, or suspended, or been fined for license violations (i.e., Food Stamps, WIC, business, alcohol, tobacco, lottery, or health licenses)?  ○ Yes  ● No    If "yes", please provide an explanation on page 6 of the attachment.

19. Has any individual involved in the ownership or management of the firm ever been convicted of any crime?    ○ Yes  ● No    If "yes", please provide an explanation on page 6 of the attachment.

FNS-252 (10/04) Previous Editions Obsolete    Electronic Form Version Designed in JetForm 5.01 version

A.R. 6

ATTACHMENT
8. (Continued): OTHER OWNERS, SHAREHOLDERS, OR OFFICERS' INFORMATION: ☒ NA

First Name

Middle Name

Last Name

Street Number

Street Name (or Post Office Box)

City                                      State    Zip Code

Title

Social Security Number                              Date of Birth: MM/DD/YYYY

First Name

Middle Name

Last Name

Street Number

Street Name (or Post Office Box)

City                                      State    Zip Code

Title

Social Security Number                              Date of Birth: MM/DD/YYYY

**FNS-252 (10/04) Previous Editions Obsolete        Electronic Form Version Designed in JetForm 5.01 version**
Page 5 of 7

A.R. 7

18. (Continued): If you answered "yes", please provide an explanation:

19. (Continued): If you answered "yes", please provide an explanation:

**Privacy Act Statement** - Section 9 of the Food Stamp Act of 1977, as amended, (Title 7 U.S.C. 2011 et seq.) authorizes collection of this information. The primary use of this information is for the Food Stamp Program. Additional disclosures of the information may be to other FNS programs within Federal, State or local offices and investigative authorities, including local law enforcement agencies, when the Food Stamp Program becomes aware of a violation or possible violation of the Food Stamp Act, as explained in the next section of this document called "Use and Disclosure" [Title 7 U.S.C. 2018(c) Title 26 U.S.C. 6109(f), Title 42 U.S.C. 405(c) and Title U.S.C. 770119].

Where the owners' identification number is your Social Security Number (SSN), collection of this information is authorized by Section 271.1(b) of program regulations. Under this Section, we are also allowed to collect your Employee Identification Number (EIN) and tax information. We can only share SSNs and EINs with other Federal agencies which are allowed by law, to have these numbers in their own records [Title 26 U.S.C. 7213 and Title U.S.C. 20189c]. Furnishing the information on this form, including your SSN and EIN, is voluntary, but failure to do so may result in disapproval of this application.

If FNS or the Food Stamp Program uses the information furnished on this form for purposes other than those indicated on the form, it may provide you with an addition statement reflecting those purposes.

**Use and Disclosure** - We may use computers to check this information you give us against the information kept by other Federal agencies to ensure that the information you gave us is true, including SSNs and EINs. We will use the information you give us for managing and enforcing the food stamp laws and rules. We can share SSNs and EINs with the Department of Justice for lawsuits and with the Treasury Department or other Federal agencies for reporting and collecting monies owed to us, including taking what you owe us out of a future Federal tax refund, Federal salary, or Federal benefit you may receive (7 U.S.C. 2022 and 31 U.S.C. 3711). The information you give us (except SSNs and EINs) can also be shared with: (1) private collection agencies for collecting monies owed to us; (2) with local police and Federal and State agencies responsible for enforcing the Food Stamp Act or any other Federal and State laws and rules; (3) State agencies responsible for the Special Supplemental Nutrition Program for Woman, Infants and Children (WIC).

**Penalty Warning Statement** - We can turn down or take away our approval for you to take food stamp benefits as payment for food sold in your store if you: (1) lie or give us untrue information; or (2) try to hide information we ask you to give us. If you lie, give us untrue information, or hide information from us, you and the people who own the store, can be made to pay $10,000 or be put in jail for as long as five years or both (7 U.S.C. 2024 and 18 U.S.C. 1001).

**Certification and Signature** - By signing your name on this application, you are telling us that: (1) you are the store owner or that the store owner(s) have asked you to apply for them; (2) the information you and/or the owner(s) gave us on this form, or papers we asked for, is true; (3) you read and understand all the information on this sheet; (4) you cannot treat food stamp customers differently than other customers, (5) you understand that you and the person(s) for whom you are applying are responsible for stopping workers, paid and unpaid, from breaking food stamp rules such as, but not limited to: (a) trading cash for food stamp benefits; (b) taking food stamp benefits from people not allowed to use them; (c) taking food stamp benefits to pay on a credit account or loan; (d) taking food stamp benefits to pay for items not allowed to be paid for with food stamp benefits. We can take away a store's right to take food stamp benefits as payment for food sold in your store if any owner(s), manager(s), or anyone working in the store violates any of the food stamp law or rules.

**FNS-252 (10/04) Previous Editions Obsolete**          **Electronic Form Version Designed in JetForm 5.01 version**

A.R. 8

# AGREEMENT

I UNDERSTAND AND AGREE:

- I have authority to contract for the firm.
- I have provided truthful and complete information on this form.
- I hereby agree to release to the Department of Agriculture (USDA), by my signature below, my tax records and also to allow USDA to verify the accuracy of information submitted with this application.
- Any information I provide may be verified and shared by/with other agencies as described on the attachment.
- If I provide false information, my application may be denied or withdrawn.
- I accept responsibility to report changes in the firm's ownership, address, type of business, and operation to the FNS Field Office.
- I will follow, and ensure employees will follow, the Food Stamp Program regulations. I am aware that the violations of program rules can result in fines, legal sanctions, withdraw, or disqualification from the Food Stamp Program.
- I accept responsibility on behalf of the firm for violations of the Food Stamp Program regulations, including those committed by any of the firm's employees, both paid or unpaid, new, full-time or part-time. These include violations, such as but not limited to:
  - Treating food stamp customers differently than other customers.
  - Trading cash for food stamp benefits
  - Knowingly accepting food stamp benefits from people not authorized to use them
  - Accepting food stamp benefits as payments on credit accounts or loans
  - Accepting food stamp benefits as payments for ineligible items
- Participation can be denied or withdrawn if my firm violates any laws or regulations issued by Federal, State, or local agencies, including civil rights laws and their implementing regulation. In addition, disqualification from the WIC Program may result in Food Stamp Program disqualification.
- Participation in the Food Stamp Program requires that I will not discriminate against any customer on the grounds of race, color, national origin, age, sex, handicap (disability), political belief or religion; and that I will immediately take any measures necessary to make sure that my customers are not discriminated against.
- Any individual or firm accepting or redeeming food stamp benefits, if not authorized to do so, is subject to substantial fines and administrative sanctions.
- I have read and understand the Privacy Act Statement, Warnings, and Certification as provided.

X _____  
Signature

_____  
Print Name PHILOMENA AFFUM

7|31|06  
Date Signed

SOLE PROPRIETOR  
Print Title

In accordance with Federal Law and U.S. Department of Agriculture policy, your institution is prohibited from discriminating on the basis of race, color, national origin, sex, age, religion, political beliefs or disability.

To file a complaint of Discrimination, write:   USDA, Director, Office of Civil Rights  
Room 326W, Whitten Building  
1400 Independence Avenue, SW.  
Washington, D.C. 20250-9410

A.R. 9



**Pecora, Joseph**

| | |
|---|---|
| **From:** | stars.help2@fns.usda.gov |
| **Sent:** | Tuesday, November 14, 2006 7:49 AM |
| **To:** | Pecora, Joseph |
| **Subject:** | RFI-Asafo Market |

**Attachments:**    Asafo Market.jpg



Asafo Market.jpg
(31 KB)

Request For Investigation

Photo ID attached.

The content of the request is as follows:

FNS Number:  0079513
Case Number: C0113519

Basis of Case: EBT: Transaction Analysis/ALERT/Watch List

Submitted Date: 11/14/06 6:49 AM
Creating Office: Towson, MD
Creating Person: JOSEPH PECORA (2joe.pecora)
OIC: SARAH DUNCAN
Description of landmark:
Distance to the landmark:

Store Hours: 7AM-5:30PM T-SAT/ 7AM-2:30 SUNDAY
Days store is closed: MONDAY
Manager name(s):
Store name: ASAFO MARKET
Store number:
Store status: Authorized
Store location:
    1309 FIFTH ST NE
    STAND NUMBERS 39 AND 40
    WASHINGTON, District of Columbia 20002
    County: DIST OF COLUMBIA
    United States of America

Owner name:  PHILOMENA AFFUM

Other stores:

Previous case (s):

A.R. 11

Results of cases:

Last compliance action date: 11/14/06 6:49 AM
Redemptions:
October 2006: $19106.15
September 2006: $12675.75
August 2006: $.00
May 2006 - July 2006: $.00
February 2006 - April 2006: $.00
November 2005 - January 2006: $.00

Redemptions vs Food Sales Ratio:  2.13%

End of email

A.R. 12

EBDD0002D-R2
Page: 1

**ALERT Reporting System**
**EBT Exception Report**
**Multiple Transactions in Short Period by Any Account - Detail Report (Scan B1)**

10/27/2006
07:07 AM

State:          **District of Columbia**      County:           **DIST OF COLUMBIA**

| Store: | **0079513  ASAFO MARKET** | | | Store Type: | **GS** |
|---|---|---|---|---|---|
| Rank: | **5.00** | Scan B1 Rank: **9.00** | Dollar Volume: **$12,675.75** | Number Of Scan Flags: | **19** |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|
| 10/25/2006    11:32:40 AM | SEP2006 | Any Account | 0Hr    6Min | $99.00 | 2 | 3 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/06/2006 | 10:01:57 AM | 011002118512 | 00711914 | $148.08 | Purchase | Electronic |
| 09/06/2006 | 10:05:29 AM | 011002308919 | 00711914 | $10.99 | Purchase | Electronic |
| 09/06/2006 | 10:07:12 AM | 911001021300 | 00711914 | $6.99 | Purchase | Electronic |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|
| 10/25/2006    11:32:40 AM | SEP2006 | Any Account | 0Hr    6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/06/2006 | 11:30:08 AM | 111001520326 | 00711914 | $142.84 | Purchase | Electronic |
| 09/06/2006 | 11:31:36 AM | 111001520326 | 00711914 | $14.99 | Purchase | Electronic |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|
| 10/25/2006    11:32:40 AM | SEP2006 | Any Account | 0Hr    6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/06/2006 | 01:36:15 PM | 911000030702 | 00711914 | $181.10 | Purchase | Manual |
| 09/06/2006 | 01:38:10 PM | 911000030702 | 00711914 | $8.99 | Purchase | Manual |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|
| 10/25/2006    11:32:40 AM | SEP2006 | Any Account | 0Hr    6Min | $99.00 | 2 | 3 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/07/2006 | 02:31:39 PM | 311000841444 | 00711914 | $72.06 | Purchase | Manual |
| 09/07/2006 | 02:33:13 PM | 011001325813 | 00711914 | $9.99 | Purchase | Electronic |
| 09/07/2006 | 02:37:25 PM | 811000234599 | 00711914 | $19.97 | Purchase | Manual |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|
| 10/25/2006    11:32:40 AM | SEP2006 | Any Account | 0Hr    6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/08/2006 | 09:27:53 AM | 811000529293 | 00711914 | $362.62 | Purchase | Manual |
| 09/08/2006 | 09:29:41 AM | 811000529293 | 00711914 | $23.46 | Purchase | Manual |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|
| 10/25/2006    11:32:40 AM | SEP2006 | Any Account | 0Hr    6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/08/2006 | 10:59:02 AM | 111001833723 | 00711914 | $20.77 | Purchase | Electronic |
| 09/08/2006 | 11:01:58 AM | 311001018743 | 00711914 | $94.90 | Purchase | Electronic |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|
| 10/25/2006    11:32:40 AM | SEP2006 | Any Account | 0Hr    6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/08/2006 | 01:59:50 PM | 611000030276 | 00711914 | $109.87 | Purchase | Electronic |
| 09/08/2006 | 02:04:43 PM | 511001009562 | 00711914 | $4.98 | Purchase | Manual |

| Scan Run Date & Time | Transaction Month | Account Option | Period | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|

A.R. 13

EBDD0002D-R2 - cMultiple Transactions in Short Period by Any Account - Detail ... Page 2 of 3

EBDD0002D-R2 - cMultiple Transactions in Short Period by Any Account - Detail ... Page 15 of 43   Filed 04/04/2008   Document 9-3

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/09/2006 | 09:06:35 AM | 111002156021 | 00711914 | $29.95 | Purchase | Electronic |
| 09/09/2006 | 09:12:35 AM | 411000421458 | 00711914 | $77.92 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/09/2006 | 12:10:40 PM | 711000241580 | 00711914 | $51.42 | Purchase | Electronic |
| 09/09/2006 | 12:16:36 PM | 811000744692 | 00711914 | $55.10 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/10/2006 | 07:45:44 AM | 811000716098 | 00711914 | $19.86 | Purchase | Manual |
| 09/10/2006 | 07:47:37 AM | 911000279204 | 00711914 | $86.91 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 3 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/10/2006 | 12:49:35 PM | 011001180016 | 00711914 | $20.97 | Purchase | Electronic |
| 09/10/2006 | 12:50:29 PM | 511001412869 | 00711914 | $4.99 | Purchase | Electronic |
| 09/10/2006 | 12:53:43 PM | 311000053745 | 00711914 | $222.81 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/10/2006 | 01:41:35 PM | 411001378356 | 00711914 | $25.97 | Purchase | Electronic |
| 09/10/2006 | 01:44:44 PM | 611000615379 | 00711914 | $74.91 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 3 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/10/2006 | 02:21:24 PM | 211001116737 | 00711914 | $50.94 | Purchase | Electronic |
| 09/10/2006 | 02:23:52 PM | 111000207624 | 00711914 | $27.96 | Purchase | Electronic |
| 09/10/2006 | 02:27:03 PM | 811000943593 | 00711914 | $36.94 | Purchase | Manual |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/12/2006 | 04:03:30 PM | 124001230051 | 00711914 | $128.15 | Purchase | Electronic |
| 09/12/2006 | 04:08:20 PM | 111000268925 | 00711914 | $31.97 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/13/2006 | 09:52:46 AM | 924002485775 | 00711914 | $125.83 | Purchase | Electronic |
| 09/13/2006 | 09:57:07 AM | 224005649031 | 00711914 | $86.87 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

A.R. 14

## Transactions

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/16/2006 | 01:10:23 PM | 011001902918 | 00711914 | $65.44 | Purchase | Electronic |
| 09/16/2006 | 01:15:37 PM | 011001555013 | 00711914 | $36.96 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

## Transactions

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/16/2006 | 01:23:29 PM | 224008628939 | 00711914 | $98.90 | Purchase | Electronic |
| 09/16/2006 | 01:26:24 PM | 224008628939 | 00711914 | $4.99 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

## Transactions

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/19/2006 | 02:58:35 PM | 311000663749 | 00711914 | $92.91 | Purchase | Electronic |
| 09/19/2006 | 03:00:19 PM | 011000602618 | 00711914 | $20.97 | Purchase | Electronic |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:40 AM | SEP2006 | Any Account | 0Hr | 6Min | $99.00 | 2 | 2 |

## Transactions

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/20/2006 | 02:22:43 PM | 611002126575 | 00711914 | $49.71 | Purchase | Electronic |
| 09/20/2006 | 02:27:07 PM | 011000426614 | 00711914 | $83.90 | Purchase | Electronic |

## Download

**Download Tip:** Right click on above Download link to bring up a pop up context menu and then left click on the "Save Target As..." option.

A.R. 15

EBDD0002D-R3
Page: 1

**ALERT Reporting System**
**EBT Exception Report**
Multiple Transactions In Short Period by Single Account - Detail Report (Scan B2)

10/27/2006
07:07 AM

State:                District of Columbia          County:          DIST OF COLUMBIA

Store:
Rank:          0079513   ASAFO MARKET                                          Store Type:       GS
               5.00      Scan B2 Rank:  2.00   Dollar Volume:   $12,675.75   Number Of Scan Flags:   2

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:44 AM | SEP2006 | Single Account | 24Hr | 0Min | $60.00 | 3 | 3 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/30/2006 | 01:27:40 PM | 111001847521 | 00711914 | $114.90 | Purchase | Manual |
| 09/30/2006 | 01:36:27 PM | 111001847521 | 00711914 | $40.95 | Purchase | Manual |
| 09/30/2006 | 01:44:51 PM | 111001847521 | 00711914 | $19.97 | Purchase | Manual |

| Scan Run Date & Time | | Transaction Month | Account Option | Period | | Min Total Amount | Threshold Count | Count |
|---|---|---|---|---|---|---|---|---|
| 10/25/2006 | 11:32:44 AM | SEP2006 | Single Account | 24Hr | 0Min | $60.00 | 3 | 3 |

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Type | Method |
|---|---|---|---|---|---|---|
| 09/13/2006 | 09:52:46 AM | 924002485775 | 00711914 | $125.83 | Purchase | Electronic |
| 09/13/2006 | 10:07:41 AM | 924002485775 | 00711914 | $6.99 | Purchase | Electronic |
| 09/13/2006 | 10:23:20 AM | 924002485775 | 00711914 | $8.99 | Purchase | Electronic |

## Download

**Download Tip:** Right click on above Download link to bring up a pop up context menu and then left click on the "Save Target As..." option.

A.R. 16

| EBDD0004D-R2 Page: 1 | | | ALERT Reporting System EBT Exception Report Stores that Exceeded Thresholds for a Single Amount - Detail Report (Scan F) | | | | 10/27/2006 07:07 AM |
|---|---|---|---|---|---|---|---|

| State: | District of Columbia | | County: | DIST OF COLUMBIA | | | |
|---|---|---|---|---|---|---|---|

| Store: | 0079513 ASAFO MARKET | | | | | Store Type: | GS |
|---|---|---|---|---|---|---|---|
| Rank: | 5.00 | Scan F Rank: 1.00 | | Dollar Volume: **$12,675.75** | | Number of Scan Flags: | 26 |

| Scan Run Date & Time 10/25/2006 11:32:53 AM | | Trans. Month SEP2006 | Average Type Store Type Average | | Threshold 700% | Store Type Ave. $10.18 | Ave. Amt. Found $140.93 |
|---|---|---|---|---|---|---|---|

**Transactions**

| Trans Date | Trans Time | Account | Terminal | Amount | Starting Balance |
|---|---|---|---|---|---|
| 09/06/2006 | 10:01:57 AM | 011002118512 | 00711914 | $148.08 | $152.20 |
| 09/06/2006 | 11:30:08 AM | 111001520326 | 00711914 | $142.84 | $264.80 |
| 09/06/2006 | 01:36:15 PM | 911000030702 | 00711914 | $181.10 | $570.55 |
| 09/07/2006 | 12:20:40 PM | 151001893723 | 00711914 | $101.89 | $368.00 |
| 09/08/2006 | 09:27:53 AM | 811000529293 | 00711914 | $362.62 | $653.01 |
| 09/08/2006 | 11:01:58 AM | 311001018743 | 00711914 | $94.90 | $418.00 |
| 09/08/2006 | 11:21:24 AM | 311000250046 | 00711914 | $126.83 | $383.00 |
| 09/08/2006 | 11:29:46 AM | 811000998498 | 00711914 | $101.89 | $396.67 |
| 09/08/2006 | 01:59:50 PM | 611000030276 | 00711914 | $109.87 | $853.78 |
| 09/09/2006 | 10:10:01 AM | 951005347400 | 00711914 | $146.65 | $354.37 |
| 09/09/2006 | 04:23:10 PM | 611000231575 | 00711914 | $117.85 | $285.80 |
| 09/10/2006 | 07:47:37 AM | 911000279204 | 00711914 | $86.91 | $280.96 |
| 09/10/2006 | 12:53:43 PM | 311000053745 | 00711914 | $222.81 | $648.00 |
| 09/10/2006 | 02:39:31 PM | 124001549151 | 00711914 | $130.97 | $288.74 |
| 09/12/2006 | 04:03:30 PM | 124001230051 | 00711914 | $128.15 | $488.95 |
| 09/13/2006 | 09:52:46 AM | 924002485775 | 00711914 | $125.83 | $650.12 |
| 09/13/2006 | 09:57:07 AM | 224005649031 | 00711914 | $86.87 | $399.32 |
| 09/13/2006 | 01:14:54 PM | 211002137035 | 00711914 | $141.86 | $181.69 |
| 09/14/2006 | 04:01:22 PM | 724007779484 | 00711914 | $164.86 | $264.10 |
| 09/14/2006 | 04:45:45 PM | 811000846396 | 00711914 | $86.87 | $616.78 |
| 09/16/2006 | 01:23:29 PM | 224008628939 | 00711914 | $98.90 | $134.03 |
| 09/17/2006 | 02:23:43 PM | 411000107453 | 00711914 | $243.06 | $410.61 |
| 09/19/2006 | 02:58:35 PM | 311000663749 | 00711914 | $92.91 | $172.54 |
| 09/20/2006 | 02:27:07 PM | 011000426614 | 00711914 | $83.90 | $157.82 |
| 09/23/2006 | 08:08:15 AM | 751002767683 | 00711914 | $220.76 | $253.69 |
| 09/30/2006 | 01:27:40 PM | 111001847521 | 00711914 | $114.90 | $211.00 |

## Download

**Download Tip:** Right click on above Download link to bring up a pop up context menu and then left click on the "Save Target As..." option.

A.R. 17

**Pecora, Joseph**

**From:** TrackingUpdates@fedex.com
**Sent:** Wednesday, October 17, 2007 4:50 PM
**To:** Pecora, Joseph
**Subject:** FedEx Shipment 792435458697 Delivered

This tracking update has been requested by:

Company Name:              USDA/FNS
Name:                      OIC OIC
E-mail:                    joseph.pecora@fns.usda.gov

Our records indicate that the following shipment has been delivered:

Door Tag number:           DT101225363295
Ship (P/U) date:           Oct 12, 2007
Delivery date:             Oct 17, 2007 4:38 PM
Sign for by:               L.MCKINNEZ
Delivered to:              Shipping/Receiving
Service type:              FedEx 2Day
Packaging type:            FedEx Pak
Number of pieces:          1
Weight:                    1.00 lb.
Special handling/Services: Deliver Weekday

Tracking number:           792435458697

Shipper Information                Recipient Information
OIC OIC                            PHILOMENA AFFUM
USDA/FNS                           ASAFO MARKET
515 E. Joppa Road, Suite 208       1309 5TH ST NE
Towson                             WASHINGTON

**FedEx**

Español | Customer Support | FedEx Locations    Search ____ Go

Package/Envelope    Freight    Expedited    Office/Print Services ✱

Ship ▸    Track ▾    Manage ▸    Business Solutions ▸

Track Shipments/FedEx Kinko's Orders
## Detailed Results

📧 Printable Version  ❓ Quick Help

| | | | | |
|---|---|---|---|---|
| **Tracking number** | 792435458697 | **Destination** | WASHINGTON, DC | **Wrong Address?** |
| **Signed for by** | L.MCKINNEZ | **Delivered to** | Shipping/Receiving | Reduce future mistakes by using |
| **Ship date** | Oct 12, 2007 | **Service type** | FedEx 2Day Pak | FedEx Address Checker. |
| **Delivery date** | Oct 17, 2007 4:38 PM | **Weight** | 1.0 lbs. | |
| **Status** | Delivered | | | **Tracking a FedEx SmartPost** |
| | | | | **Shipment?** |
| **Signature image available** | Yes | | | Go to shipper login |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| Oct 17, 2007 | 4:38 PM | Delivered | WASHINGTON, DC | |
| | 8:36 AM | On FedEx vehicle for delivery | WASHINGTON, DC | |
| Oct 16, 2007 | 2:10 PM | At local FedEx facility | WASHINGTON, DC | |
| | 12:22 PM | Delivery exception | WASHINGTON, DC | Customer not available or business closed |
| | 8:40 AM | On FedEx vehicle for delivery | WASHINGTON, DC | |
| Oct 15, 2007 | 4:36 PM | At local FedEx facility | WASHINGTON, DC | |
| | 2:55 PM | Delivery exception | WASHINGTON, DC | Customer not available or business closed |
| | 7:24 AM | On FedEx vehicle for delivery | WASHINGTON, DC | |
| Oct 13, 2007 | 8:24 AM | At local FedEx facility | WASHINGTON, DC | Package not due for delivery |
| | 6:19 AM | At dest sort facility | DULLES, VA | |
| | 3:19 AM | Departed FedEx location | MEMPHIS, TN | |
| Oct 12, 2007 | 8:39 PM | Left origin | BALTIMORE, MD | |
| | 11:15 AM | Picked up | BALTIMORE, MD | |
| | 7:23 AM | Package data transmitted to FedEx | | |


Find locations even easier.

**Signature proof**    **E-mail results**    **Track more shipments/orders**

Subscribe to tracking updates (optional)

Your Name: [            ]    Your E-mail Address: [            ]

| E-mail address | Language | Exception updates | Delivery updates |
|---|---|---|---|
| | English ▾ | ☐ | ☐ |
| | English ▾ | ☐ | ☐ |
| | English ▾ | ☐ | ☐ |

A.R. 19



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

October 19, 2007

Dear Customer:

The following is the proof of delivery you requested with the tracking number **792435458697**.

## Delivery Information:

| Status: | Delivered | Delivery location: | WASHINGTON, DC |
|---|---|---|---|
| Signed for by: | L.MCKINNEZ | Delivery date: | Oct 17, 2007 16:38 |
| Service type: | FedEx 2Day Pak | | |



## Shipping information:

| Tracking number: | 792435458697 | Ship date: | Oct 12, 2007 |
|---|---|---|---|
| | | Weight: | 1.0 lbs. |

Recipient:
WASHINGTON, DC US

Shipper:
Towson, MD US

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

A.R. 20



From:    Origin ID: ESNA  (410)962-2390
OIC OIC
USDA/FNS
515 E. Joppa Road, Suite 208

Towson, MD 21286

Ship Date: 12OCT07
ActWgt: 1 LB
System#: 4411242/INET7091
Account#: S *********

Delivery Address Bar Code



Ref #
Invoice #
PO #
Dept #

SHIP TO: (202)548-9770        BILL SENDER

**PHILOMENA AFFUM**
**ASAFO MARKET**
**1309 5TH ST NE**

**WASHINGTON, DC 200027003**

TRK#
0201   7924 3545 8697

TUE - 16OCT        A1
** 2DAY **

# SA-YKNA

IAD
DC-US
20002



Shipping Label: Your shipment is complete
1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

A.R. 21

10/11/2007

**USDA** United States Department of Agriculture
**Food and Nutrition Service**

United States
Department of
Agriculture

Food and
Nutrition Service

Mid-Atlantic Region

Towson
Field Office

515 E. Joppa Road
Suite 208
Towson, MD
21286-5418

410-779-7097

October 10, 2007

Philomena Affum, Owner
Asafo Market
1309 Fifth Street NE
Stand Numbers 39 AND 40
Washington DC 20002

Dear Mrs. Affum:

United States Department of Agriculture (USDA) investigators have investigated your firm. A copy of the investigative report is enclosed. From this investigation there is evidence that certain violations of the regulations governing the Food Stamp Program (FSP), Title 7 Code of Federal Regulations (CFR) Parts 271-279 (hereinafter also referred to as the regulations), have occurred in your firm.

Based on the transactions which occurred during this investigation, you, doing business as Asafo Market, are charged with conducting Electronic Benefit Transfer (EBT) transactions in exchange for cash (trafficking). The acceptance of a total of $30.00 in food stamp benefits in exchange for a total of $30.00 in cash, as described in Exhibits G and H of the enclosed investigative report, was in violation of Sections 278.2(a) and Section 271.2 of the regulations. **Because of the seriousness of these charges, your firm is being considered for PERMANENT disqualification from participation in the FSP or for the imposition of a Civil Money Penalty (CMP).**

The names of the persons who conducted and/or were involved in the investigation have been removed. This information is exempt from release under Title 5 United States Code (USC) 552(b)(6) and 552(b)(7)(C) of The Freedom of Information Act (FOIA), since disclosure of such information would result in a clearly unwarranted invasion of personal privacy. In addition, the names and any identifying particulars of the persons who assisted in the investigation as private citizens, and who qualified as confidential sources, are also exempt from release under Title 5 USC 552(b)(7)(D) of the FOIA.

Your firm is liable for the trafficking violations (buying or selling of coupons, ATP cards, or other benefit instruments for cash or consideration other than eligible food) as described in Exhibits G and H of the enclosed investigative report. The sanction for this violation, as provided by Section 278.6(e)(1)(*i*) of the regulations, is **PERMANENT** disqualification.

The Food and Nutrition Service is an agency
of the Department of Agriculture

An Equal Opportunity Provider and Employer

A.R. 22

You, doing business as Asafo Market, are also being charged with conducting EBT transactions in exchange for merchandise which, in addition to eligible food items, included obviously ineligible items. These transactions, which are described in Exhibits A, B, C, D, E and F of the enclosed investigative report, were in violation of Section 278.2(a) of the FSP regulations.

Under the provisions of Section 278.6(e)(5) of the enclosed FSP regulations, the aforementioned sale of ineligible items warrants a disqualification period of **SIX MONTHS**.

However, Section 278.6(*i*) of the FSP regulations allows the Food and Nutrition Service (FNS), under certain conditions, to impose a CMP in lieu of PERMANENT disqualification of a firm for trafficking. There is a $54,000.00 limit on the CMP, as authorized under Section 12(b)(3)(b) of the Food Stamp Act of 1977, as amended. In order for you to be eligible for this CMP there must be substantial evidence that your firm had an effective policy and program in effect to prevent violations. Specific criteria for establishing that such a program exists are detailed in Section 278.6(*i*) of the enclosed regulations. You must meet each of the four (04) criteria listed and are required to provide the documentation as specified.

You must submit your request for a CMP, as well as the required documentation, to: Sarah A. Duncan, Officer-In-Charge (OIC), USDA, FNS, Towson Field Office (TFO), 515 E. Joppa Road, Suite 208, Towson, MD. 21286 within ten days of your receipt of this letter in order to be eligible for consideration. If your request and the required documentation are not submitted timely you will lose your right for any further consideration for a CMP.

If it is determined that you qualify for a CMP, the amount of that penalty will be $54,000.00, which you will be required to pay in full within 30 days of your receipt of the demand for payment. The CMP imposed against you was calculated in accordance with Section 278.6(j) of the regulations. If you are not eligible for a CMP, or if you are eligible, but do not submit the full payment within the required time, the penalty would be PERMANENT disqualification for the acceptance of food stamp benefits for cash (trafficking) as described in Exhibits G and H of the enclosed investigative report.

If you meet all the conditions for a CMP in lieu of PERMANENT disqualification, you would still be subject to serving the **SIX MONTH** disqualification for the aforementioned sale of ineligible items.

In addition to applying for a CMP, if you so elect, you may present any information, explanation, or evidence regarding the trafficking violations described above. This information must also be provided to the OIC within ten days of your receipt of this letter. You may respond in writing or in person. If you wish to reply in person, please telephone the OIC at 410-779-7097 for an appointment.

We will fully consider your reply and any documentation you provide before we make a final decision in this matter. However, if we do not hear from you within the time indicated, we will make a decision based on the information available to us and advise you of the decision in writing. Section 278.6 of the enclosed regulations spells out the procedures we will follow in making a decision in this case.

If it is determined that the trafficking violations described above did, in fact, occur at your firm and (1) you did not request consideration for a CMP or (2) you were determined to be ineligible for a CMP, Section 14(a) of the Food Stamp Act, as amended, provides that the PERMANENT disqualification of your firm shall be effective on the date of receipt of the letter informing you of our final decision. Therefore, if the PERMANENT disqualification of your firm is later reversed through administrative or judicial review, the USDA shall not be liable for the value of any sales lost during the period of disqualification you served.

Sincerely,

SARAH A. DUNCAN
Officer in Charge
Towson Field Office

File No.:  TR-25611

Enclosures

A.R. 24

## USDA - FNS

## REPORT OF POSITIVE INVESTIGATION

| STORE NAME AND ADDRESS | RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER | DATE |
|---|---|---|
| ASAFO Market<br>1309 5th St NE<br>Washington        DC    20002 | TR25611<br><br>AREA OFFICE<br>Trenton | 4/30/2007 |

___1___ Investigator(s) made ___8___ visits to the subject store during the period ___2/7/2007___ through ___4/27/2007___. On ___8___ visits, violations of the Food Stamp Program regulations occurred. Details of each transaction are attached as Exhibits(s) ___A___ through ___H___. A post-investigation interview with store personnel to obtain identification, if conducted, is documented in Exhibit ___N/A___.

☑ Store appears eligible for FSP participation    ☐ Store appears NOT eligible for FSP participation

REMARKS

Four 3-Buys occurred:  Exhibits B-E.

One Major was purchased:  Exhibit F.

Trafficking occurred twice: Exhibit G ($10 for $10) and
                            Exhibit H ($20 for $20).

AMR:  $13,600.00

SBU

Sensitive But Unclassified

A.R. 25

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | A |
|---|---|---|
| **TRANSACTION REPORT** | PAGE | 1 |

| A. CASE IDENTIFICATION DATA | 3. STORE NAME AND ADDRESS |
|---|---|
| 1. RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER **TR25611** | **ASAFO Market** **1309 5th St NE** |
| 2. DATE    2/7/2007 | **Washington          DC     20002** |

## B. INVESTIGATOR'S STATEMENT

1. I, _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time) __10:15 AM__, I entered subject store. I selected the items specified in Section C below. This store has ___1___ primary grocery check-out registers. ___1___ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) ___0___ person(s) in line ahead of me and ___0___ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$60.01__. As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about __10:20 AM__.

**OTHER COMMENTS**

Positive (1-Buy).

FORM FNS-413 (PAGE 1 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 26

| C. SUMMARY OF PURCHASE | CASE NUMBER | EXHIBIT A |
|---|---|---|
| 1. PURCHASE PRICE CHARGED BY CLERK        $60.01 | TR25611 | PAGE 2 |

| 2. INELIGIBLE ITEMS | |
|---|---|
| **QUANTITY AND DESCRIPTION** | **PRICE \*** |
| 1-   3 pack IRISH SPRING bar soap | 1.99 |

| 3. ELIGIBLE ITEMS | |
|---|---|
| **QUANTITY AND DESCRIPTION** | **PRICE \*** |
| 1-   18 pack easy mac | NPI |
| 1-   70 pack granola bar | NPI |
| 1-   1 gal apple juice | NPI |

| 4. ITEMS PURCHASED WITH CASH CHANGE | |
|---|---|
| **QUANTITY AND DESCRIPTION** | **PRICE \*** |
| None | |

| 5. ITEMS REFUSED | |
|---|---|
| **QUANTITY AND DESCRIPTION** | |
| None | |

*NPI=No Price Indicated or Price Illegible

**FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.**

A.R. 27

**D. APPEARANCE OF CLERK**

| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | CASE NUMBER | EXHIBIT |
|--------|--------|-----------------|-----------|---------------|-------------|---------|
| F | 59-64 | 5' 02" to 5' 05" | 115-125 | Black | TR25611 | A |
| | | | | | Result P | PAGE    3 |

6. OTHER IDENTIFYING INFORMATION:

Wearing glasses.

7. IDENTIFIED DURING TRANSACTION AS : (Name)

None

(Title, Relationship to owner):

Unknown

8. MEANS OF IDENTIFICATION:

N/A

9. DETAILS OF TRANSACTION AT THE CASH REGISTER

The clerk totaled the price, bagged the items, and debited the food stamp account.

**E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION**

**1. EBT Benefits Issued, Used, and Returned**

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|-----------------|-----------------|---------------|-------------------|
| | $174.63 | $60.01 | $114.62 |
| | $0.00 | $0.00 | $0.00 |

EBT Receipt Included?    Yes          Cash Register Tape Included?    No

2. Comments

-This could be the owner but a positive I.D. could not be made.

**F. CERTIFICATION**                    EBT CASH:          $0.00

| This declaration consists of ___3___ pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein.<br><br>Further declarant sayeth not.<br><br>I declare under penalty of perjury the foregoing is true and correct | 1. DATE EXECUTED (Month, Day, Year)<br><br>4/30/2007 |

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 28

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | B |
|---|---|---|
| **TRANSACTION REPORT** | PAGE | 1 |

| A. CASE IDENTIFICATION DATA | 3. STORE NAME AND ADDRESS |
|---|---|
| 1. RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER **TR25611** | **ASAFO Market** **1309 5th St NE** |
| 2. DATE    2/13/2007 | **Washington**          **DC**    **20002** |

## B. INVESTIGATOR'S STATEMENT

1. I, _____ _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time) __4:20 PM__, I entered subject store. I selected the items specified in Section C below. This store has __1__ primary grocery check-out registers. __1__ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) __1__ person(s) in line ahead of me and __0__ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$39.82__. As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about __4:24 PM__.

## OTHER COMMENTS

Positive (3-Buy).

A.R. 29

| C.  SUMMARY OF PURCHASE | | CASE NUMBER | EXHIBIT B |
|---|---|---|---|
| 1.  PURCHASE PRICE CHARGED BY CLERK | $39.82 | TR25611 | PAGE 2 |

**2.  INELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-  12.6floz DAWN soap | NPI |
| 1-  11oz COLGATE shave cream | 1.69 |
| 1-  7.5floz SOFTSOAP hand soap | 1.29 |

**3.  ELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-  1 gal juice | NPI |
| 1-  40oz peanut butter | NPI |
| 1-  40 pack rice crispies | NPI |
| 1-  5 lb. rice | NPI |

**4.  ITEMS PURCHASED WITH CASH CHANGE**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

**5.  ITEMS REFUSED**

| QUANTITY AND DESCRIPTION | |
|---|---|
| None | |

*NPI=No Price Indicated or Price Illegible

**FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.**

A.R. 30

**D. APPEARANCE OF CLERK**

| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | CASE NUMBER TR25611 | EXHIBIT B |
|---|---|---|---|---|---|---|
| | | | | | Result P | PAGE 3 |

**6. OTHER IDENTIFYING INFORMATION:**

Same as Exhibit A; wearing a cap so she looked a little different.

**7. IDENTIFIED DURING TRANSACTION AS : (Name)**

None

(Title, Relationship to owner):

Unknown

**8. MEANS OF IDENTIFICATION:**

N/A

**9. DETAILS OF TRANSACTION AT THE CASH REGISTER**

The clerk totaled the price, bagged the items, and debited the food stamp account.

**E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION**

**1. EBT Benefits Issued, Used, and Returned**

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|---|---|---|---|
| | $94.17 | $39.82 | $54.35 |
| | $0.00 | $0.00 | $0.00 |

EBT Receipt Included?   Yes          Cash Register Tape Included?   No

**2. Comments**

None

**F. CERTIFICATION**            EBT CASH:          $0.00

This declaration consists of ___3___ pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein.

Further declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct

**1. DATE EXECUTED (Month, Day, Year)**
4/30/2007

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE

A.R. 31

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | C |
|---|---|---|
| **TRANSACTION REPORT** | PAGE | 1 |

| A. CASE IDENTIFICATION DATA | 3. STORE NAME AND ADDRESS |
|---|---|
| 1. RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER **TR25611** | **ASAFO Market** **1309 5th St NE** |
| 2. DATE       2/28/2007 | **Washington          DC     20002** |

## B. INVESTIGATOR'S STATEMENT

1. I, _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time)   1:50 PM  , I entered subject store. I selected the items specified in Section C below. This store has ___1___ primary grocery check-out registers. ___1___ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) ___1___ person(s) in line ahead of me and ___1___ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$33.83__ . As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about   1:55 PM  .

## OTHER COMMENTS

Positive (3-Buy).

A.R. 32

| C. SUMMARY OF PURCHASE | | CASE NUMBER | EXHIBIT C |
|---|---|---|---|
| 1. PURCHASE PRICE CHARGED BY CLERK | $33.83 | TR25611 | PAGE 2 |

**2. INELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-   3 count GLAD plastic containers | NPI |
| 1-   11oz COLGATE shave cream | NPI |
| 1-   4 count S.O.S. cleaning pads | NPI |

**3. ELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-   1 gal juice | NPI |
| 1-   75.4oz oatmeal | NPI |
| 1-   10 count easy mac | NPI |

**4. ITEMS PURCHASED WITH CASH CHANGE**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

**5. ITEMS REFUSED**

| QUANTITY AND DESCRIPTION | |
|---|---|
| None | |

*NPI=No Price Indicated or Price Illegible

**FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.**

A.R. 33

| D. APPEARANCE OF CLERK | | | | | CASE NUMBER | EXHIBIT |
|---|---|---|---|---|---|---|
| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | TR25611 | C |
| | | | | | Result P | PAGE 3 |

| 6. OTHER IDENTIFYING INFORMATION: | 7. IDENTIFIED DURING TRANSACTION AS : (Name) |
|---|---|
| Same as Exhibit A. | None |
| | (Title, Relationship to owner): |
| | Unknown |
| | 8. MEANS OF IDENTIFICATION: |
| | N/A |

**9. DETAILS OF TRANSACTION AT THE CASH REGISTER**

The clerk totaled the price, bagged the items, and attempted to debit the food stamp account but I did not have sufficient funds in the account. The original amount for the purchase was $34.21. The clerk said that's ok, I can charge you for the amount you have on the card. I said ok and the clerk debited the food stamp account. I thanked the clerk and left.

**E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION**

**1. EBT Benefits Issued, Used, and Returned**

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|---|---|---|---|
| | $33.83 | $33.83 | $0.00 |
| | $0.00 | $0.00 | $0.00 |

EBT Receipt Included?  Yes          Cash Register Tape Included?  No

**2. Comments**

None

| F. CERTIFICATION | EBT CASH: | $0.00 |
|---|---|---|

| This declaration consists of  3  pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein. | 1. DATE EXECUTED (Month, Day, Year) 4/30/2007 |
|---|---|
| Further declarant sayeth not. | 4. INVESTIGATOR'S SIGNATURE |
| I declare under penalty of perjury the foregoing is true and correct | |

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 34

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | D |
|---|---|---|
| **TRANSACTION REPORT** | PAGE | 1 |

| A. CASE IDENTIFICATION DATA | 3. STORE NAME AND ADDRESS | | |
|---|---|---|---|
| 1. RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER | **ASAFO Market** | | |
| **TR25611** | **1309 5th St NE** | | |
| 2. DATE          3/7/2007 | **Washington** | **DC** | **20002** |

## B. INVESTIGATOR'S STATEMENT

1. I, _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time) __1:28 PM__, I entered subject store. I selected the items specified in Section C below. This store has ___1___ primary grocery check-out registers. ___1___ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) ___0___ person(s) in line ahead of me and ___1___ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$41.83__. As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about __1:33 PM__.

## OTHER COMMENTS

Positive (3-Buy).

| C. SUMMARY OF PURCHASE | | CASE NUMBER | EXHIBIT |
|---|---|---|---|
| 1. PURCHASE PRICE CHARGED BY CLERK | $41.83 | TR25611 | D |

| | PAGE |
|---|---|
| | 2 |

**2. INELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1- 3 pack 20.3floz VASELINE body lotion | NPI |
| 1- 7.5floz SOFTSOAP hand soap | 1.29 |
| 1- 3oz HIGH ENDURANCE deodorant | 2.99 |

**3. ELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1- 1 gal juice | NPI |
| 1- 33oz cereal | NPI |
| 1- 28oz cream of wheat | NPI |
| 1- 3.5 lb. rice | NPI |

**4. ITEMS PURCHASED WITH CASH CHANGE**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

**5. ITEMS REFUSED**

| QUANTITY AND DESCRIPTION | |
|---|---|
| None | |

*NPI=No Price Indicated or Price Illegible

FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 36

| D. APPEARANCE OF CLERK | | | | | CASE NUMBER | EXHIBIT |
|---|---|---|---|---|---|---|
| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | TR25611 | D |
| | | | | | Result P | PAGE    3 |

**6. OTHER IDENTIFYING INFORMATION:**

Same as Exhibit A.

**7. IDENTIFIED DURING TRANSACTION AS : (Name)**

None

(Title, Relationship to owner):

Unknown

**8. MEANS OF IDENTIFICATION:**

N/A

**9. DETAILS OF TRANSACTION AT THE CASH REGISTER**

The clerk totaled the price, bagged the items, and debited the
food stamp account.

**E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION**

**1. EBT Benefits Issued, Used, and Returned**

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|---|---|---|---|
| | $291.84 | $41.83 | $250.01 |
| | $0.00 | $0.00 | $0.00 |

EBT Receipt Included?    Yes          Cash Register Tape Included?    No

**2. Comments**

None

| F. CERTIFICATION | EBT CASH: | $0.00 | |
|---|---|---|---|

This declaration consists of ___3___ pages. I have signed or initialed each
page. The facts stated in this declaration are true to my knowledge. If I am called to
testify as a witness in my proceeding, I am competent to testify to the matters stated
herein.

Further declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct

**1. DATE EXECUTED (Month, Day, Year)**

4/30/2007

**4. INVESTIGATOR'S SIGNATURE**

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 37

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | E |
|---|---|---|
| **TRANSACTION REPORT** | PAGE | 1 |

| A. CASE IDENTIFICATION DATA | 3. STORE NAME AND ADDRESS |
|---|---|
| 1. RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER **TR25611** | **ASAFO Market** **1309 5th St NE** |
| 2. DATE      3/27/2007 | **Washington**               **DC    20002** |

## B. INVESTIGATOR'S STATEMENT

1. I, _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time) __3:11 PM__, I entered subject store. I selected the items specified in Section C below. This store has ___1___ primary grocery check-out registers. ___1___ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) ___0___ person(s) in line ahead of me and ___1___ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$27.75__. As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about __3:15 PM__.

## OTHER COMMENTS

Positive (3-Buy).

FORM FNS-413 (PAGE 1 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 38

| C. SUMMARY OF PURCHASE | CASE NUMBER | EXHIBIT E |
|---|---|---|
| 1. PURCHASE PRICE CHARGED BY CLERK    $27.75 | TR25611 | PAGE 2 |

**2. INELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-  16floz MEDICAL CENTER hydrogen peroxide | 1.00 |
| 1-  3oz OLD SPICE deodorant | NPI |
| 1-  7.5floz DIAL hand soap | 1.79 |

**3. ELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-  96floz juice | NPI |
| 1-  5 pack shells & cheese | NPI |
| 1-  55oz cereal | NPI |

**4. ITEMS PURCHASED WITH CASH CHANGE**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

**5. ITEMS REFUSED**

| QUANTITY AND DESCRIPTION | |
|---|---|
| None | |

*NPI=No Price Indicated or Price Illegible

**FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.**

A.R. 39

## D. APPEARANCE OF CLERK

| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | CASE NUMBER TR25611 | EXHIBIT E |
|---|---|---|---|---|---|---|
| | | | | | Result P | PAGE 3 |

6. OTHER IDENTIFYING INFORMATION:

Same as Exhibit A.

7. IDENTIFIED DURING TRANSACTION AS : (Name)

None

(Title, Relationship to owner):

Unknown

8. MEANS OF IDENTIFICATION:

N/A

9. DETAILS OF TRANSACTION AT THE CASH REGISTER

The clerk totaled the price, bagged the items, and debited the food stamp account.

## E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION

### 1. EBT Benefits Issued, Used, and Returned

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|---|---|---|---|
| | $236.19 | $27.75 | $208.44 |
| | $0.00 | $0.00 | $0.00 |

EBT Receipt Included? Yes     Cash Register Tape Included? No

### 2. Comments

None

## F. CERTIFICATION

EBT CASH: $0.00

This declaration consists of __3__ pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein.

Further declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct

1. DATE EXECUTED (Month, Day, Year)
4/30/2007

4. INVESTIGATOR'S SIGNATURE

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 40

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | F |
|---|---|---|
| **TRANSACTION REPORT** | PAGE | 1 |

| A. CASE IDENTIFICATION DATA | 3. STORE NAME AND ADDRESS |
|---|---|
| 1. RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER **TR25611** | ASAFO Market 1309 5th St NE |
| 2. DATE     4/12/2007 | Washington                    DC    20002 |

## B. INVESTIGATOR'S STATEMENT

1. I, _____ _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time) __1:00 PM__, I entered subject store. I selected the items specified in Section C below. This store has ___1___ primary grocery check-out registers. ___1___ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) ___0___ person(s) in line ahead of me and ___0___ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$48.55__. As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about __1:04 PM__ .

**OTHER COMMENTS**

Major.

A.R. 41

| C. SUMMARY OF PURCHASE | | CASE NUMBER | EXHIBIT |
|---|---|---|---|
| 1. PURCHASE PRICE CHARGED BY CLERK    $48.55 | | TR25611 | F |
| | | | PAGE |
| | | | 2 |

**2. INELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-  152 count ZIPLOC gallon bags | 16.99 |

**3. ELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-  1 gal juice | NPI |
| 1-  35 count snack bars | NPI |
| 1-  5 lb. 2.5oz lemonade mix | NPI |
| 1-  5 lb. rice | NPI |

**4. ITEMS PURCHASED WITH CASH CHANGE**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

**5. ITEMS REFUSED**

| QUANTITY AND DESCRIPTION | |
|---|---|
| None | |

*NPI=No Price Indicated or Price Illegible

FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 42

**D. APPEARANCE OF CLERK**

| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | CASE NUMBER TR25611 | EXHIBIT F |
|---|---|---|---|---|---|---|
| | | | | | Result M | PAGE 3 |

6. OTHER IDENTIFYING INFORMATION:

Same as Exhibit A.

7. IDENTIFIED DURING TRANSACTION AS : (Name)

None

(Title, Relationship to owner):

Unknown

8. MEANS OF IDENTIFICATION:

N/A

9. DETAILS OF TRANSACTION AT THE CASH REGISTER

The clerk totaled the price, bagged the items, and debited the food stamp account.

**E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION**

1. EBT Benefits Issued, Used, and Returned

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|---|---|---|---|
| | $364.05 | $48.55 | $315.50 |
| | $0.00 | $0.00 | $0.00 |

EBT Receipt Included?  Yes     Cash Register Tape Included?  No

2. Comments

None

**F. CERTIFICATION**        EBT CASH:        $0.00

This declaration consists of ___3___ pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein.

Further declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct

1. DATE EXECUTED (Month, Day, Year)
4/30/2007

4. INVESTIGATOR'S SIGNATURE

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 43

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | G |
|---|---|---|
| **TRANSACTION REPORT** | PAGE | 1 |

**A. CASE IDENTIFICATION DATA**

1. RETAILER INVESTIGATIONS BRANCH
CASE IDENTIFICATION NUMBER

**TR25611**

2. DATE     **4/19/2007**

**3. STORE NAME AND ADDRESS**

**ASAFO Market**
**1309 5th St NE**
**Washington**          . DC     **20002**

**B. INVESTIGATOR'S STATEMENT**

1. I, _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time) __1:02 PM__, I entered subject store. I selected the items specified in Section C below. This store has __1__ primary grocery check-out registers. __1__ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) __1__ person(s) in line ahead of me and __0__ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$17.96__. As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about __1:06 PM__ .

**OTHER COMMENTS**

Trafficking ($10 for $10).

FORM FNS-413 (PAGE 1 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 44

| C. SUMMARY OF PURCHASE | | CASE NUMBER | EXHIBIT |
|---|---|---|---|
| 1. PURCHASE PRICE CHARGED BY CLERK | $17.96 | TR25611 | G |
| | | | PAGE |
| 2. INELIGIBLE ITEMS | | | 2 |

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

**3. ELIGIBLE ITEMS**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| 1-   8oz rice | NPI |
| 1-   6 pack cookies | NPI |
| 1-   64floz juice | NPI |
| 1-   36 pack pop tarts | NPI |

**4. ITEMS PURCHASED WITH CASH CHANGE**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

**5. ITEMS REFUSED**

| QUANTITY AND DESCRIPTION | PRICE * |
|---|---|
| None | |

*NPI=No Price Indicated or Price Illegible

**FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.**

A.R. 45

**D. APPEARANCE OF CLERK**

| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | CASE NUMBER TR25611 | EXHIBIT |
|--------|--------|-----------------|-----------|---------------|---------------------|---------|
| | | | | | | G |
| | | | | | Result D | PAGE 3 |

| 6. OTHER IDENTIFYING INFORMATION: | 7. IDENTIFIED DURING TRANSACTION AS : (Name) |
|---|---|
| Same as Exhibit A. | None |
| | (Title, Relationship to owner): |
| | Unknown |
| | 8. MEANS OF IDENTIFICATION: |
| | N/A |

**9. DETAILS OF TRANSACTION AT THE CASH REGISTER**

The clerk totaled the price, bagged the items and as I gave her the card I asked if she could change some stamps. The clerk asked how much and I said ten. The clerk said I will add ten dollars to the total and I said ok. The clerk debited the food stamp account and took a $20.00 bill out of the register. She put the twenty in a box underneath the counter and took a ten out of the box, which she gave to me. I thanked her and left.

**E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION**

**1. EBT Benefits Issued, Used, and Returned**

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|---|---|---|---|
| | $295.52 | $27.96 | $267.56 |
| | $0.00 | $0.00 | $0.00 |

EBT Receipt Included?   Yes          Cash Register Tape Included?   No

**2. Comments**

-(1) $10.00 bill - DK28093803A Federal Reserve System   Series 2003

**F. CERTIFICATION**    EBT CASH:    $10.00

This declaration consists of ___3___ pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein.

I. DATE EXECUTED (Month, Day, Year)
4/30/2007

Further declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct

INVESTIGATOR'S SIGNATURE

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 46

| US DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | EXHIBIT | H |
| TRANSACTION REPORT | PAGE | 1 |

| A. CASE IDENTIFICATION DATA | 3. STORE NAME AND ADDRESS |
| 1. RETAILER INVESTIGATIONS BRANCH CASE IDENTIFICATION NUMBER | ASAFO Market |
| TR25611 | 1309 5th St NE |
| 2. DATE    4/27/2007 | Washington    DC    20002 |

## B. INVESTIGATOR'S STATEMENT

1. I, _____, Investigator, Food and Nutrition Service, United States Department of Agriculture, make the following statement freely and voluntarily, knowing that this statement may be used in evidence.

2. On the above date, at about (time) __2:23 PM__, I entered subject store. I selected the items specified in Section C below. This store has __1__ primary grocery check-out registers. __1__ (was/were) in operation at the time of purchase. At the check-out counter there (was/were) __0__ person(s) in line ahead of me and __0__ person(s) in line behind me. The clerk sold to me the items listed in Section C 2 and 3, below at a total cost of __$25.96__. As the clerk rang up the transaction, the EBT card was where it could have been viewed by the clerk. I gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below. I departed the store at about __2:27 PM__.

## OTHER COMMENTS

Trafficking ($20 for $20).

| C. SUMMARY OF PURCHASE | | CASE NUMBER | EXHIBIT |
|---|---|---|---|
| 1. PURCHASE PRICE CHARGED BY CLERK | $25.96 | TR25611 | H |
| | | | PAGE |
| 2. INELIGIBLE ITEMS | | | 2 |
| QUANTITY AND DESCRIPTION | | | PRICE * |
| None | | | |

| 3. ELIGIBLE ITEMS | | |
|---|---|---|
| QUANTITY AND DESCRIPTION | | PRICE * |
| 1- 52oz (3-pack) cereal | | NPI |
| 1- 60oz rice | | NPI |
| 1- 40oz peanut butter | | NPI |
| 1- 64floz juice | | 3.99 |

| 4. ITEMS PURCHASED WITH CASH CHANGE | |
|---|---|
| QUANTITY AND DESCRIPTION | PRICE * |
| None | |

| 5. ITEMS REFUSED | |
|---|---|
| QUANTITY AND DESCRIPTION | |
| None | |

*NPI=No Price Indicated or Price Illegible

FORM FNS-413 (PAGE 2 OF 3) - (7-98) PREVIOUS EDITIONS OBSOLETE.

A.R. 48

**D. APPEARANCE OF CLERK**

| 1. SEX | 2. AGE | 3. HEIGHT RANGE | 4. WEIGHT | 5. HAIR COLOR | CASE NUMBER TR25611 | EXHIBIT H |
|--------|--------|-----------------|-----------|---------------|---------------------|-----------|
|        |        |                 |           |               | Result D            | PAGE    3 |

**6. OTHER IDENTIFYING INFORMATION:**

Same as Exhibit A.

**7. IDENTIFIED DURING TRANSACTION AS : (Name)**

None

(Title, Relationship to owner):

Unknown

**8. MEANS OF IDENTIFICATION:**

N/A

**9. DETAILS OF TRANSACTION AT THE CASH REGISTER**

The clerk totaled the price and as I gave her the card I asked if she could change some stamps. She asked how much and I said twenty. She said ok, I will add twenty to the total of $21.97 and I said ok. She debited the food stamp account and bagged the items. The clerk said I didn't charge you for the juice so she debited the food stamp account again for that. She gave me a twenty dollar bill from the register, I thanked her and left.

**E. RECORD OF COUPONS ISSUED AND USED IN TRANSACTION**

**1. EBT Benefits Issued, Used, and Returned**

| EBT Card Number | A. Issued Value | B. Used Value | C. Returned Value |
|-----------------|-----------------|---------------|-------------------|
|                 | $234.98         | $41.97        | $193.01           |
|                 | $193.01         | $3.99         | $189.02           |

EBT Receipt Included?    Yes          Cash Register Tape Included?    No

**2. Comments**

-(1) $20.00: EL52340292E Federal Reserve System  Series 2004

**F. CERTIFICATION**                    EBT CASH:        $20.00

This declaration consists of ___3___ pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein.

**1. DATE EXECUTED (Month, Day, Year)**

4/30/2007

Further declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct

**4. INVESTIGATOR'S SIGNATURE**

FORM FNS-413 (PAGE 3 OF 3) - (7-98) PREVIOUS EDITIONS OBS

A.R. 49



**United States Department of Agriculture**

**Food and Nutrition Service**

Mid-Atlantic Region

Towson Field Office

515 E. Joppa Road
Suite 208
Towson, MD
21286-5418

Date:   November 5, 2007

Subject:   Asafo Market
          Washington, DC

To:   File

Philomena Affum came into the Towson Field Office today to respond to the letter of charges. A gentleman she identified only as her fiancé accompanied her to the office. The Officer-in-Charge, Sally Duncan and Program Specialist, Joseph Pecora listened to her reply. She stated her only excuse is that she believed the clerk was trying to please the customer. Ms Affum said she didn't know why the clerk was doing this because she (the clerk as well as Ms Affum) knew this was against the rules.

- This was someone that worked for her, not Ms Affum, conducting all the transactions.

- Ms Affum stated "If I was there, it wouldn't have happened. She must have thought she was using the cash benefit."

The OIC explained to the owner that she was responsible for the actions of the employees, and that this was a very serious situation. Even though these were even dollar transactions, they are still considered trafficking. In addition, the clerk consistently broke the rules. On each pass the investigator was allowed to purchase ineligible items or traffick.

Ms Affum asked for another chance. This is one of these difficult situations, but I don't believe I have a choice but to permanently disqualify the store.

Sally Duncan
Officer-in-Charge
Towson Field Office

Case 1:08-cv-00300-RCL    Document 9-3    Filed 04/04/2008    Page 9 of 42
Page 1 of 1

---

Case Number: C0113519

---

**Asafo Market**
**Store Number:** NONE
1309 Fifth St NE
Stand Numbers 39 and 40
Washington, District of Columbia
20002
County: DIST OF COLUMBIA
United States of America

**FNS Number:** 0079513

**Store Status:** 📇 Permanently
Disqualified
**Status Reason:** FSP Program Violation
**Status Effective Date:** 11/16/2007

**Case Worker:** Joseph Pecora
(Towson, MD)
**Case Office:** Towson, MD
**Case Originator:** Field Office

**Case Owner:** ARB

---

( Update )   ( Recommend Letter )

| Case Summary | TCMP Criteria | SOI Hardship |

**Case Summary Opened Date:** 10/12/2007 Entered By: Joseph Pecora (Towson, MD)
Entered Date: 10/04/2007

---

**Previous Sanctions:** 0
**Previous Trafficking CMP?** No
**Transactions including Majors:** 1
**Trafficking Violations:** 2

**Previous warning within 3 years?** No
**Previous Trafficking CMP Amount:** $0.00
**Refusals - Complete:** 0
**Largest Benefit Transaction:** <$100

**Transactions Meeting 30% Rule:** 4
**Refusals - Partials:** 0

**Violator Information**

**Owner Participation**
☐ Trafficking not eligible for TCMP
☐ Ineligibles
☐ Credit

**Manager Participation:**
☐ Trafficking - 1st (may be eligible for TCMP)

☐ Trafficking - 2nd (not eligible for TCMP)
☐ Ineligibles
☐ Credit

**Other Participation:**
☐ Trafficking by others?
☑ Unknown - unidentified
☐ Credit

**Number of Clerks Involved:** NONE

---

**CMP Calculation**
Month of Calculation: October 2007
Collateral Bond Amount: NONE

**SOI CMP Calculations:**
Civil Money Penalty: NONE
( View Details )

**Trafficking CMP Calculations:**
Maximum Penalty: $54,000.00
Trafficking CMP Amount: $54,000.00
( View Details )

---

**Sanction:** Permanent Disqualification CFR278.6(e)(1)
☐ **Double sanction period per CFR 278.6 (e)(6) due to previous sanction.**

---

**Previous Comments**

No comments exist.

---

( Update )   ( Recommend Letter )

---

© FNS 2007 STARS. STARS is meant for the FNS community and other authorized users. Access by others will be prosecuted to the fullest extent of the law.
[Page ID: C_207]

A.R. 51

---

Case Number: C0113519

---

**Asafo Market**
Store Number: NONE
1309 Fifth St NE
Stand Numbers 39 and 40
Washington, District of Columbia
20002
County: DIST OF COLUMBIA
United States of America

FNS Number: 0079513

Store Status: ⬛ Permanently
Disqualified
Status Reason: FSP Program Violation
Status Effective Date: 11/16/2007

Case Worker: Joseph Pecora
(Towson, MD)
Case Office: Towson, MD
Case Originator: Field Office

Case Owner: ARB

---

( Update )    ( Recommend Letter )

| Case Summary | TCMP Criteria | SDI Hardship |

Was the store owner or person responsible for the meal service previously disqualified: No
How many previous disqualifications at the owner's store(s) or person responsible's meal service(s)? 0
Did store/meal service request a TCMP within 10 calendar days? No
Did the store/meal service have an effective compliance policy? No
Was the policy and program in operation prior to the occurrence of the violations cited? No
Did the store/meal service have an effective personnel training program? No
Was store owner/person responsible for the meal service aware of or involved in trafficking? Yes
Or did store owner/person responsible for the meal service benefit from or approve of trafficking? Yes
Was store management aware of or involved in trafficking? Yes
Or did store management benefit from or approve of trafficking? Yes

---

**CMP Calculation**
Based upon the above criteria, a TCMP is not the appropriate penalty, because the firm DOES NOT meets the qualifications.

---

( Update )    ( Recommend Letter )

---

© FNS 2007 STARS. STARS is meant for the FNS community and other authorized users. Access by others will be prosecuted to the fullest extent of the law.
[Page ID: C_209]

▶

A.R. 52

**Pecora, Joseph**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Friday, November 16, 2007 5:23 PM |
| **To:** | Pecora, Joseph |
| **Subject:** | FedEx Shipment 791434786670 Delivered |

---

This tracking update has been requested by:

| | |
|---|---|
| Company Name: | USDA/FNS |
| Name: | OIC OIC |
| E-mail: | joseph.pecora@fns.usda.gov |

---

Our records indicate that the following shipment has been delivered:

| | |
|---|---|
| Ship (P/U) date: | Nov 15, 2007 |
| Delivery date: | Nov 16, 2007 5:14 PM |
| Sign for by: | E.BENNETH |
| Delivered to: | Shipping/Receiving |
| Service type: | FedEx 2Day |
| Packaging type: | FedEx Pak |
| Number of pieces: | 1 |
| Weight: | 1.00 lb. |
| Special handling/Services: | Deliver Weekday |

Tracking number:                791434786670

| Shipper Information | Recipient Information |
|---|---|
| OIC OIC | Philomena Affum |
| USDA/FNS | ASAFO MARKET |
| 515 E. Joppa Road, Suite 208 | 1309 Fifth Street NE;Stand Numbers 39 and 40 |
| Towson | Washington |
| MD | DC |

A.R. 53



Español | Customer Support | FedEx Locations    Search _____    Go

Package/Envelope        Freight        Expedited        Office/Print Services ✶

Ship ▸        Track ▸        Manage ▸        Business Solutions ▸

Track Shipments/FedEx Kinko's Orders
## Detailed Results

🖨 Printable Version  ❔ Quick Help

| | | | | |
|---|---|---|---|---|
| **Tracking number** | 791434786670 | **Destination** | Washington, DC | **Wrong Address?** |
| **Signed for by** | E.BENNETH | **Delivered to** | Shipping/Receiving | Reduce future mistakes by using |
| **Ship date** | Nov 15, 2007 | **Service type** | FedEx 2Day Pak | FedEx Address Checker. |
| **Delivery date** | Nov 16, 2007 5:14 PM | **Weight** | 1.0 lbs. | |
| **Status** | Delivered | | | **Tracking a FedEx SmartPost** |
| | | | | **Shipment?** |
| **Signature image available** | Yes | | | Go to shipper login |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| Nov 16, 2007 | 5:14 PM | Delivered | Washington, DC | |
| | 8:23 AM | On FedEx vehicle for delivery | WASHINGTON, DC | |
| | 7:32 AM | At local FedEx facility | WASHINGTON, DC | |
| | 6:18 AM | At dest sort facility | DULLES, VA | |
| | 3:47 AM | Departed FedEx location | MEMPHIS, TN | |
| | 1:29 AM | Arrived at FedEx location | MEMPHIS, TN | |
| Nov 15, 2007 | 8:43 PM | Left origin | BALTIMORE, MD | |
| | 2:56 PM | Picked up | BALTIMORE, MD | |
| | 6:38 AM | Package data transmitted to FedEx | | |

Find locations even easier.

[ Signature proof ]  [ E-mail results ]  [ Track more shipments/orders ]

Subscribe to tracking updates (optional)

**Your Name:** [_____]          **Your E-mail Address:** [_____]

| E-mail address | Language | Exception updates | Delivery updates |
|---|---|---|---|
| _____ | English ▾ | ☑ | ☐ |
| _____ | English ▾ | ☑ | ☐ |
| _____ | English ▾ | ☑ | ☐ |
| _____ | English ▾ | ☑ | ☐ |

Select format: ⦿ HTML  ○ Text  ○ Wireless

Add personal message:

Not available for Wireless or
non-English characters.

[text box]

– By selecting this check box and the Submit button, I agree to these Terms and Conditions

[ Submit ]

Global Home | FedEx Mobile | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site map

This site is protected by copyright and trademark laws under US and international law. All rights reserved. © 1995-2007 FedEx

A.R. 54



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

November 19, 2007

Dear Customer:

The following is the proof of delivery you requested with the tracking number **791434786670**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | Washington, DC |
| Signed for by: | E.BENNETH | Delivery date: | Nov 16, 2007 17:14 |
| Service type: | FedEx 2Day Pak | | |

## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 791434786670 | Ship date: | Nov 15, 2007 |
| | | Weight: | 1.0 lbs. |

Recipient:
Washington, DC US

Shipper:
Towson, MD US

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

A.R. 55

From:    Origin ID: ESNA   (410)962-2390
OIC OIC
USDA/FNS
515 E. Joppa Road, Suite 208

**Towson, MD 21286**



CL0HH4867/2123

Ship Date: 15NOV07
ActWgt: 1 LB
System#: 4411242/INET7091
Account#: S *********

SHIP TO: (202)548-9770         **BILL SENDER**

**Philomena Affum
ASAFO MARKET
1309 Fifth Street NE
Stand Numbers 39 and 40
Washington, DC 20002**

Delivery Address Bar Code

Ref #
Invoice #
PO #
Dept #



TRK#
0201    7914 3478 6670

**MON - 19NOV**    **A1**
** 2DAY **

## SA-YKNA

**IAD**
DC-US
**20002**



Shipping Label: Your shipment is complete

1.  Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2.  Fold the printed page along the horizontal line.

3.  Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.
FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

A.R. 56



United States
Department of
Agriculture

November 14, 2007

Food and Nutrition
Service

Philomena Affum
Asafo Market
1309 Fifth St Ne Stand Numbers 39 And 40
Washington, DC 20002

Towson Field
Office

515 East Joppa Rd,
Suite 208,
Towson, MD
21286-5418

Consideration has been given to the information and evidence available to us relating to our letter of charges dated October 10, 2007, and to your reply of November 05, 2007. We find that the violations cited in our charge letter occurred at your firm.

Phone:
410-962-2390
Fax:
410-962-2401

We considered your eligibility for a trafficking civil money penalty (CMP) according to the terms of Section 278.6(i) of the Food Stamp Program (FSP) regulations (enclosed). We have determined that you are not eligible for the CMP because you failed to submit sufficient evidence to demonstrate that your firm had established and implemented an effective compliance policy and program to prevent violations of the Food Stamp Program.

Therefore, your firm shall be permanently disqualified from the Food Stamp Program, effective upon receipt of this letter. This is in accordance with Section 278.6(c) and 278.6(e)(1) of the FSP regulations.

This determination will be final unless you submit a written request for review to the Chief, Administrative Review Branch, USDA, FNS, 3101 Park Center Drive, Room 608, Alexandria, Virginia 22302. Your request for review must be postmarked by midnight of the 10th calendar day after you receive this letter, in order to be considered timely. If the 10th day of the period for requesting review falls on a Saturday, Sunday or legal (Federal) holiday, as specified in Section 279.2(c) of the FSP regulations, a request for review will be timely if it is postmarked the next day which is not a Saturday, Sunday or legal (Federal) holiday. The rules governing your review rights are contained in Section 278.6(n) and Part 279 of the FSP regulations.

During this review process, you may not accept food stamp benefits until a decision is rendered. If the permanent disqualification of your firm is later reversed through administrative or judicial review, USDA shall not be liable for the value of any sales lost during the period of disqualification you served (FSP regulations Section 278.6(c)).

This determination shall not preclude the Department of Agriculture or any other agency or department of the United States from taking further action to collect any claim determined under the FSP regulations or under any other pertinent statutes or

regulations, nor shall this determination preclude prosecution under any applicable laws.

Your Electronic Benefit Transfer (EBT) processor will be advised to disable your EBT connection. Your EBT machine should be returned to your EBT vendor. If you accept food stamp benefits after the effective date of disqualification, you will be subject to a monetary fine per Section 278.6(m) of the FSP regulations and possible prosecution under applicable laws.

If you are an authorized vendor under the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), you may be disqualified from the WIC Program as a result of your disqualification from the FSP. In accordance with current law governing both the FSP and the WIC Program, such a WIC Program disqualification is not subject to administrative or judicial review under the WIC Program. A CMP from the Food Stamp Program may also result in a WIC Program disqualification, but such a disqualification would be subject to administrative and/or judicial review.

In the event that you sell or transfer ownership of your store subsequent to your disqualification, you will be subject to and liable for a CMP as provided by FSP regulations Sections 278.6(f)(2), (3), and (4). The amount of this sale or transfer CMP will be calculated based on FSP regulations at 278.6(g).

Sincerely,

SARAH DUNCAN
Officer-In-Charge
Towson, MD Field Office

Enclosure


United States Department of Agriculture
**Food and Nutrition Service**

**United States Department of Agriculture**

November 19, 2007

Food and Nutrition Service

**DISQUALIFICATIONS CHECKLIST**

Mid-Atlantic Region

Towson Field Office

515 E. Joppa Road
Suite 208
Towson, MD
21286-5418

410-779-7097

☒ Check Citibank; date of last transaction executed   November 18, 2007

☒ Call Store; date of call  November 19, 2007

☒ Remove in STARS

☒ Final Report

The Food and Nutrition Service is an agency
of the Department of Agriculture

An Equal Opportunity Provider and Employer

A.R. 59

RJSDJI                    Washington DC EBT Production System            11/19/07
                               Detail Journal Inquiry                    07:07:06

        FCS #:  0079513                    DATE:    11162007

|Sel| Date     | Time | Type | Trn Amt | Cmp Amt | Card Number        | Auth id | AFSC |
|---|----------|------|------|---------|---------|--------------------|---------|------|
| - | 11/17/07 | 15:33| 1.0  | 6.99    | 6.99    | 5077070006235493   | 369856  | YNNS |
| - | 11/17/07 | 16:34| 1.0  | 15.98   | 15.98   | 5077070002515278   | 371157  | YNNS |
| - | 11/17/07 | 16:56| 1.0  | 1.99    | 1.99    | 5077070005333786   | 371656  | YNNK |
| - | 11/17/07 | 17:02| 1.0  | 13.97   | 13.97   | 5077070006260723   | 371809  | YNNS |
| - | 11/17/07 | 17:04| 1.0  | 44.92   | 44.92   | 5077070006216063   | 371855  | YNNS |
| - | 11/17/07 | 17:07| 1.0  | 9.96    | 9.96    | 5077070006260723   | 371929  | YNNS |
| - | 11/18/07 | 8:45 | 1.0  | 8.53    | 8.53    | 5077070006032403   | 378133  | YNNS |
| - | 11/18/07 | 9:05 | 1.0  | 25.98   | 25.98   | 5077070005658620   | 378280  | YNNK |
| - | 11/18/07 | 9:32 | 1.0  | 6.05    | 6.05    | 5077070005974415   | 378563  | YNNS |
| - | 11/18/07 | 9:33 | 1.0  | 3.99    | 3.99    | 5077070005914825   | 378573  | YNNS |
| - | 11/18/07 | 9:54 | 1.0  | 15.98   | 15.98   | 5077070006089460   | 378816  | YNNS |
| . | \   \    | :00  | .    | .00     | .00     |                    |         |      |

=================================================================================
        F4-Read  F6-Read Next   SF4-Transaction Detail
o More Records Available  . . . . . . . . . . . .

A.R. 60

FNS Number: 0079513

**Asafo Market**
Store Number: NONE

**Status:** ▉ Permanently Disqualified
**Status Reason:** FSP Program Violation
**Status Effective Date:** 11/16/2007

Corporation Name: NONE
Corporation Number: NONE
Centralization Plan Number: NONE

**Assigned Field Office:** Towson, MD

---

**Current Status**

**Status:** ▉ Permanently Disqualified
**Status Reason:** FSP Program Violation

**Change Authorized By:** Joseph Pecora (Towson, MD)

**Duration of Status:** NONE
**Date Eligible to Reinstate:** NONE

**Status Effective From Date:** 11/16/2007
**Status Effective To Date:** NONE

Entered By: Joseph Pecora (Towson, MD)
Entered Date: 11/19/2007

---

**Status History**

| Status | Status Reason | Effective Dates (From - To) | Date Eligible to Reinstate | Entered By | Data Entry Date |
|---|---|---|---|---|---|
| Authorized | Initial Authorization | 08/25/2006 - 11/15/2007 | NONE | Joseph Pecora (Towson, MD) | 08/25/2006 |
| Application | Application Pending | 08/03/2006 - 08/24/2006 | NONE | Deneen Henson (Towson, MD) | 08/03/2006 |
| Application | Application Requested | 07/26/2006 - 08/02/2006 | NONE | Steven Greeley (BRSB) | 07/26/2006 |

---

**Previous Comments**

No Comments Exist

---

( Add New Status )    ( Print Authorization Card )    ( Print Labels )

---

© FNS 2007 STARS. STARS is meant for the FNS community and other authorized users. Access by others will be prosecuted to the fullest extent of the law.
[Page ID: S_606]

A.R. 61

s://stars.fns.usda.gov/stars/storeStatusAdd.do



USDA  United States Department of Agriculture
       **Food and Nutrition Service**

| | | |
|---|---|---|
| **United States Department of Agriculture** | Date: | November 19, 2007 |
| **Food and Nutrition Service** | Subject: | Final Report |
| Mid-Atlantic Region | Store: | ASAFO |
| Towson Field Office | To: | The File |

515 E. Joppa Road
Suite 208
Towson, MD
21286-5418

410-779-7097

The store received the permanent disqualification letter on November 16, 2007; therefore, the effective date of the permanent disqualification is the close of business on November 16, 2007. On November 19, 2007 the Towson Field Office contacted Mrs. Affum to remind her that she could not conduct any more food stamp transactions. She was not contacted on November 16, 2007 because the notification that the letter had been received arrived after the office had closed; therefore, the owner was not aware that November 16, 2007 was the last day to conduct transactions. That is why there were transactions conducted on November 17 and November 18. During the call on November 19, 2007 Mrs. Affum stated that she understood. She was also advised that if she did conduct transactions she would be fined. Mrs. Affum once again stated that she understood.

The store was permanently disqualified in the STARS system on November 19, 2007 with an effective date of November 16, 2007.

The last transaction executed by the firm occurred on November 18, 2007.

Sarah A. Duncan
Officer In Charge
Towson Field Office

The Food and Nutrition Service is an agency
of the Department of Agriculture

An Equal Opportunity Provider and Employer

A.R. 62



Philomena Affum
Asafo Market
1309 5th St. NE #39 & 40
Washington, D.C. 20002

The Chief
Administrative Review Branch
USDA, FNS
3101 Park Center Drive
Alexandria, VA 22302


Dear Sir/ Madam,

Your letter dated on November 14, 2007 was received on Sunday, November 18, 2007 and the contents were well noted. However, I feel that the penalty of permanent disqualification from the Food Stamp Program is rather too harsh considering this is a first time offense. I am deeply sorry that this mistake occurred and the worker who has committed this offense has been reprimanded and is very sorry as well. I humbly ask that the matter be given another consideration and the penalty be lessened so that we may remain in business. Thank you for giving me this opportunity to request a review of this issue. I have also attached the original letter, dated November 14, 2007. I hope to hear from you soon.


Sincerely,

Philomena Affum
Owner
Asafo Market

A.R. 63

**USDA**

November 14, 2007

**United States
Department of
Agriculture**

**Food and Nutrition
Service**

Philomena Affum
Asafo Market
1309 Fifth St Ne Stand Numbers 39 And 40
Washington, DC 20002

**Towson Field
Office**

515 East Joppa Rd,
Suite 208,
Towson, MD
21286-5418

Phone:
410-962-2390
Fax:
410-962-2401

Consideration has been given to the information and evidence available to us relating to our letter of charges dated October 10, 2007, and to your reply of November 05, 2007. We find that the violations cited in our charge letter occurred at your firm.

We considered your eligibility for a trafficking civil money penalty (CMP) according to the terms of Section 278.6(i) of the Food Stamp Program (FSP) regulations (enclosed). We have determined that you are not eligible for the CMP because you failed to submit sufficient evidence to demonstrate that your firm had established and implemented an effective compliance policy and program to prevent violations of the Food Stamp Program.

Therefore, your firm shall be permanently disqualified from the Food Stamp Program, effective upon receipt of this letter. This is in accordance with Section 278.6(c) and 278.6(e)(1) of the FSP regulations.

This determination will be final unless you submit a written request for review to the Chief, Administrative Review Branch, USDA, FNS, 3101 Park Center Drive, Room 608, Alexandria, Virginia 22302. Your request for review must be postmarked by midnight of the 10th calendar day after you receive this letter, in order to be considered timely. If the 10th day of the period for requesting review falls on a Saturday, Sunday or legal (Federal) holiday, as specified in Section 279.2(c) of the FSP regulations, a request for review will be timely if it is postmarked the next day which is not a Saturday, Sunday or legal (Federal) holiday. The rules governing your review rights are contained in Section 278.6(n) and Part 279 of the FSP regulations.

During this review process, you may not accept food stamp benefits until a decision is rendered. If the permanent disqualification of your firm is later reversed through administrative or judicial review, USDA shall not be liable for the value of any sales lost during the period of disqualification you served (FSP regulations Section 278.6(c)).

This determination shall not preclude the Department of Agriculture or any other agency or department of the United States from taking further action to collect any claim determined under the FSP regulations or under any other pertinent statutes or

AN EQUAL OPPORTUNITY EMPLOYER

A.R. 64



regulations, nor shall this determination preclude prosecution under any applicable laws.

Your Electronic Benefit Transfer (EBT) processor will be advised to disable your EBT connection. Your EBT machine should be returned to your EBT vendor. If you accept food stamp benefits after the effective date of disqualification, you will be subject to a monetary fine per Section 278.6(m) of the FSP regulations and possible prosecution under applicable laws.

If you are an authorized vendor under the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), you may be disqualified from the WIC Program as a result of your disqualification from the FSP. In accordance with current law governing both the FSP and the WIC Program, such a WIC Program disqualification is not subject to administrative or judicial review under the WIC Program. A CMP from the Food Stamp Program may also result in a WIC Program disqualification, but such a disqualification would be subject to administrative and/or judicial review.

In the event that you sell or transfer ownership of your store subsequent to your disqualification, you will be subject to and liable for a CMP as provided by FSP regulations Sections 278.6(f)(2), (3), and (4). The amount of this sale or transfer CMP will be calculated based on FSP regulations at 278.6(g).

Sincerely,

SARAH DUNCAN
Officer-In-Charge
Towson, MD Field Office

Enclosure

A.R. 65

**United States
Department of
Agriculture**



DEC 0 5 2007

Food and
Nutrition
Service

Administrative
Review Branch
Suite 608

3101 Park
Center Drive

Alexandria, VA
22302

(703) 305-2645

General:
(703) 305-2820

Fax:
(703) 305-2821

jerry.masefield
@fns.usda.gov

Philomena Affum, Owner
Asafo Market
1309 5th St. NE, Stands #39 & #40
Washington, DC 20002

Dear Ms. Affum:

The Chief of the Administrative Review Branch received your letter received November 26, 2007 in which you requested an administrative review of the initial decision by the Towson Field Office of the Food and Nutrition Service to permanently disqualify your store from participation in the Food Stamp Program. The Branch Chief has granted your request for review and has assigned the case to me. Any further correspondence regarding this review should be addressed to me.

If there is any additional information you may wish to provide in support of your position in this matter, it must be provided to me within three weeks of the date you receive this letter.

Sincerely,

ORIGINAL SIGNED BY

JERRY A. MASEFIELD
Administrative Review Officer

A.R. 66

**Pecora, Joseph**

| | |
|---|---|
| **From:** | Self, Robin |
| **Sent:** | Tuesday, November 27, 2007 11:40 AM |
| **To:** | Pavlov, Kathryn; Ryan, Ella; Duncan, Sally; Pecora, Joseph |
| **Subject:** | RE: Request for Review |

ARB received the following appeal.

    ASAFO MARKET
       WASHINGTON, DC
    Date Mailed: 11-14-07
    Date Recd:  11-16-07
    Date of Request: 11-24-07
    Action:  PERM
    Review Officer:  JERRY MASEFIELD
    CASE NUMBER:  C0113519

A.R. 67



**USDA** United States Department of Agriculture
**Food and Nutrition Service**

United States
Department of
Agriculture

Food and
Nutrition Service

Mid-Atlantic Region

Towson Field Office

515 E. Joppa Road
Suite 208
Towson, MD
21286-5418

410-779-7097

DATE:          December 07, 2007

SUBJECT:     Food Stamp Program—ASAFO Market
                                          Washington DC

TO:            Jerry Masefield
                 **Administrative Review Officer**
                 **USDA FNS BRD ARB**
                 **3101 Park Center Drive Room 608**
                 **Alexandria VA  22302**

Attached is the subject file.  Should you have any questions, I can be reached at (410)
779-7097.

Thank you,

Sarah A. Duncan
Officer in Charge
Towson Field Office

~~~VED~~~

~~~ -2 08

~~~ ADMINISTRATIVE REVIEW DIVISION

Philomena Affum, Owner
Asafo Market
1309 5th St. NE, Stands #39 & #40
Washington, DC 20002
December 26, 2007

Jerry A. Masefield
Food and Nutrition Services
Administrative Review Branch Suite 808
3101 Park Center Drive
Alexandria, VA 22302

Dear Mr. Masefield,

I would like to first say that I am very grateful for this opportunity to further discuss this food stamp situation. I would like to state once again that I am deeply sorry for my mistake in improperly using the Food Stamp Program. My helper who was responsible for this great error was informed from the very beginning that the EBT was strictly for use with food items only and nothing else. I believe she did not truly understand the importance of adhering to this rule and began to also allow for the sale of non-food items with EBT without my knowledge. Her actions were careless and lazy and I am ashamed that this occurred at my store. Please understand that I was not aware of her actions and I do not condone what she has done. What she did was illegal and against what I stand for as a businesswoman. However, as the owner of Asafo Market I must take responsibility for the actions of my helper.

The loss of the Food Stamp Program at my store has damaged me tremendously financially. I depend primarily on revenue from the food stamps to keep my store going. The majority of those who shop at my store utilize food stamps and because of the loss of the EBT, my store has lost many customers to other businesses. As a result, it has become increasingly more difficult to sustain my store; with very large loans, rent, and very little business income from lack of EBT, I am in danger of losing everything. As a new business, which just started last year, my family has worked hard and has put everything into trying to make it a success. In trying to make the store a success I have tried to conduct business honorably and honestly. It seems that in this instance, a mistake was made. Asafo Market, had no intention in abusing or taking advantage of the privilege to the Food Stamp Program. I can wholeheartedly say that my helper who made this error and myself who is responsible, are deeply sorry and have paid dearly for what has occurred. We have learned from this experience and understand the seriousness of what has occurred.

I humbly yet imploringly ask that you grant me and my store, Asafo Market, a second chance. As of now, all that I have worked for and sacrificed is a failure, but with another opportunity to right this wrong, it can be turned into a success. If you grant Asafo Market the privilege of using the Food Stamp Program ever again, I promise you that misuse of the EBT

A.R. 69

will never happen again. In addition, the individual who directly misused the EBT is no longer helping at my store and will not even have the opportunity to make the same mistake again if my store is granted the Food Stamp privilege again. I cannot express enough how truly sorry I am and how important the Food Stamp Program is to the store's survival. Please give Asafo Market another chance at life. Thank you.

Sincerely,

Philomena Affum

**United States Department of Agriculture**



Food and Nutrition Service

Administrative Review Branch Suite 608

3101 Park Center Drive

Alexandria, VA 22302

(703) 305-2645

General: (703) 305-2820

Fax: (703) 305-2821

erry.masefield @fns.usda.gov

[JAN 2 2 2008

SUBJECT:     Asafo Market
             1309 5th St. NE, Stands #39 & #40
             Washington, DC 20002

TO:     Sarah A. Duncan, Officer in Charge
        Towson Field Office

Attached is a copy of the Final Agency Decision (FAD) in which I have recorded my findings after review of the subject case. It is my determination that the permanent disqualification, as originally imposed, is sustained.

Upon receipt of notification, your office will be advised of the date that the addressee received my letter of determination.

The subject file is herewith enclosed.


JERRY A. MASEFIELD
Administrative Review Officer

Enclosure

**RECEIVED**

JAN 2 4 2008

**USDA FNS**
TOWSON MD
FIELD OFFICE

A.R. 71



United States Department of Agriculture

USDA

Food and Nutrition Service

Administrative Review Branch
Suite 608

3101 Park Center Drive

Alexandria, VA 22302

(703) 305-2645

General:
(703) 305-2820

Fax:
(703) 305-2821

jerry.masefield@fns.usda.gov

COPY

JAN 2 2 2008

Philomena Affum, Owner
Asafo Market
1309 5th St. NE, Stands #39 & #40
Washington, DC 20002

**Re: Asafo Market v. Towson, Maryland Field Office**

Dear Ms. Affum:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service in response to your request for administrative review received on November 26, 2007. Also included therein is a statement regarding your rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support a finding that a Permanent Disqualification from participating as an authorized retailer in the Food Stamp Program was properly imposed against Asafo Market by the Towson, Maryland Field Office.

Sincerely,

ORIGINAL SIGNED BY

JERRY A. MASEFIELD
Administrative Review Officer

Enclosure

Cc: Towson Field Office, Sarah A. Duncan, Officer in Charge

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review**
**Alexandria, VA 22302**

| | |
|---|---|
| Asafo Market, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **Case Number: C0113519** |
| ) | |
| Towson, Maryland Field Office, ) | |
| ) | |
| Respondent. ) | |
| ——————————— ) | |

## FINAL AGENCY DECISION

It is the decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS), that there is sufficient evidence to support a finding that a Permanent Disqualification from participation as an authorized retailer in the Food Stamp Program was properly imposed against Asafo Market by the Towson, Maryland Field Office (hereinafter "Field Office").

## ISSUE

The issue accepted for review is whether the Field Office took appropriate action, consistent with 7 CFR §278.6(e)(1)(i) in its administration of the Food Stamp Program (FSP) when it imposed a Permanent Disqualification against Asafo Market on November 14, 2007.

## AUTHORITY

7 U.S.C. 2023 and its implementing regulations at 7 CFR §279.1 provide that "[A] food retailer or wholesale food concern aggrieved by administrative action under §278.1, §278.6 or §278.7 . . . may file a written request for review of the administrative action with FNS.

## STATEMENT OF THE CASE

The USDA conducted an investigation of the compliance of Asafo Market with Federal FSP law and regulations during the period February 7 through April 27, 2007. The investigation reported that personnel at Asafo Market, in addition to accepting FSP benefits in exchange for ineligible merchandise on six separate occasions, accepted $30.00 in FSP benefits in exchange for cash in the amount of $30.00 over the course of

A.R. 73

1

two occasions. Identification information ascertained from the investigation indicates that these violative transactions were handled by an unidentified female clerk.

As a result of evidence compiled from this investigation, the Field Office informed Appellant in a letter dated October, 10, 2007 that the firm was charged with violating the terms and conditions of the FSP regulations, 7 CFR §278.2(a).

In an in-person meeting on November 5, 2007, Appellant replied to the charges, indicating, in part, that the clerk encountered during the investigation knew that it was against the rules to sell ineligible nonfood items or exchange cash for Food Stamp benefits an that she may have only been trying to please the customer.

After giving consideration to the evidence and Appellant's reply, the Field Office informed Appellant, by letter dated November 14, 2007, that Asafo Market was permanently disqualified from participation as a retail store in the FSP.

In a letter received November 26, 2007, Appellant appealed the Field Office's assessment and requested an administrative review of this action. The appeal was granted.

## ANALYSIS AND FINDINGS

In administrative proceedings involving disputes of regulatory actions or inactions, USDA assumes the responsibility of establishing a sufficient factual record to prove or disprove the allegations of the appeal. The record is then reviewed in light of the evidentiary standards and analytical frameworks established by various courts of law.

In appeals of adverse actions, Appellant bears the burden of proving by a clear preponderance of the evidence, that the administrative actions should be reversed. That means Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

### I

The controlling statute in this matter is contained in the Food Stamp Act of 1977, as amended, 7 U.S.C. §2021 and 278 of Title 7 of the Code of Federal Regulations (CFR). Part 278.6(e)(1)(i) establishes the authority upon which a permanent disqualification may be imposed against a retail food store or wholesale food concern in the event that personnel of the firm have engaged in trafficking of Food Stamp benefits.

7 CFR §278.6(e)(1)(i) reads, in part, "FNS shall disqualify a firm permanently if personnel of the firm have trafficked as defined in § 271.2." Trafficking is defined, in part, in 7 CFR §271.2, as "the buying or selling of Food Stamp coupons or other benefit instruments for cash or consideration other than eligible food."

A.R. 74

2

## II

On review, Appellant's contentions in the matter are essentially the following:

- The worker who committed violations, despite being trained that EBT is strictly for use for the purchase of eligible food items only, was careless and lazy in her actions and was reprimanded. The worker is no longer employed with the store;
- Appellant was not aware of the violations and does not condone such activity;
- Permanent disqualification is too harsh of a penalty considering this is a first time offense; Request is made that the penalty be lessened; and,
- Permanent disqualification has caused economic hardship to Appellant's business.

With regards to Appellant's contention that she was not aware nor condoned the actions of her employee, who committed violations of the FSP because of carelessness and laziness despite being trained that EBT is strictly for use for purchases of eligible food items only, this contention cannot be accepted as a valid basis for dismissing any of the charges, or for mitigating the impact of those charges. Even if it was not Appellant who violated program regulations, as owner of the store, Appellant is liable for all violative transactions handled by store personnel. Regardless of whom the ownership of a store may utilize to handle store business, ownership is accountable for the proper handling of FSP benefit transactions. Appellant's contention that she did not know of any violations of program regulations at the store cannot be accepted as a valid basis for diminishing the penalty. To allow store ownership to disclaim accountability for the acts of persons whom the ownership chooses to utilize to handle store business would render virtually meaningless the enforcement provisions of the Food Stamp Act and the enforcement efforts of the USDA.

Regarding Appellant's contention that the worker who committed violations was reprimanded and no longer is employed with the store, it is important to clarify that the purpose of this review is to either validate or to invalidate the earlier decision of the Field Office. This review is limited to what circumstances were at the basis of the Field Office action at the time such action was made. It is not the purpose of this review to consider what subsequent remedial actions may be proposed so that a store may begin to comply with program requirements. There is no provision in the FSP regulations or internal agency policy directives for waiver or reduction of an administrative penalty assessment on the basis of after-the-fact corrective action implemented subsequent to investigative findings of program violations. Therefore, Appellant's contention that she has and will take corrective actions does not provide any valid basis for dismissing the charges or for mitigating the penalty imposed.

With regards to Appellant's contention that permanent disqualification would be too harsh of a punishment considering this is a first time offense, a record of participation in the FSP with no previously documented instance of violations does not constitute valid grounds for dismissal of the current charges of violations or for mitigating the impact of those charges. Neither the Food Stamp Act of 1977, as amended, nor the regulations issued pursuant thereto provide for discretion in cases involving trafficking violations. The Act, reads, in part, that disqualification _shall_ be "permanent upon ... the _first_

A.R. 75

*occasion* of a disqualification based on ... trafficking ... by a retail food store." (Emphasis added.)

Regarding Appellant's contention that permanent disqualification has caused economic hardship to her firm, it is recognized that economic hardship is a likely consequence whenever a store is permanently disqualified from participation in the FSP. However, consideration must be given to the interests of the program and fairness and equity, not only to competing stores but also to those other participating retailers who are complying fully with program regulations. In addition, fairness must be afforded to those other retailers who have been disqualified from the program in the past for similar violations.

## CONCLUSION

Based on a review of the evidence in this case, it appears that the program violations at issue did, in fact, occur as charged. As noted previously, the charges of violations are based on the findings of a formal USDA investigation. All transactions cited in the letter of charges were conducted by a USDA investigator and all are thoroughly documented. A review of this documentation has yielded no indication of error or discrepancy in any of the reported findings. Rather, the investigative record is specific and accurate with regard to the dates of the violations, the specific ineligible merchandise sold in exchange for FSP benefits, the exchange of FSP benefits for cash, and in all other critically pertinent detail.

Based on the discussion above, the decision to impose a permanent disqualification against Asafo Market is sustained.

## RIGHTS AND REMEDIES

Your attention is called to Section 14 of the Food Stamp Act (7 U.S.C. 2023) and to Section 279.7 of the Regulations (7 CFR §279.7) with respect to your right to a judicial review of this determination. Please note that if a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which you reside or are engaged in business, or in any court of record of the State having competent jurisdiction. If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision.

Under the Freedom of Information Act (FOIA), it may be necessary to release this document and related correspondence and records upon request. If we receive such a request, we will seek to protect, to the extent provided by law, personal information that if released, could constitute and unwarranted invasion of privacy.

ORIGINAL SIGNED BY

JAN 2 2 2008

_____                    _____
JERRY A. MASEFIELD                          DATE
ADMINISTRATIVE REVIEW OFFICER

A.R. 76

4

**Pecora, Joseph**

| | |
|---|---|
| **From:** | Duncan, Sally |
| **Sent:** | Wednesday, January 23, 2008 2:36 PM |
| **To:** | Pecora, Joseph |
| **Subject:** | FW: FedEx Shipment 799788379541 Delivered |

**From:** Masefield, Jerry
**Sent:** Wednesday, January 23, 2008 2:35 PM
**To:** Self, Robin; Duncan, Sally
**Subject:** FW: FedEx Shipment 799788379541 Delivered

ARO Decision letter was delivered on 1/23/2008.      Re: Asafo Market.


*Jerry*


**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Wednesday, January 23, 2008 12:18 PM
**To:** Masefield, Jerry
**Subject:** FedEx Shipment 799788379541 Delivered


This tracking update has been requested by:

| | |
|---|---|
| Company Name: | USDA, Food & Nutrition Service |
| Name: | Jerry Masefield |
| E-mail: | jerry.masefield@fns.usda.gov |


A.R. 77

3/2008

Our records indicate that the following shipment has been delivered:

| | |
|---|---|
| Reference: | Dtr Ltr-Asafo Mkt |
| Ship (P/U) date: | Jan 22, 2008 |
| Delivery date: | Jan 23, 2008 11:25 AM |
| Sign for by: | E.ADJEIKYEM |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx Priority Overnight |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Direct Signature Required |
| | Deliver Weekday |
| Tracking number: | 799788379541 |

| Shipper Information | Recipient Information |
|---|---|
| Jerry Masefield | Philomena Affum, Owner |
| USDA, Food & Nutrition Service | ASAFO MARKET |
| Administrative Review Branch;3101 Park Center Drive, Suite 608 | 1309 5TH # 40 ST NE;STANDS #39 & #40 |
| Alexandria | WASHINGTON |
| VA | DC |
| US | US |
| 22302 | 200027003 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:17 AM CST on 01/23/2008.
To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or visit us at fedex.com.
This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

A.R. 78

## Pecora, Joseph

---

**From:** TrackingUpdates@fedex.com
**Sent:** Tuesday, January 29, 2008 3:11 PM
**To:** Pecora, Joseph
**Subject:** FedEx Shipment 790431806409 Delivered

---

This tracking update has been requested by:

Company Name:        USDA/FNS
Name:                OIC. OIC
E-mail:              joseph.pecora@fns.usda.gov

---

Our records indicate that the following shipment has been delivered:

Ship (P/U) date:        Jan 24, 2008
Delivery date:          Jan 29, 2008 3:07 PM
Sign for by:            P.AFFUM
Delivered to:           Receptionist/Front Desk
Service type:           FedEx 2Day
Packaging type:         FedEx Pak
Number of pieces:       1
Weight:                 1.00 lb.
Special handling/Services:  Deliver Weekday

Tracking number:        790431806409

Shipper Information              Recipient Information
OIC OIC                          Philomena Affum
USDA/FNS                         Asafo Market
515 E. Joppa Road, Suite 208     1309 5TH ST NE;STAND NUMBERS 39
Towson                           AND 40
MD                               WASHINGTON
                                 DC

A.R. 79

US
21286

US
200027003

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 2:10 PM CST on 01/29/2008.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.



Español | Customer Support | FedEx Locations   Search   Go

| Package/Envelope | Freight | Expedited | Office/Print Services ✱ |
| Ship ▸ | Track ▾ | Manage ▸ | Business Solutions ▸ |

## Track Shipments/FedEx Kinko's Orders
## Detailed Results

🖶 Printable Version   ❓ Quick Help

| | | | | |
|---|---|---|---|---|
| **Tracking number** | 790431806409 | **Destination** | WASHINGTON, DC | |
| **Signed for by** | P.AFFUM | **Delivered to** | Receptionist/Front Desk | |
| **Ship date** | Jan 24, 2008 | **Service type** | FedEx 2Day Pak | |
| **Delivery date** | Jan 29, 2008 3:07 PM | **Weight** | 1.0 lbs. | |
| **Status** | Delivered | | | |
| **Signature image available** | Yes | | | |

**Wrong Address?**
Reduce future mistakes by using FedEx Address Checker.

**Tracking a FedEx SmartPost Shipment?**
Go to shipper login

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| **Jan 29, 2008** | 3:07 PM | **Delivered** | WASHINGTON, DC | |
| | 8:27 AM | On FedEx vehicle for delivery | WASHINGTON, DC | |
| | 7:47 AM | At local FedEx facility | WASHINGTON, DC | |
| **Jan 26, 2008** | 8:11 AM | At local FedEx facility | WASHINGTON, DC | Package not due for delivery |
| **Jan 25, 2008** | 6:56 PM | At dest sort facility | DULLES, VA | |
| | 3:59 PM | Departed FedEx location | MEMPHIS, TN | |
| | 1:05 PM | Arrived at FedEx location | MEMPHIS, TN | |
| **Jan 24, 2008** | 8:34 PM | Left origin | BALTIMORE, MD | |
| | 12:47 PM | Picked up | BALTIMORE, MD | |
| | 6:45 AM | Package data transmitted to FedEx | | |

Find locations even easier.

[ Signature proof ] [ E-mail results ] [ Track more shipments/orders ]

Subscribe to tracking updates (optional)

**Your name:** [_____]    **Your e-mail address:** [_____]

| E-mail address | Language | Exception updates | Delivery updates |
|---|---|---|---|
| [_____] | English | ☒ | ☐ |
| [_____] | English | ☐ | ☐ |
| [_____] | English | ☐ | ☐ |
| [_____] | English | ☐ | ☐ |

**Select format:** ⦿ HTML ◯ Text ◯ Wireless

Add personal message:

Not available for Wireless or non-English characters.

[_____]

A.R. 81



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

January 30, 2008

Dear Customer:

The following is the proof-of-delivery for tracking number **790431806409**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | WASHINGTON, DC |
| Signed for by: | P.AFFUM | Delivery date: | Jan 29, 2008 15:07 |
| Service type: | FedEx 2Day Pak | | |

## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 790431806409 | Ship date: | Jan 24, 2008 |
| | | Weight: | 1.0 lbs. |

Recipient:
WASHINGTON, DC US

Shipper:
Towson, MD US

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

A.R. 82

**USDA** United States Department of Agriculture
**Food and Nutrition Service**

United States
Department of
Agriculture

Food and Nutrition
Service

Mid-Atlantic Region

Towson
Field Office

515 E. Joppa Road
Suite 208
Towson, MD
21286-5418

410-779-7097

January 24, 2008

Philomena Afum, Owner
ASAFO Market
1309 Fifth St NE
Stand Numbers 39 and 40
Washington DC 20002

Dear Mrs. Afum:

On January 23, 2008, you received a notice of determination from Jerry A. Masefield the Food Stamp Program (FSP) Administrative Review Officer who reviewed your case. This notice informed you that the PERMANENT disqualification of your firm, ASAFO Market, which became effective on November 16, 2007, has been sustained. This letter is to confirm November 16, 2007 as the effective date of your firm's PERMANENT disqualification.

If you have not already done so, your authorization card, number 0079513, and all other official material relating to the FSP must be mailed immediately to: Sarah A. Duncan, Officer-In-Charge (OIC), United States Department of Agriculture (USDA), Food and Nutrition Service (FNS), Towson Field Office (TFO), 515 E. Joppa Road, Suite 208, Towson, MD. 21286.

Furthermore, under Section 278.6 (f)(2) of the FSP regulations, in the event that you sell or transfer ownership of ASAFO Market, you will be subject to and liable for a Civil Money Penalty (CMP). The CMP shall be double the penalty for a ten year disqualification period, to be calculated using the method found at 278.6(g).

The option to request Judicial Review of this decision is outlined in subpart B, section 279.7 of the enclosed FSP regulations. If a Judicial Review is desired, a firm aggrieved by the determination of the Administrative Review Officer may obtain Judicial Review of the determination by filing a complaint against the United States in the United States district court for the district in which the owner resides, or is engaged in business, or in any court of record of the State having competent jurisdiction.

The complaint must be filed within 30 days after the date of delivery or service upon the firm of the notice of determination of the Administrative Review Officer. Otherwise, in accordance with Section 279.8(e) of the FSP regulations, the determination shall be final. In accordance with Section 279.10(d) of the FSP regulations, if the PERMANENT disqualification of your firm is later reversed through Judicial Review, the USDA shall not be liable for the value of any sales lost during the period of disqualification you served.

The Food and Nutrition Service is an agency
of the Department of Agriculture

An Equal Opportunity Provider and Employer

A.R. 83

This determination shall not preclude the USDA, or any other agency or department of the United States, from taking further action to collect any claim determined under the regulations governing the FSP, or under any other pertinent statutes or regulations, nor shall this determination preclude prosecution under any applicable penal statutes.

Sincerely,

SARAH A. DUNCAN
Officer in Charge
Towson Field Office

Case Number: C0113519

Enclosures

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHILOMENA AFFUM,<br>d/b/a ASAFO MARKET,<br><br>         Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>and ED SCHAFER,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 08-300 (RCL) |

## DECLARATION OF ANDREA GOLD

I, Andrea Gold, do hereby declare and state the following:

1.  I have been employed as the Branch Chief of the Retailer Management and Issuance Branch, Benefit Redemption Division, at the Food and Nutrition Service (FNS) in the United States Department of Agriculture (USDA) since September 2004. In my current position as Branch Chief, I am responsible for policy related to issuance and to the participation of retail food stores in the Food Stamp Program (FSP), as well as oversight of retailer and Electronic Benefit Transfer (EBT) related activities.

2.  Prior to that time, I worked as Assistant Director of Field Operations in the Northeast Regional Office of FNS for two years and Assistant to the Director of Field Operations for three years. I also served as the retailer EBT liaison in the Northeast Region. Overall, I have been employed at FNS since June 1991.

3.  Jeff Cohen is the Director of the Food Stamp Program's Benefit Redemption Division. The Benefit Redemption Division consists of four branches: the Retailer Operations Branch, the Retailer Management and Issuance Branch, the Retailer Investigations Branch and the Administrative Review Branch. As Director of the Benefit Redemption Division, Mr. Cohen is responsible for policy formulation and oversight of the FSP's retailer operations and EBT operations. He is also responsible for compliance activities, which serve to detect fraud among authorized retailers. Furthermore, Mr. Cohen oversees the administrative actions taken in response to violations by authorized retailers and the administrative appeals of those retailers.

4.    I am periodically asked to serve as the Acting Director of the FSP Benefit Redemption Division.  When I serve as Acting Director, I have the authority otherwise delegated to Mr. Cohen.  Due to Mr. Cohen's extended absence, I am currently serving as Acting Director of the FSP Benefit Redemption Division.

5.    Section 12 of the Food Stamp Act (FSA) provides for disqualifications and civil monetary penalties (CMP) in the event that an approved retail food store violates the FSA.  This Section also states that the regulations shall provide the criteria for finding such violation.

6.    Section 12(b)(3)(B) of the FSA specifically provides that the Secretary shall have the discretion to impose a CMP in lieu of permanent disqualification for trafficking if the Secretary determines that there is substantial evidence that such store had an effective policy and program in effect to prevent violations of the Act and regulations.    In particular, the store must show evidence that:  the ownership of the store was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; and the management of the store was not aware of, did not approve of, did not benefit from and was not involved in the conduct of the violation; or the management was aware of, approved of benefitted from, or was involved in the conduct of no more than 1 previous violation by the store.

7.    The regulations implementing this statute are at 7 C.F.R. § 278.6(i).  These regulations list the criteria for eligibility for a CMP in lieu of permanent disqualification for trafficking. FNS may impose a CMP in lieu of a permanent disqualification for trafficking if the store timely submits to FNS substantial evidence which demonstrates that the store had established and implemented an effective compliance policy and program to prevent violations of the Food Stamp Program.

8.    There are four criteria that a store must meet to demonstrate substantial evidence. The first criterion is that the store shall have established an effective compliance policy as specified in 278.6(i)(1).

9.    The second criterion requires that the store prove that its compliance policy and program were in operation at the location where the violation occurred prior to the occurrence of the violations cited in the charge letter.

10.   The third criterion requires that the store had developed and instituted an effective personnel training program as specified in 278.6(i)(2).

11.   The fourth criterion is that the store ownership was not aware of, did not approve and did not benefit from the transaction or that it is only the first occasion in which a member of the store management was aware of, approved, benefitted from or was involved in the conduct of any trafficking violations by the store.

12.     It is FNS's goal to provide information to retailers on how to satisfy the requirements of the Food Stamp Act and regulations and how to remain in compliance with these laws.

13.     FNS fully understands that the Secretary, and FNS, by delegation, has discretion to assess CMPs in lieu of permanent disqualifications for trafficking pursuant to the Act. Our regional and field offices are well aware that they have the authority to assess CMPs when a retail food store provides the necessary information outlined in the statute and the regulation.

14.     When a retailer is charged with trafficking in Food Stamp Program benefits, the standard FNS letter of charges informs the retailer that FSP regulations provide for imposition of a CMP in lieu of permanent disqualification, directs the retailer to the appropriate regulatory citation that lists the CMP criteria, and describes the process for requesting a CMP.

15.     FNS provides all authorized retailers with a compilation of the regulations pertaining to retailers. The regulations that are discussed above regarding CMPs are contained in this document.

16.     FNS provides all approved retailers with a Retailer Training Guide and a retailer training video which contains the requirements of the Program. The retailer training video is also accessible on the USDA's website.

17.     Page 11, in Part 2 of this Guide provides, "What Can Food Stamps Benefits Buy?" and lists specifically those items that may be purchased with food stamp benefits. (Attached hereto as Exhibit A)

18.     Page 13 of this Guide states in bold that "No Trafficking is Allowed: You can never give cash in exchange for food stamps benefits. This practice is known as "trafficking."

19.     Page 22 of this Guide, in Part 4, lists the consequences that can occur for trafficking and fraud, in "What Happens if You Break the Rules."

20.     In each retailer's authorization packet, retailers are provided with a contact phone number and are invited to call their assigned FNS field office with any questions that they might have regarding the Program.

21.     Retailers are also invited to visit www.usda.gov to seek information for retailers or to find contact phone numbers.

22.     Each year retail food stores qualify and are issued CMPs in lieu of permanent disqualifications for trafficking. Large, medium and small retail food stores have all qualified for trafficking CMPs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ___1st___ day of April 2008.

ANDREA GOLD
Branch Chief, Retailer Management and Issuance Branch
Acting Director, Benefit Redemption Division
Food and Nutrition Service
United States Department of Agriculture
3101 Park Center Drive
Alexandria, Virginia 22302-1594

4

# The Food Stamp Program

## Training Guide
## for Retailers



United States Department of Agriculture
Food and Nutrition Service

USDA

Note to Retailer: Your contact with the Food Stamp Program will be  through your local field office of the USDA Food and Nutrition Service. If you do not know the address and phone number of this field office, you can find it by searching the following web site:

**http://www.fns.usda.gov/cga/Contacts/FieldOffices/**



**United States Department of Agriculture**
**Food and Nutrition Service**

**FNS-330**

**July 2003**
**Revised September 2005**

USDA is an equal opportunity provider and employer.

# Contents

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Criteria for Retailers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Program Permit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Part 1: Basic Guidelines** . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Learn and Enforce the Program Rules . . . . . . . . . . . . . . . . . 8
Display the "We Accept Food Stamp Benefits" Poster . . . . . . 8
Report Violations to Your Local FNS Field Office . . . . . . . . . 9
Cooperate With Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Respect Your Food Stamp Program Customers . . . . . . . . . . 10

**Part 2: What Can Food Stamp Benefits Buy?** . . . . . . . . . . 11
Proper Use of Food Stamp Benefits . . . . . . . . . . . . . . . . . . . 12
　Separate Eligible Foods . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
　Sales Tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
　Credit Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
　Bottle Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
　Making the Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
　No Trafficking Is Allowed . . . . . . . . . . . . . . . . . . . . . . . . . . 13
　Store Coupons and Trading Stamps . . . . . . . . . . . . . . . . . 13

**Part 3: Electronic Benefits Transfer (EBT) Cards** . . . . . . . 14
　EBT Systems . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
　EBT Cards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
　Point-of-Sale (POS) Equipment . . . . . . . . . . . . . . . . . . . . . 15
　Food Stamp EBT Purchases . . . . . . . . . . . . . . . . . . . . . . . 15
Other Types of Food Stamp Program EBT Transactions . . . . 16
　Manual (Key Entry) Transactions . . . . . . . . . . . . . . . . . . . . 16
　Refunds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
　Voiding a Transaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
　Paper EBT Vouchers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Payment for EBT Transactions . . . . . . . . . . . . . . . . . . . . . . . 17
　System End-of-Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Payment to Your Bank Account . . . . . . . . . . . . . . . . . . . . . 17

Important . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Watch the POS Response . . . . . . . . . . . . . . . . . . . . . . . . 18

Other Payment for "Denied" Transactions . . . . . . . . . . . . 18

Never Keep the PIN or the Card  . . . . . . . . . . . . . . . . . . . 18

Customer ID . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Balances  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

No Cash Change . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Customer Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Questions About EBT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20


**Part 4: What Happens if You Break the Rules?** . . . . . . . . 22

Penalties  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23


**Appendix: Food Stamp Information for Customers** . . . . . 25

# Introduction

America's health depends on good nutrition. However, many low-income households still need help to have a healthy diet. Each month millions of low-income Americans—more than half of them children—get that help through the Federal Food Stamp Program. Under the Program, State and local social services agencies give monthly food stamp benefits to households that qualify. These food stamp benefits—in the form of Electronic Benefits Transfer (EBT) debit cards—can be used to buy food at authorized retail food stores.



Every retailer who participates in the Food Stamp Program must follow all Program laws and regulations. This guide will help you learn the Program rules and answer common questions about the Food Stamp Program. Even an honest mistake could cost you your authorization, so please make sure you pay special attention to *Part 4: What Happens if You Break the Rules?*

The Food Stamp Program is administered by the Food and Nutrition Service (FNS) of the U.S. Department of Agriculture, through its nationwide network of FNS field offices. FNS field offices authorize qualified retailers to accept food stamp benefits, provide information to retailers, and enforce the Program rules to prevent errors and abuse.

The staff of your local FNS field office is available to answer your questions and advise you on Program rules and procedures. Always consult with them if you have a problem or are unsure how to handle a particular situation.

At the end of this publication, we have also included information that will be helpful to anyone wanting to know more about the Program and how to apply for food stamp benefits. This may be helpful in case any of your customers ask, or if you wish to tell somebody about the Program.

## Criteria for Retailers

Local FNS field offices determine whether retail food stores meet the eligibility criteria to be authorized to accept food stamp benefits. The Food Stamp Program laws and regulations require that retail food stores must meet one of these two criteria:

1. Your store must offer for sale, on a continuous basis, at least three varieties of qualifying foods in each of the four categories of staple foods:

   - breads/cereals
   - dairy products
   - fruit and vegetables
   - meat, fish, poultry

At least two of these categories must include perishable foods.

2. Your store must have over 50 percent of its total gross sales in staple foods, not counting food items such as coffee, tea, cocoa, carbonated and noncarbonated drinks, candy, condiments, spices, and prepared, ready-to-eat foods.

   Remember that you may be visited at any time to ensure that these criteria continue to be met. In addition, your store will be reauthorized at least once every 5 years.



**Program Permit**

You must be authorized to participate. When you are authorized you will receive a 7-digit FNS number. This number will be one of the ways the local FNS field office will use to identify you and your store.

You will also receive a Food Stamp Program Permit (see below). You cannot begin to accept food stamp benefits until you have it. You cannot use the permit that belonged to any previous owner of your store. If your store changes ownership, if you move, or if you close your store, your authorization permit is void. You cannot transfer it to someone else. You must return your permit to your local FNS field office. If you own more than one store, you must apply for a Food Stamp Program Permit for each store.

**Food Stamp Program Permit**



U.S. Department of Agriculture - Food and Nutrition Service

**FOOD STAMP PROGRAM PERMIT**

**FNS NUMBER:**

Store Name:                                    Store Type:
Mailing Address:                               Location Address:

Authorization Date:                            Field Office:
Owner Name(s):                                 Field Office Address:

This permit certifies the owner(s) and business location listed above are hereby granted approval to accept and redeem food stamp benefits on condition that the acceptance and redemption of all coupons/instruments shall be in accordance with the rules and regulations governing the Food Stamp Program.

**THIS PERMIT IS NOT TRANSFERABLE**

Any changes in the ownership, location, name of business, and/or operation void this permit. To prevent illegal use, this permit must be returned to the Food and Nutrition Service (FNS) upon any change/sale/transfer of the business or upon request by the FNS. Failure to report changes immediately to FNS may result in substantial fines and administrative sanctions. IF STORE MOVES, IS SOLD/CLOSED OR VOLUNTARILY WITHDRAWS FROM THE FOOD STAMP PROGRAM, PLEASE CONTACT YOUR SERVICING FIELD OFFICE.

Issued by FNS Representative: _____          Date of Issue: _____

**THIS PERMIT MUST BE DISPLAYED IN A CONSPICUOUS PLACE**

# Part 1:          Basic Guidelines

### Learn and Enforce the Program Rules.

Accepting food stamp benefits can help build your business. If you violate the rules, however, you could lose your authorization, be fined, or both.

Protect your business. Learn the proper way to handle food stamp transactions. You are responsible for the actions of your employees. Train them before they begin ringing sales. Monitor their performance. Conduct refresher courses when necessary. When changes in the Program are announced, make sure everyone knows about them. It is a good idea to document the training you provide for your employees.

### Display the "We Accept Food Stamp Benefits" Poster.

Your local FNS field office will give you a "We Accept Food Stamp Benefits" poster, FNS-132 (see below). Post it in a prominent place, to let your customers know that you participate in the Program.

**"We Accept Food Stamp Benefits" Poster, FNS-132**



### Report Violations to Your Local FNS Field Office.

Help us keep the Food Stamp Program honest. If you are unsure of a procedure, or you suspect someone is violating the Program's laws and regulations, contact your local FNS field office. **You can also call the USDA Office of Inspector General Hotline at 1-800-424-9121.**

To encourage people to report fraud and abuse, retail stores must post a sign giving information on how to report Program abuse. When you become an authorized retailer, this poster is provided to you in your authorization package. Display your "Report Abuse of the Food Stamp Program" poster prominently.

### USDA Office of Inspector General Hotline
# 1-800-424-9121

"Report Abuse of the Food Stamp Program" Poster, FNS-240

# Report Abuse of the Food Stamp Program



**Please contact :**

USDA Food & Nutrition Service Field Office

*or*

U.S. Department of Agriculture Office of the Inspector General toll free 800-424-9121
Within the Washington, D.C. metropolitan area, call 202-475-5022

**For information on applying for food stamp benefits, call 1-800-221-5689**



**USDA is an equal opportunity provider and employer.**
United States Department of Agriculture · Food and Nutrition Service
FNS 240 · Revised June 2001

## Cooperate With Authorities.

From time to time USDA employees or their representatives may visit your store or request information from you. You may also be visited by contractors who work for USDA and they may take pictures of your store, both inside and out. You are required to cooperate and to respond to all requests. If you do not, you may lose your Food Stamp Program authorization.

## Respect Your Food Stamp Program Customers.

Finally—and most importantly—treat your food stamp customers as you do your other customers: with courtesy and respect.

**DO NOT:**

- restrict food stamp customers to shopping at certain times during store hours, charge them higher prices, or make them use lanes designated "Food Stamp ONLY Checkout."

- require customers to make minimum purchases.

- ask customers for their Personal Identification Number (PIN). Only the customer may enter his or her PIN at the Point of Sale (POS) terminal to complete the food stamp sale.

Each of these practices violates the law or regulations.

# Part 2:   What Can Food Stamp Benefits Buy?

The goal of the Food Stamp Program is to help low-income households have healthy diets.

## Households CAN use food stamp benefits to buy:

- all food intended to be eaten at home. This includes the four staple food categories mentioned earlier as well as nonalcoholic beverages, snack foods, soft drinks, candy, and ice.

- seeds and plants intended to grow food (but not for growing flowers or feeding to birds).

## Households CANNOT use food stamp benefits to buy:

- beer, wine, liquor, tobacco, or cigarettes

- foods that are hot at the point of sale

- food to be eaten in the store

- vitamins or medicines

- pet foods

- nonfood items such as tissues, soaps, cosmetics, or other household goods.

If you have questions about specific food items, contact your local FNS field office. You can find the field office by going to:

**http://www.fns.usda.gov/cga/Contacts/FieldOffices/**

A poster describing what can and cannot be bought with food stamp benefits will be provided to you (see illustration at left).

**"Using Food Stamp Benefits" Poster, FNS-110**



## Proper Use of Food Stamp Benefits

Customers should present food stamp benefits BEFORE they pay for food.

● **Separate Eligible Foods**

If your customers separate their eligible and ineligible items—or if you do it—it will make it easier to total the food items that qualify for food stamp benefits. If your store has electronic registers or scanners that automatically identify eligible items, separating items is not necessary. Equipment should be periodically checked for proper programming, to avoid errors that might cost you your authorization.

● **Sales Tax**

You cannot charge State or local sales taxes on eligible items purchased with food stamp benefits. You may not include the sales tax in the purchase price as a hidden cost. (Keeping eligible and ineligible items separate will also prevent you from accidentally charging sales tax on eligible items.) If you have questions about your State's sales tax laws, you should contact your State tax department.



● **Credit Accounts**

Food stamp customers must pay for their purchases at the time of sale. **You may not accept food stamp benefits as payments on credit accounts.** You may not hold your customers' food stamp EBT cards at your store for future use.

● **Bottle Deposits**

Food stamp benefits can cover the entire cost of items such as eligible drinks in returnable bottles, where the price includes a specific bottle deposit. This is true even if the deposit is not included in the shelf price.

● **Making the Sale**

If a customer does not have enough food stamp benefits to pay for all his or her eligible items, give the customers the option of paying for the remaining items with cash or not buying them. The client can pay the difference with a second card swipe to debit the cash benefits account (if the client has one) on his or her EBT card, or with cash. Remember: you cannot extend credit to be paid with food stamp benefits at a later date.



● **No Trafficking Is Allowed**
   **You can never give cash in exchange for food stamp benefits. This practice is known as "trafficking."**

● **Store Coupons and Trading Stamps**
   If you accept in-store coupons from cash customers, you must also accept them from food stamp customers. You must treat food stamp customers as you do cash customers.

# Part 3: Electronic Benefits Transfer (EBT) Cards

Today, the only form of benefit issuance is the EBT card. One of the biggest advantages of the electronic system is that it automatically deducts the exact amount of the purchase from the customer's EBT account and deposits it in your store's bank account.

## ● EBT Systems

EBT systems operate like other debit card systems. An electronic message goes to a computer for approval. If the purchase is approved, the customer's EBT account gets an immediate debit and your account gets an immediate credit. At the end of the business day, transactions are totaled and the funds are moved. You will usually receive money from an EBT transaction within 2 banking days.



The State's EBT contractor will contact you soon after you are authorized to accept food stamp benefits. They will help you determine if you need EBT equipment. If the contractor supplies you with EBT equipment, they will also provide training on how to use it. You will receive a manual with information on how to use the system.

All but two States have "on-line" EBT systems which send transactions to a remote computer for approval. Ohio (OH) and Wyoming (WY) are different. They have "off-line" EBT systems and use "smartcards" with a microprocessor chip embedded, but visible, in the plastic card. "Off-line" means the transaction approval is done by the microprocessor in the card. The transaction does not travel "on-line" to a remote computer. OH and WY cards work only at POS terminals provided to stores in those States. Although OH and WY cards work only in OH or WY, all other State cards work in all States as well as in stores in OH and WY that have their own POS terminal.

Note: OH will change to an on-line system and will have magnetic strip cards in 2006. Those will be usable in all States. As of this printing, WY has not made a decision to change.



● **EBT Cards**

Each State has its own EBT card design. The EBT cards are plastic and look like commercial debit and credit cards. Almost all cards have embossed numbers on the front and a magnetic strip and a signature line on the back. Often, the toll-free numbers for Customer Service are on the back of the card. The law requires EBT systems to have food stamp EBT cards that can work in any State, except for the smartcards issued by Ohio and Wyoming.

● **Point-of-Sale (POS) Equipment**

All authorized retailers can process EBT food stamp benefit transactions. States may supply POS equipment or vouchers, or you may choose to use commercial equipment provided to you by a third party processor (which needs to be arranged by you). Commercial equipment can also be used to process credit and debit card transactions. The State will contact you and connect your commercial equipment to its EBT system. This service is provided at a cost that you negotiate with the third party processor. Commercial equipment is often integrated, meaning that the POS terminal, cash register, and scanning device are all connected together in order to speed transactions and eliminate errors.

● **Food Stamp EBT Purchases**

Although EBT equipment set-up varies from State to State, the cashier should follow these general steps for a food stamp EBT purchase:

• Separate eligible foods from nonfood items. Total the food amount on the cash register. This step may not be necessary depending on the type of equipment you have in your store.

• Press "Food Stamp Purchase" key and swipe the EBT card through the POS card reader.

• Enter purchase amount into the POS terminal (if separate equipment from cash register).

• Customer enters secret Personal Identification Number (PIN) and hits the enter key. **Only the customer may do this.**

• "Approved" message will appear on POS terminal and a receipt is printed.

• Give the customer a receipt that shows the EBT balance.

## Other Types of Food Stamp Program EBT Transactions

● **Manual (Key Entry) Transactions**

When EBT cards are swiped through your POS device, the device reads the card number and other information from the strip on the back of the card. Sometimes the magnetic strip on the card is damaged and swiping the card will not work. **IF** and **ONLY IF** the card strip cannot be read by the POS machine, and the customer is present, then you may use the keys to type in the card number. **You cannot keep the card numbers on file, or enter them manually unless the EBT cardholder is present.** The card holder must still enter his or her PIN to authorize a key-entered transaction. Food Stamp Program regulations permit key entry as a back-up convenience for recipients, but the recipient is expected to get a replacement for his or her damaged card. Damaged cards are replaced free. Please do not use the manual key-entry method unless the POS device or the client's card is not working.

FNS monitors the frequency of key entry by store. If a key-entry transaction fails, the recipient needs to pay by another method (e.g., cash)—do not use a **paper EBT voucher** (see page 17) in this situation.

Cards are hard to damage. If your POS terminal frequently does not accept EBT cards, it may need servicing. Advise customers to replace their cards if the magnetic strip is damaged.



### Refunds
● You can make refunds into the EBT account if the customer returns food bought with food stamp benefits. **Do not refund cash.** Learn to use the Food Stamp Program Refund Transaction. This may require a supervisor's or manager's approval as part of the transaction. Your EBT retailer manual will have details.

### Voiding a Transaction
● If you enter the wrong amount into the POS terminal and it is approved, some systems allow you to immediately void that transaction. This may have to be done at that same POS terminal and may require a manager's password. You may then redo the transaction correctly.

● **Paper EBT Vouchers**
**Paper vouchers are used only when the EBT transaction cannot be done electronically.** This may happen if your POS terminal fails, telecommunications fail, or the host computer is down. **You must complete the voucher, have your customer sign it, and call Customer Service at the time of the purchase to get an approval for the purchase.** This guarantees that the funds will be held for the purchase.

Always keep your copy of the voucher in case of disputes. You must electronically clear the voucher within 15 days or send the voucher to the State by a set expiration date in order to be paid for the transaction.

**Some stores do not qualify for equipment.** For these stores, the paper voucher is the only way to take EBT cards. See your EBT retailer manual for details.

## Payment for EBT Transactions

● **System End-of-Day**
EBT systems have an end-of-day or cutover time when all the transactions for the day are totaled and the transfer of funds for settlement of accounts begins. Find out when your State's EBT system's day ends.

If you have a State POS system, you can use it to produce totals for your store. This will help you keep your accounts in order. You will get an EBT retailer manual that explains this.

If you have commercial equipment, your system may have a different cutover time from the EBT system. Ask your processor for more information.

● **Payment to Your Bank Account**
If you have State equipment, the State contractor will need your bank account information to make payments to your account. If you change your bank or your account, you must tell the contractor so that the payment will go to your new account. Payment will usually arrive in your account within 2 banking days. If you have commercial POS equipment, payment will go from the State EBT contractor to your processor within 2 days. Your processor will then pay your account according to your agreement.

According to Food Stamp Program policy, banks cannot charge retailers to deposit Food Stamp Program EBT payments.

**Important**

● **Watch the POS Response**

Always watch the messages on the POS display. They indicate the transaction type and the results. Your store will be paid only when purchases are approved. Be sure you press the purchase key and not the refund key. Be sure the purchase is approved. Be sure your POS is not in training mode.

● **Other Payment for "Denied" Transactions**

If the purchase is denied because there are insufficient funds in the Food Stamp Program account, the customer may pay in cash. Some customers may have an EBT cash account in addition to a food stamp account. If so, you may run another transaction and use the cash account to pay the balance of the transaction. Otherwise, the customer will need to pay with actual cash.

● **Never Keep the PIN or the Card**

Never ask your customer for the PIN and do not watch the PIN being entered. Do not enter the PIN for the customer. Store cashiers may have to swipe EBT cards for the customer, depending on where the POS is located. Give the card back immediately. Never keep the card or the card number.



● **Customer ID**
When using POS equipment, the PIN identifies the customer. No other identification is needed. Most States no longer issue food stamp ID cards to EBT customers.

● **Balances**
Customers can check the balance in their EBT food stamp account in four ways. POS terminals can be programmed to have a balance inquiry function that will provide the balance. Many POS terminals have this function. The customer can also call a toll-free number to get the balance over the phone. After each EBT purchase transaction, the POS receipt shows the remaining food stamp account balance. Finally, in some States, recipients can check their balance through the Internet.

You may not charge a customer to do a balance inquiry.

● **No Cash Change**
No cash change is given back in EBT transactions because the exact amount of the purchase is entered and debited. When EBT cards are used, it is illegal for you to give cash change back. EBT systems allow for returns and refunds to be processed using the card.

● **Customer Signatures**
**You do not need the customer's signature when the EBT transaction is done with a PIN.** You do not need a signature for purchase or refund transactions. If you are using a voucher to process the food stamp transaction, the customer must sign the voucher. This is needed in case of a dispute, so keep the voucher with the original signature for your records and provide a copy to the customer.

## Questions About EBT

● **Q. Who does what in EBT?**

**A.** FNS authorizes the stores for the Food Stamp Program. FNS sets general EBT rules. **Each State manages its own EBT system and hires contractors to process EBT transactions, issues EBT cards, and furnishes POS equipment.**

● **Q. What is a third party processor?**

**A.** We use the name "third party processor" for any transaction processing provider hired by a store. This distinguishes third party processors from the State's EBT contractor hired to provide or arrange transaction processing for stores that do not have their own POS equipment.

● **Q. How does the customer know how much money is in his or her account?**

**A.** Food stamp customers are trained to keep their EBT receipts, which have the account balance. This is why you must always provide the receipt. **Customers may also call a toll-free number or do a balance inquiry on the POS terminal in the store.** In some States, if customers have access to the Internet they can check their balance.

● **Q. What happens if the customer lost the card?**

**A.** You may NOT do the transaction without the card. Refer the customer to the State's toll-free Customer Service Help Line her or she was given during EBT training, or to the county office—not the local FNS field office.

● **Q. What if the customer forgot the PIN?**

**A.** You may NOT do the transaction without the PIN. Refer the client to the toll-free Customer Service Help Line that her or she was given during EBT training to get a new PIN. The customer service number may be on the back of the card.

● **Q. What will EBT cost you?**

**A.** If you have State equipment, EBT costs nothing. If you use your own equipment, you will work out costs with your own transaction processing provider.

● **Q. What if a customer presents paper food stamp coupons rather than an EBT card?**

**A.** There are still some food stamp coupons in circulation. You must accept them. Contact your local FNS field office for redemption information.

● **Q. Is there a risk in accepting paper EBT vouchers when system problems occur?**

**A.** Only if you fail to make the call to Customer Service for an approval number or if you fail to follow the voucher instructions in the EBT retailer manual.

● **Q. What if I sell my store?**

**A.** The new owner is NOT authorized to accept food stamp benefits. You cannot transfer Food Stamp Program authorization. If you have State equipment, tell the State EBT contractor by calling the Retailer Customer Service number before you hand over the store.

**Read the retailer instructions you get with your State POS machine or materials provided by your own processor.**



# Part 4:    What Happens if You Break the Rules?



The Federal Government spends about $25 billion a year to support the Food Stamp Program. This is a tremendous investment by American taxpayers. USDA protects that investment by vigorously enforcing the Program's laws and regulations and aggressively pursuing violators.

Thousands of retailers have discovered that the penalties for violations can be severe. As a store owner or operator, you are legally responsible not only for your own actions but for those of everyone who works in your store, whether or not they are paid. If you, your staff, your employees, or relatives redeem more food stamp benefits than your total food sales; sell ineligible items; accept food stamp benefits in payment for food sold to a food stamp household on credit; or buy or sell food stamp benefits, you will be disqualified from the Program, and/or assessed a monetary penalty, and could face criminal prosecution.

You can be fined up to $10,000 for each illegal transaction, plus three times the dollar value of the transaction, and you can be put in prison.

In addition, violators may be referred to the Internal Revenue Service for more extensive investigation, and may lose their State lottery licenses and alcohol beverage sales licenses.

The most common penalty is being disqualified from the Food Stamp Program.

If you are disqualified from the Food Stamp Program, you could also be disqualified from the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC). Even a temporary disqualification can blemish your business' reputation and its standing in the community.

Know and follow the laws and regulations, train your employees carefully, and monitor their performance. If a situation arises that you are not sure how to handle, always call the local FNS field office first.

## Penalties

**The following Federal penalties apply to retailers.**

**Trafficking**—Buying or selling food stamp benefits for cash or other items besides eligible food will result in permanent disqualification, forfeiture of property, and/or a penalty of up to $27,000 for each violation and will not exceed $54,000 for all violations occurring during a single investigation.

**Sale of Firearms, Ammunition, Explosives, or Controlled Substances**—Sale of firearms, ammunition, explosives, or controlled substances for food stamp benefits will result in permanent disqualification or a penalty of up to $27,000 for each violation and will not exceed $54,000 for all violations occurring during a single investigation.

**Sale of Cigarettes, Tobacco, and Alcohol**—Sale of cigarettes, tobacco, alcohol, or expensive nonfood items for food stamp benefits may result in a 3- to 5-year disqualification period or equivalent civil money penalty. A claim may also be assessed.

"Penalties for Violation of the Food Stamp Program," FNS-136

# Penalties for Violation of the Food Stamp Program



**Penalties Include:**

- ❑ **Permanent disqualification** when the owner or employees purchase or traffic in food stamp benefits, or for a third sanction.

- ❑ **Three to five year disqualification** for the sale of non-food items, such as alcoholic beverages or tobacco.

- ❑ **One year disqualification** for accepting food stamp benefits for payment of credit accounts.

- ❑ **Six month to three year disqualification** for the sale of non-food items, such as, but not limited to: soap, paper products, medicines, etc.



The Food Stamp Program is available to all eligible persons regardless of race, color, religion, sex, national origin, age, political beliefs or disability.

United States Department of Agriculture • Food and Nutrition Service
FNS 136 • Revised March 2002

**Sale of Ineligible Items**—Sale of common ineligible nonfood items on a regular basis for food stamp benefits may result in a 6-month to 3-year disqualification or equivalent civil money penalty. A claim may also be assessed.

**Food Stamp Benefit Redemptions Exceeding Food Sales**—A store whose food stamp benefit redemptions for a specified period of time exceed its food sales for the same period of time may be disqualified for 3 to 5 years.

**Accepting Food Stamp Benefits Without Authorization**—Accepting food stamp benefits without authorization or after the effective date of disqualification will result in a fine of $1,000 for each violation, plus an amount equal to three times the value of the illegally accepted food stamp benefits.

**Second and Third Violations**—The period of disqualification will be doubled for a second violation. For a third violation, the action is permanent disqualification.

**WIC/Food Stamp Reciprocal Actions**—Stores that are disqualified from WIC may be disqualified from the Food Stamp Program for an equivalent period of time.

NOTE: In addition to the preceding Federal penalties, many States have their own laws pertaining to the improper use of food stamp benefits, and their own penalties.

# Appendix: Food Stamp Information for Customers

As a retailer in the Food Stamp Program, you might like to know how the Program works from the customer's point of view. You might also wish to have some information in case a customer is interested in knowing more about the Program.

The following questions and answers are from a booklet called "Food Stamp Program," Publication No. FNS-313 (also available in Spanish, FNS-313-S). Your customer can ask for a copy by calling toll free 1-800-221-5689. He or she can also find out the toll-free number in your State, which can tell the customer the location and phone number of the nearest food stamp office.

There is also more information about the Program on the following Web site: **http://www.fns.usda.gov/fsp**



● **How do I get food stamp benefits?**
Look in the government section (blue pages) of your phone book. You can find food stamp benefits under "social services department" or "human services department."

Call the food stamp office to set up a meeting with a worker. Ask what papers you need to bring. The worker will need to see your pay stubs, rent or mortgage payments, utility bills, child- or elder-care bills, and child-support orders (the court order and canceled checks).

At the food stamp office you will talk with a worker, answer some questions, and sign some papers. If you can't go to the food stamp office, you may send a relative or a friend to talk with the worker. Or you may be able to talk with a worker on the phone.

One way to see if you might be able to get food stamp benefits is to go to **http://www.foodstamps-step1.usda.gov** on the Internet. Answer the questions. If it looks like you might be eligible, you can also find out how much you could receive. But to find out for sure, you must apply.

● **Can I get food stamps just for myself if I live with my family or with others?**
People who live together and buy food and prepare meals together are grouped as a "household." Husbands and wives and most children under age 22 must be one household.

● **Will I have to get a social security number?**
Yes, you must have or will have to get a social security number for each household member. People in the household who do not want food stamp benefits do not have to give their social security number. But they do have to give their financial information.

● **Can legal noncitizens get food stamp benefits?**
You might be able to get food stamp benefits. Talk with a food stamp worker about this. Even if you can't get food stamp benefits, family members born in this country can. Getting food stamp benefits won't cause you any problems if you want to become a citizen.

● **Can I get help if I'm not working?**
Yes, but if you are able to work, you must look for work, take a job offer, or go to training.

● **How much income and resources can we have?**
The food stamp office will tell you if your income and resources are low enough to get food stamp benefits. It depends on the number of persons in your household and also changes slightly every year. The food stamp office will also tell you if any of your expenses can be deducted from your income to help you qualify for food stamp benefits.

● **If my household is eligible, how much will we get?**
The food stamp office will tell you how much you will get. It will depend on your income and on the number of people in your household.

● **Are food stamp benefits cash?**
No. Food stamp benefits come on a plastic card that you use just like a bank card. You can use them in most food stores, but only for food.

● **What if I have more questions?**
You should call your local food stamp office. Our toll-free number, 1-800-221-5689, can direct you to your State's toll-free number.

For more information about this program and other Federal food assistance programs, please visit our Web site at **http://www.fns.usda.gov.**

Find your balance between food and physical activity.
A healthy eating plan is one that:
• Emphasizes fruits, vegetables, whole grains and fat-free or low-fat milk and milk products
• Includes lean meats, poultry, fish, beans, eggs and nuts
• Is low in saturated fats, trans fats, cholesterol, salt (sodium) and added sugars

Be physically active for at least 30 minutes most days of the week.





United States Department of Agriculture
Food and Nutrition Service

