UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHILOMENA AFFUM<br>d/b/a Asafo Market, | )<br>)<br>)<br>) |  |
| Plaintiff, | )<br>) |  |
| v. | )<br>) | Civil Action No. 08-300 (RCL) |
| UNITED STATES OF AMERICA<br>and ED SCHAFER, | )<br>)<br>) |  |
| Defendants. | )<br>)<br>) |  |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFF'S APPLICATION FOR STAY OF
<u>ADMINISTRATIVE ACTION AND FOR PRELIMINARY INJUNCTION</u>**

Charles B. Wayne (#935858)
DLA Piper US LLP
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 (fax)

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

I. Affum's Motion Is Not Premature...................................................................................... 2

II. Affum May Seek Preliminary Injunctive Relief under both the Food Stamp Act and Rule 65................................................................................................................................. 3

    A. A Stay of Permanent Disqualification Is Available Under 7 U.S.C. § 2023(a)(17)........ 4

    B. In Any Event, Affum May Proceed under Rule 65 ......................................................... 6

III. Affum Is Entitled to the Requested Injunctive Relief ........................................................ 7

    A. Affum Will Be Irreparably Injured.................................................................................. 7

    B. Affum Has Demonstrated a Likelihood of Success on the Merits .................................. 9

        1. The Regulations Are in Direct Conflict with the Food Stamp Act ........................ 10

        2. The Regulations Are Arbitrary and Capricious Because They Fail to Consider the Impact on Small Stores ....................................................................... 12

        3. The Regulations Are Violative of Affum's Substantive Due Process Rights. ........ 14

    C. The Government Will Suffer No Harm and the Public Interest Will Be Served by the Granting of the Requested Injunctive Relief ....................................................... 15

CONCLUSION................................................................................................................................. 16

**INTRODUCTION**

The government's approach in its opposition to plaintiff Philomena Affum's application for preliminary injunctive relief is one of misdirection. The government has responded to arguments that Affum has not raised, has "proved" violations that Affum admits occurred, and has refused to meet Affum's arguments that the Secretary of Agriculture's regulations are contrary to statute, arbitrary and capricious as applied to small stores, and violative of Affum's substantive due processing rights.

Adding insult to injury, the government unfairly recites "facts" that are neither part of the administrative record nor known to Affum prior to the filing of the government's papers. For example, it is news to Affum that more than year prior to the conduct referenced in the charging letter, "the Asafo Market triggered several suspicious activity reports." Opp. at 4. The government states that the "last" such report, covering September 2006, "shows 26 suspicious high dollar transactions" occurring at Asafo Market. *Id.* at 5. No mention was made of any of these prior transactions in the charging letter that constitutes the starting point of the administrative record in this case. The government has recited this uncharged, uninvestigated, and unsubstantiated conduct for no reason other than to smear Affum unfairly.

Moreover, the government's opposition prejudicially focuses on one investigator's ambivalent statement that the clerk who sold ineligible items "could be the owner" but fails to mention that the investigator qualified this already equivocal assertion by stating that "a positive I.D. could not be made." A.R. 28. Even assuming, *arguendo*, that the clerk in this transaction was Affum, the violation occurring that day was not trafficking but rather the sale of ineligible items, an uncontested and therefore irrelevant allegation for which Affum is already serving a six-month suspension. Moreover, the agency itself has treated Affum as an innocent owner throughout the administrative process. By statute, only an innocent owner is eligible for a civil

money penalty where substantial evidence of an effective policy to prevent trafficking is provided. 7 U.S.C. § 2021(b)(3)(B). If Affum were not an innocent owner as the government now baselessly asserts, the agency would not have needed to trouble itself with a sham review of Affum's policy under its objectionable regulatory regime as she would have been ineligible for a civil money penalty out of the gate.

The government's position is without any real substance, and Affum's application for preliminary injunctive relief should be granted.

## ARGUMENT

### I. AFFUM'S MOTION IS NOT PREMATURE.

Affum's motion is not "premature," as the government asserts. Although the relief sought cannot commence until the six-month disqualification period for selling ineligible items expires on May 16, 2008, the motion is timely. As the Food Stamp Act states, barring a grant of a stay of administrative action or a preliminary injunction, permanent disqualification commences on the date of receipt of the agency's notice of disqualification. 7 U.S.C. § 2023(a)(18). The Food and Nutrition Services' ("FNS") November 14, 2007 letter to Affum (Ex. 4) states that "your firm shall be permanently disqualified from the Food Stamp Program effective upon receipt of this letter." Affum received the letter on November 18, 2007, *see* Ex. 5, and "[o]n November 19, 2007, the FNS turned off the EBT terminal at the Asafo Market" in accordance with its final decision to permanently disqualify Affum. Opp. at 6. By analogy, Affum is "serving" her two sentences, six-month suspension and permanent disqualification, concurrently. Affum, then, has been permanently disqualified for nearly five months. Her concurrent, and unchallenged, six-month suspension for the sale of ineligible items is irrelevant to the timeliness of her current motion. Affum has struggled to keep her business viable during

five months of permanent disqualification from the Food Stamp Program; the requested relief is far from premature.

Furthermore, after calling Affum's motion premature, the government does an about-face and contends that the timing of Affum's request for preliminary injunctive relief displays a "lack of urgency."[1]  Opp. at 25.  The government cannot have it both ways.  Affum's requested relief is neither premature nor delayed, but rather timely and necessary.

## II. AFFUM MAY SEEK PRELIMINARY INJUNCTIVE RELIEF UNDER BOTH THE FOOD STAMP ACT AND RULE 65.

Affum proceeds under two essentially co-extensive bases in her request for preliminary injunctive relief:  the Food Stamp Act and Federal Rule of Civil Procedure 65.  Both bases are grounded in the invalidity of the Secretary's regulations promulgated under the Food Stamp Act.  In order to obtain a preliminary injunction under both the statute, 7 U.S.C. § 2023(a)(17), and Rule 65, Affum must show a likelihood of success on the merits and irreparable injury in the absence of preliminary injunctive action.  Rule 65 also requires Affum to demonstrate that a preliminary injunction would not substantially injure other interested parties and that the public interest would be furthered by the injunction.  *E.g., Omar v. Harvey*, 479 F.3d 1, 18 (D.C. Cir. 2007).  Although Affum carries the burden under both schemes, the government ignores the second of Affum's dual routes to preliminary injunctive relief.

---

[1]  Defendants cite *Federal Express Corp. v. Federal Espresso, Inc*., 201 F.3d 168, 178 (2d Cir. 2000) in support of its characterization of Affum's request for preliminary injunction as lacking the urgency necessary to show irreparable harm.  In that case, however, the oral argument on plaintiffs' appeal of the court's denial of preliminary injunction occurred almost a year after that denial, with no evidence that the plaintiffs had attempted in any way to expedite the process.  In contradistinction, Affum's action has proceeded at a vigorous clip, with Affum filing a complaint and application for stay of administrative action and for preliminary injunction in rapid succession less than two months from the date of the agency's final determination following Affum's administrative appeal.

### A. A Stay of Permanent Disqualification Is Available Under 7 U.S.C. § 2023(a)(17).

Affum requests preliminary injunctive relief under the plain terms of 7 U.S.C. § 2023(a)(17), which grants relief upon a showing of likelihood of success on the merits and irreparable harm in its absence. Contrary to the government's assertions, no statutory language precludes Affum from requesting such relief. Defendants argue that 7 U.S.C. § 2023(a)(18) bars stays of administrative action in trafficking cases. This assertion is patently false. Subsection 18's only functions are to set the effective date of permanent disqualification (i.e., upon receipt of the notice of disqualification), and to immunize the agency from liability for damages for wrongful disqualification. *Lazaro v. U.S. Dep't of Agric.*, 186 F. Supp. 2d 1203, 1210 (M.D. Fla. 2001). Neither of these statements forecloses the possibility of a preliminary injunction and clearly apply only where such relief has not been granted under the preceding section. As the *Lazaro* court stated, "Nowhere does § 2023(a)(18) suggest, state, or imply that Congress intended to remove altogether the Court's authority to grant injunctive relief in appropriate circumstances, even for accused traffickers, under the structure set forth in §2023(a)(17)." *Id*. at 1210. The terms "stay" and "preliminary injunction" do not even appear in the text of subsection 18.

Similarly, there is no support for the government's interpretation of the statute in the legislative history of the Food Stamp Act. The House Report cited by the government states only that "disqualification should be effective from the date of receipt of the notice of disqualification pending any administrative or judicial review." Opp. at 9. Italicizing the last six words does not change the sentence's meaning: it is merely a restatement of the terms of subsection 18 which is part of the amendments encapsulated in the House Report that eliminated the *automatic* stay pending administrative or judicial review. There is no indication that in doing

4

so Congress intended to carve out an exception to the relief provided in subsection 17 for permanently-disqualified store owners.

Lacking any statutory or legislative history grounds for foreclosing preliminary injunctive relief, the government depends on the very regulations that are at the heart of this case. In support of their position, the government cites *Ameira Corp. v. Veneman,* 169 F. Supp. 2d 432 (M.D.N.C. 2001) and *Ilian v. U.S. Dep't of Agriculture*, 87 F. Supp. 2d 1047 (S.D. Cal. 2000), which uncritically apply the regulations to determine that preliminary injunctive relief is unavailable to store owners permanently disqualified for trafficking. These cases are readily distinguishable as they merely upheld the agency's sanctions without reviewing the regulatory scheme; the validity of the regulations themselves was not challenged as contrary to statute in those cases, as it is here. Where the validity of the regulations has been critically assessed in the context of deciding a motion for preliminary injunction, permanently disqualified plaintiffs who satisfy the showing required for preliminary injunctive relief have met with success. *See, e.g.*, *Castillo v. United States*, 989 F. Supp. 413, 419-20 (D. Conn. 1997) (granting preliminary injunctive relief where, the administrative review officer may have "relied on regulations . . . which contradict the [FNS'] statutory authority."); *Ahmed v. U.S. Dep't of Agric.*, 47 F. Supp. 2d 389, 397-99 (W.D.N.Y. 1999) (staying permanent disqualification where "regulations appear to run contrary to congressional intent to expand the types of evidence that can be used to show that a fine is more appropriate than permanent disqualification.") (internal quotations omitted).

*Lazaro*, discussed above, provides the most in-depth analysis of this issue to date. *See* 186 F. Supp. at 1209-10. The government's attempt to relegate the logic of *Lazaro* to a footnote does not diminish its applicability to this case. As in *Lazaro*, the government argues that subsection 18, in setting a mandatory effective date of permanent disqualification, precluded the

5

injunctive relief requested here. Basic rules of statutory construction, however, require that a statute be read to give effect to all parts, and "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme . . . ." *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132 (2000)). As the *Lazaro* court noted, 7 U.S.C. §2023(a)(5) also sets a mandatory effective date (thirty days after the date of service of disqualification) for non-trafficking offenses. Accordingly, if the government's interpretation of subsection 18 were accepted, no injunctive relief could be afforded store owners temporarily disqualified for *non-trafficking* offenses either. This result would leave the preliminary injunction standard elucidated in subsection 17 applicable to exactly no Food Stamp Program violations, impermissibly rendering it a nullity. *Id.* at 1210. In the face of the statutory scheme's unambiguous grant of judicial power to afford injunctive relief, the agency's flawed regulations that improperly usurp the court's role cannot be given effect. *Id.* at 1211 (citing *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)).

   **B.  In Any Event, Affum May Proceed under Rule 65.**

The government deals summarily with the Rule 65 portion of Affum's application by citing in a footnote a single case regarding the rights of federal employees under the Civil Service Reform Act. Opp. at 10 n.3. That case, *Harrison v. Bowen,* 815 F.2d 1505 (D.C. Cir. 1987), provides no support for the proposition that the Food Stamp Program's statutory scheme under 7 U.S.C. § 2023 somehow precludes relief under the Federal Rules of Civil Procedure, and, in any case, is wholly inapposite here. Moreover, the government ignores, once more, the nature of Affum's claims: a challenge to the Secretary's regulations as contrary to the enabling legislation as well as being arbitrary, capricious, and violative of the Fifth Amendment. None of these claims need be brought pursuant to the procedure laid out in 7 U.S.C. § 2023. Out of an abundance of caution, Affum has made co-extensive claims challenging the regulatory scheme

6

under both 7 U.S.C. § 2023 and the regime prescribed by the Federal Rules of Civil Procedure. Similarly, she seeks injunctive relief under both procedural methods, and is permitted to do so.

## III. AFFUM IS ENTITLED TO THE REQUESTED INJUNCTIVE RELIEF.

### A.  Affum Will Be Irreparably Injured.

This Court has held that "economic loss may constitute irreparable harm where the loss threatens the very existence of the movant's business." *World Duty Free Americas, Inc., et al. v. Summers*, 94 F. Supp. 2d 61, 67 (D.D.C. 2000).  In that case, this Court found that where plaintiffs stated that they would lose 29% of their total business, this representation was sufficient to establish irreparable harm for purposes of granting a preliminary injunction. No further evidence was required. *Id.* The statute, regulations, and Federal Rules of Civil Procedure do not require evidence, documentary or otherwise, beyond a plaintiff's honest assertions, to prove the amount of business that will be lost absent a preliminary injunction. The government again attempts to read requirements into the statute that simply do not exist. Affum submitted an affidavit attesting to the fact that 90-95% of her revenue is derived from food stamp purchases. Affum Aff. ¶ 3 (Ex. 1).

Defendants incorrectly assert that Affum's affidavit "is not enough" to substantiate her claim of irreparable injury.  Opp. at 24.  In fact, the case law is replete with examples of the sufficiency of sworn affidavits for this purpose. *See, e.g., Young Jin Choi v. United States*, 944 F. Supp. 323, 326 n.2 (S.D.N.Y. 1996) (finding irreparable harm based on plaintiff's affidavit of a 40% loss of business if his store is disqualified); *Ibrahim v. United States*, 650 F. Supp. 163, 165-66 (N.D.N.Y. 1987) (finding irreparable harm based on plaintiff's affidavit attesting to a 30% loss of business in the absence of a preliminary injunction); *Ahmed v. U.S. Dep't of Agric.*, 47 F. Supp. 2d 389, 400 (W.D.N.Y. 1999) (finding irreparable harm where plaintiff submitted an

7

affidavit stating that 50% of the store's profits would be lost absent a preliminary injunction); *Castillo*, 989 F. Supp. at 417 (finding irreparable harm with affidavit of 45%).

Moreover, *Phany Poeng v. United States*, 167 F. Supp. 2d 1136, 1142 (S.D. Cal. 2001), one of the two cases the government cites in support of their assertion that Affum's affidavit is insufficient, states "[t]he Food Stamp Act is silent as to the standard a plaintiff must satisfy to establish irreparable injury." Nowhere does the court in *Phany Poeng* state that a sworn affidavit does not constitute "objective and reasonable documentary evidence." *Id*. at 1143. Nor does the case state whether the plaintiff submitted an affidavit regarding his likely business losses absent a preliminary injunction. Similarly, *Junel Food Center Corp. v. United States*, 1997 WL 634175, at *2 (S.D.N.Y. 1997) cannot stand for the proposition that an affidavit is insufficient documentation to establish irreparable harm as (1) the opinion does not indicate whether the plaintiff submitted an affidavit; and (2) the plaintiff in that case did not indicate the percentage of revenue derived from food stamps, and thus business to be lost by disqualification, a key fact for meeting the irreparable injury showing. *See, e.g., Lazaro*, 186 F. Supp. 2d at 1214 (loss of 40.5% of business); *Castillo*, 989 F. Supp. at 417 (loss of 45% and representation that store will be forced to cease operation); *Kim v. United States,* 822 F. Supp. at 107, 110-11 (E.D.N.Y. 1993) (30% loss and same representation). *See also World Duty Free Americas*, 94 F. Supp. at 67 (29% loss, with other facts, sufficient to constitute irreparable harm).

Furthermore, the government argues that Affum's estimation that 90-95% of her sales derive from food stamps is inflated based on her application for food stamp authorization in which she estimated her annual revenues at $650,000 compared to the $19,106 in food stamp benefits redeemed during the month of October 2006. Affum has no idea where the government obtained this figure. But any revenue estimate by Affum was just that, an estimate. She did not

8

have the "opportunity to accurately report earnings from a full year at that point." *Lazaro*, 186 F. Supp. 2d at 1213. As the government used the actual food stamp benefits redeemed in the month of October 2006, it is "proper and consistent" for the government to use Asafo Market's actual annual revenue to determine the percentage of sales derived from food stamp benefits. *Id.* The government's failure to do so is compounded by the government's use of a one-month snapshot of Affum's revenue derived from food stamp redemption to extrapolate Affum's annual food stamp redemption revenues.[2] In addition, any annual total of food stamp benefit purchases is likely to be an under-estimation of the annual revenue derived from food stamps, as it cannot capture the purchase with cash of non-eligible items by food stamp patrons. Nor can it account for food stamp customers who begin using the store out of habit even when not purchasing items with food stamps.

Lastly, the government argues that the fact Affum has managed to keep her business open during the four months since her disqualification somehow indicates she will not be irreparably harmed by the denial of preliminary injunctive relief. Opp. at 25. By this reasoning, in order for a plaintiff to demonstrate irreparable harm, she must *already* be out of business. In addition to reading into the Food Stamp Act a requirement for some form of documentary evidence beyond a sworn affidavit to show irreparable harm, the government has now added another element: disqualification from the program must drive a plaintiff out of business in less than four months.

**B. Affum Has Demonstrated a Likelihood of Success on the Merits.**

The government gets it exactly wrong when it says that "Affum has the burden of showing by a preponderance of the evidence that the violations did not occur." Opp. at 12. The

---

[2] Affum assumes that this is the government's intent in citing only one month of food stamp revenue to compare to Affum's estimated annual revenue, though this calculation was not performed.

9

government goes on to discuss an alleged split of authority regarding the standard of review of administrative action in Food Stamp Act cases. This point is a red herring, as there is no standard of review or deference owed in the pure questions of law posed by Affum's claims. It is hard to tell if the government is serious or being disingenuous. Affum admitted at the administrative level that the violations occurred and has so admitted in her complaint and motion papers. The issues to be resolved by the court are: (1) whether the regulatory scheme is contrary to the enabling legislation of the Food Stamp Act; (2) whether the regulations are arbitrary and capricious; and (3) whether the regulations violate Affum's substantive due process rights. These issues are those as to which Affum must, and does, demonstrate a likelihood of success.

### 1. The Regulations Are in Direct Conflict with the Food Stamp Act.

To qualify for a civil money penalty under the Food Stamp Act, a store owner must provide "substantial evidence" of an "effective policy" for preventing violations. 7 U.S.C. § 2021(b)(3)(B). "Substantial evidence" is a flexible standard intentionally chosen by Congress to provide the agency with sufficient latitude to determine, on a case-by-case basis, whether a store owner has in place an effective policy for that store. "Substantial evidence" in administrative law constitutes more than a "mere scintilla" but less than a preponderance. *Wisconsin Power & Light Co. v. FERC*, 363 F.3d 453, 461 (D.C. Cir. 2004). The Secretary's regulations ratchet that standard up to something akin to the criminal law standard of beyond a reasonable doubt. This construction obliterates the flexibility and eliminates the discretion Congress required the Secretary to exercise in determining an innocent store owner's eligibility for a civil money penalty.

Once again, none of the cases cited by the government address this point. The government primarily relies on *Thabit v. United States Department of Agric.,* 2003 WL 1798302 (N.D. Cal. 2003), *Traficanti v. United States,* 227 F.3d 170 (N.D. Cal. 2003), and *Kim v. United*

10

*States*, 121 F.3d 1269 (9th Cir. 1997). These cases, however, merely apply the regulations and find, unsurprisingly, that the small store owners did not satisfy the rigid criteria required by the regulations in contravention of the statute. Similarly, the government misses the point by noting that some courts have applied the regulations without "hinting" that they are contrary to the statute. Opp. at 19. This point is unremarkable as the issue was not raised in those, or in many other, cases.

The government also mischaracterizes *Ghattas v. United States*, 40 F.3d 281 (8th Cir. 1994). In that case, like Affum's, the Secretary applied his stringent and, the Eighth Circuit found, unfair regulations to reject the store owner's request for a civil money penalty. *Id.* at 286. The court found the Secretary had used his regulations "to abdicate [his] responsibility to exercise the discretion Congress has delegated." *Id.* at 287.

Affum agrees wholeheartedly with the government when it notes that the statute gives the Secretary "discretion to impose a civil money penalty" where the store owner provides "substantial evidence . . . [of] an effective policy" to prevent violations. Opp. at 20. Indeed, this is precisely Affum's point. The statute requires the Secretary to *exercise* his discretion, not abdicate it through promulgation of a maze of stringent criteria buried in pages of legalese. The government points to three cases to show that the Secretary at times has granted civil money penalties in place of permanent disqualification: *Corder v. United States*, 107 F.3d 595, 596 (8th Cir. 1997), *Freedman v. United States Department of Agriculture*, 926 F.2d 252, 254 (3rd Cir. 1991), and *Vasudeva v. United States*, 214 F.3d 1155, 1157-58 (9th Cir. 2000). But the store owners in two of these cases, *Corder* and *Vasudeva*, owned stores that were part of the 7-Eleven chain and thus had access to the vast resources, including in-house counsel, of a nationwide retail empire to create, and likely mass-produce, a policy and materials that satisfy the regulations'

11

criteria. The third case, *Freedman*, was decided *before* the regulations at issue even were promulgated. If anything, the government's cases support Affum's point: contrary to the statute, the regulations divest the Secretary of any discretion in applying what should be the flexible substantial evidence standard, creating "effective policy" requirements that only a large franchise outfit such as 7-Eleven can satisfy. Contrary to both the statute and plain legislative intent, the Secretary's regulations sealed Affum's fate before she ever entered the administrative review process. No discretion was used here.

### 2. The Regulations Are Arbitrary and Capricious Because They Fail to Consider the Impact on Small Stores.

Affum, the owner of a small store with only one part-time employee and certainly no legal counsel, had no hope of satisfying the agency's inflated substantial evidence standard. This unlikelihood is rendered a virtual impossibility by the fact that the Secretary hides the ball by failing to inform its applicants of the requirements of an "effective policy" and training regimen under his regulations. Providing a small store owner with seventy pages of fine-print requiring a law degree and several hours to decipher unfairly impacts small stores that are unlikely to have, or even know they need, legal help. The Secretary's glossy brochure and video do not describe or even mention the onerous criteria that the Secretary will use to put small store owners out of business. As the Eighth Circuit noted in *Ghattas*, "[t]hese elaborate requirements may be appropriate to measure the compliance efforts of a two-hundred-store supermarket chain . . . [but] seem unsuitable for a one-clerk store in a low income trade area." 40 F.3d at 285.

Affum has provided "substantial evidence" of her "effective policy" in the form of the training she provided her sole employee, as described to the FNS officer-in-charge and corroborated by Affum's sworn affidavit submitted in these proceedings. As Affum's case demonstrates, the regulations effectively ensure that a small store will never qualify for a civil

money penalty. Defendants cite *Corder* and *Freedman* as contrary examples but, in fact, both cases support Affum's point. In *Corder*, as discussed above, the plaintiff owned a 7-Eleven franchise store, far from a mom-and-pop store devoid of legal resources to translate the regulations' labyrinth of requirements in to an "effective policy." 107 F.3d at 596. *Freedman*, on the other hand, involved a small store owner who indeed was granted a civil money penalty in lieu of permanent disqualification based on substantial evidence of an effective policy *in the form of affidavits* describing the training given employees on food stamp processing and redemption. *Freedman*, 926 F.2d at 254. This decision was rendered, however, *before* the challenged regulations became effective. Notably, under the terms of the statute, the court in that case found statements and affidavits describing the training employees received sufficient to satisfy the "substantial evidence" standard provided by Congress. It was not until the agency abdicated its discretion by promulgating excessively rigid effective policy criteria that small store owners found themselves at an unfair disadvantage.

The government's assertion that small store owners "should have an easier time" meeting the agency's stringent regulatory scheme is ludicrous. Opp. at 20. The government may have had a point if the Secretary made any effort to communicate, in layman's terms, the requirements of the regulations. Holding a small store owner accountable for 70 pages of obtuse legal text is unreasonable and unfair. A large chain may have more employees for whom to document compliance with the regulations' excessively rigid requirements, but it has the tools to do so. Moreover, the government cites only to the agency's "Store Contact Record" (A.R. 1-9), to prove that Affum received "information about how to train employees" and about "the potential penalties for trafficking." Opp. at 21 n.4. In fact, the Store Contact Record bolsters Affum's contention that the agency failed to inform her that she must satisfy certain criteria in order to be

13

eligible for a civil money penalty. The term "Civil Money Penalty" does not even appear on the Store Contact Record, reflecting the agency's hostility toward the civil money penalty. *See Ghattas*, 40 F.3d at 284. As the *Ahmed* court held, "[t]he proof necessary to establish such a program is onerous and unrealistic when applied to a small business with only one or two employees." 47 F. Supp. 2d at 397. The regulations are rendered arbitrary and capricious by their failure to "consider an important aspect of the problem," namely their impact on small stores like Asafo Market.[3] *Ghattas*, 40 F.3d at 286 (quoting *Motor Vehicles Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

### 3. The Regulations Are Violative of Affum's Substantive Due Process Rights.

The agency's regulations are not "sufficiently keyed to any legitimate state interests" and are characterized by "grave unfairness" because they are contrary to the statute and discriminate against small store owners. *Washington Teachers' Union Local No. Ct. al. 6 v. Board of Educ. of District of Columbia*, 109 F.3d 774, 781 (D.C. Cir. 1997); *Tri County Indus., Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997). Consistent in its approach, the government does not respond to the argument made by Affum on this point either. Instead, the government recites a litany of cases related to store owners' strict liability for trafficking, whether they are innocent or not. Opp. at 22. These cases are irrelevant, as Affum is not contesting the violation, nor is she claiming her status as an innocent owner affords her protection from disqualification for the acts of her employee. The "effective policy" criteria established by the regulations are gravely unfair and thus violative of Affum's substantive due process rights because they contradict the

---

[3] The mere fact that regulations' preamble mentions small stores and notes that the Committee report does not differentiate between large and small stores, Opp. at 21, does not immunize the regulatory scheme from arbitrary and capricious review. Although the preamble pays lip service to small stores' "eligibility for a civil money penalty", the promulgation of regulations contrary to the Food Stamp Act, in practice, has precluded small stores like Affum's from qualifying for the civil money penalty in lieu of disqualification.

plain meaning of the statute by artificially raising "substantial evidence" from more than a "mere scintilla" to absolute proof beyond a reasonable doubt. In so doing, the regulations frustrate congressional intent by effectively stripping the Secretary of the discretion mandated by Congress. The end result is discrimination against the small store owner.

Furthermore, were Affum to be deemed eligible for a civil money penalty, her constitutional rights would again be trammeled upon as the method by which the agency calculates the penalty to be paid utilizes a "a series of arithmetic multipliers designed . . . to guarantee that nearly every *unknowing first offender* will incur the statutory maximum [$54,000] penalty." *Corder*, 107 F.3d at 598. This is in clear contravention of the congressional intent to make "the punishment more closely fit the crime." H.R. Rep. No. 100-828, at 28 (1988). The government's only response to this argument is to argue that it is inappropriate for adjudication because Affum was deemed ineligible for a civil money penalty. If Affum is successful in her challenge to the validity of the agency's disqualification regulations and, instead, is afforded a civil money penalty, Affum, the government, and the Court will be right back at square one with a new complaint filed in opposition to the excessive civil money penalty. In the interests of judicial economy, Affum's substantive due process challenge to the civil money penalty calculation should be considered alongside her challenge to the effective policy criteria and the regulatory scheme as a whole.

### C. The Government Will Suffer No Harm and the Public Interest Will Be Served by the Granting of the Requested Injunctive Relief.

In place of demonstrating that a preliminary injunction granted to Affum will somehow harm the United States, the government waxes on about the obvious and irrelevant policy goals behind the efforts to end food stamp trafficking in the United States. None of this policy discourse demonstrates how a stay of execution for Asafo Market will harm the United States.

15

Affum is an innocent owner and the agency itself has treated her as such. If she were not an innocent owner, the agency would not have engaged in its analysis to determine whether she is ineligible for a civil money penalty. The employee responsible for the violations is no longer in Affum's employ, and Affum runs the store herself. There is no reason to believe that, after fighting for the life of her store and experiencing the unfair administrative "review" process, Affum will now decide to commit violations herself. The government cannot credibly assert that the United States or food stamp recipients nationwide will be harmed by the continued existence of Asafo Market during the course of this litigation. Enforcing invalid regulations that impermissibly divest the Secretary of the discretion he is required by Congress to exercise is not in the public interest, particularly where such enforcement is tantamount to a death sentence for a small business run by an innocent owner in Northeast D.C., an area that, despite Defendants' seeming assertion to the contrary, remains chronically-underserved.[4]  Opp. at 23 n.7.

## CONCLUSION

For all the foregoing reasons, this Court should issue a stay pursuant to 7 U.S.C. § 2023(a)(17) and/or a preliminary injunction pursuant to Rule 65 and Local Rule 65.1.

     /s/ Charles B. Wayne
Charles B. Wayne (#935858)
DLA Piper US LLP
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 (fax)

*Counsel for Plaintiff*

---

[4]  The government appears to confuse Affum's entirely valid characterization of Northeast Washington, D.C. as "underserved" with a hardship showing, one that Affum is not required by the statute or regulations to make.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day 10th of April, 2008, I caused Plaintiff's Reply Memorandum in Support of Plaintiff's Application for Stay of Administrative Action and for Preliminary Injunction to be served, by the Court's electronic case filing system, on:

> Harry B. Roback
> Assistant U.S. Attorney
> Civil Division
> 501 Third Street, N.W.
> Washington, D.C.  20530


    /s/  Charles B. Wayne
Charles B. Wayne