UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **PHILOMENA AFFUM** d/b/a Asafo Market, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-300 (RCL) |
| **UNITED STATES OF AMERICA,** *et al.* | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Now before the Court comes plaintiff's application [6] for stay of administrative action and for preliminary injunction. This Court held a hearing on the motion on April 18, 2008. Upon full consideration of the application, defendants' opposition brief, the reply, oral argument, the entire record herein, and applicable law, this Court finds that plaintiff's application will be DENIED for the reasons set forth below.

## I.   BACKGROUND

Plaintiff Philomena Affum owns and operates a small food store in the District of Columbia called Asafo Market. (*See* Compl. ¶ 8.) Asafo Market participates in the federal Food Stamp Program, and according to plaintiff, ninety to ninety-five percent of the store's revenues are derived from food stamp benefits. (*See id.* ¶ 9.) At some point, plaintiff hired a part-time employee to assist with operations at the store. (*See id.* ¶ 8.) On two occasions in early 2007, this employee—apparently unbeknownst to plaintiff—gave a total of $30 cash to an undercover agent in exchange for food stamps; such action constitutes the offense of "trafficking" and is

sanctionable under 7 U.S.C. § 2021. (*See id.* ¶ 11.) Plaintiff's employee also sold ineligible items to an undercover agent in violation of 7 C.F.R. § 278.2(a) on six occasions. (*See id.*)

On October 10, 2007, the Food and Nutrition Service ("FNS") notified plaintiff that her store would be subject to a six-month disqualification for selling ineligible items and was being considered for permanent disqualification from the Food Stamp Program for the trafficking offense committed by her employee. (*See* Ltr. from FNS to Affum (Oct. 10, 2007), Ex. 2 to Application at 1, 3.) Upon receipt of this letter, plaintiff met with an FNS officer on November 5. Plaintiff informed the officer that she had provided training to her employee such that the employee knew that trafficking and accepting food stamps for ineligible items were prohibited. (*See* Compl. ¶ 33.) On November 14, 2007, the FNS regional office decided that plaintiff would be permanently disqualified from the Food Stamp Program in accordance with section 278.6 of the food stamp regulations. (*See* Ltr. from FNS to Affum (Nov. 14, 2007), Ex. 4 to Application at 1.) FNS determined that plaintiff was not eligible for an alternative civil monetary penalty because she "failed to submit sufficient evidence to demonstrate that [her business] had established and implemented an effective compliance program to prevent violations of the Food Stamp Program." (*Id.*) Consequently, plaintiff's disqualification began on November 16, 2007. (Admin. R. at 62.)

Plaintiff requested a review of the FNS regional office's decision by the FNS Administrative Review Branch. On review, plaintiff explained by letter that the employee "who was responsible for this great error was informed from the very beginning that the [electronic food stamp benefits were] strictly for use with food items only and nothing else" and that the employee did not "truly understand the importance of adhering to this rule." (*See* Ltr. from

Affum to FNS (Dec. 26, 2007), Ex. 7 to Application at 1.)  The administrative review officer affirmed both the regional office's findings and the sanction of permanent disqualification.  (*See* Final Agency Decision (Jan. 22, 2008), Ex. 8 to Application)

Plaintiff now seeks injunctive relief from this Court because she contends that the FNS's action was based on regulations that are contrary to the Food Stamp Act, are arbitrary and capricious, and violate the Fifth Amendment.

## II.     ANALYSIS

### A.     Applicable Law

#### 1.     Standard of Review: Preliminary Injunction

Plaintiff asks this Court to issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, and asks for a stay of administrative action pursuant to 7 U.S.C. § 2023(a)(17).  To demonstrate entitlement to a preliminary injunction, a litigant must show: "1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction."  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995);  *see Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (explaining the four factors).  No one factor is determinative and the Court should balance a movant's showings regarding the four factors on a sliding scale.  *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998); *CityFed Fin. Corp.*, 58 F.3d at 747 ("If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.").  Granting

injunctive relief is an "extraordinary and drastic remedy," and it is the movant's obligation to justify, *"by a clear showing,"* the court's use of such a measure. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).

When considering a motion to stay agency action, courts generally employ the same four-factor standard used in motions for preliminary injunction. *Compare Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (applying four-factor standard in a preliminary injunction case), *with Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam) (applying same standard in a motion to stay case). However, the Food Stamp Act provides that a court may temporarily stay administrative action pending trial upon consideration of only two factors: (1) the likelihood of prevailing on the merits and (2) irreparable injury.[1]  *See* 7 U.S.C. § 2023(a)(17).

---

[1] Defendants, pointing to 7 U.S.C. § 2023(a)(18) and 7 C.F.R. § 279.7(d), contend that a stay of agency action is not available in cases where store owners have been permanently disqualified from participating in the Food Stamp Program. (*See* Opp. at 8.) Section 2023(a)(18) states that permanent disqualification is "effective from the date of receipt of the notice of disqualification" and that if disqualification is later reversed, "the Secretary shall not be liable for the value of any sales lost during the disqualification period." 7 U.S.C. § 2023(a)(18). Such language does not appear to encroach upon the Court's authority to consider an application for stay. *See Lazaro v. USDA*, 186 F. Supp. 2d 1203, 1210–12 (M.D. Fla. 2001). Yet, agency-promulgated regulations indicate that permanent disqualifications imposed in response to trafficking violations are not subject to stays of administrative action. *See* 7 C.F.R. § 279.7(d). Congress may not have intended to prohibit courts from staying agency action, an indication that the agency's regulation would not be entitled to this Court's deference. Yet, such a finding is not necessary here because plaintiff today asks the Court to find that the food stamp regulations that govern qualification for a civil monetary penalty are invalid. The question of whether those regulations are contrary to statute, arbitrary and capricious, or violate the Due Process Clause are issues where the Court surely retains the power to issue injunctive relief.

For an in-depth discussion of congressional intent as to a court's power to stay administrative action when a store owner is permanently disqualified from the Food Stamp Program and whether the agency regulation in this area should be given deference, see *Lazaro*, 186 F. Supp. 2d at 1208–12.

## 2. Statutory and Regulatory Framework

Congress enacted the Food Stamp Program to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power" such that participants could obtain eligible food items in exchange for food stamps at participating stores. 7 U.S.C. § 2011; *see* 7 U.S.C. § 2013. The Food Stamp Act prohibits stores from accepting food stamps for ineligible items and from trafficking—that is exchanging food stamp benefits for cash. *See* 7 U.S.C. § 2021(b)(3)(B). For a first offense of selling ineligible items by a poorly supervised employee, a store may be subject to a maximum disqualification of six months. *See* 7 C.F.R. § 278.6(e)(5). However, the penalty for a first trafficking offense is permanent disqualification,

> except that the *Secretary shall have the discretion* to impose a civil monetary penalty of up to $20,000 for each violation . . . in lieu of disqualification under this subparagraph, for such purchase of coupons or trafficking in coupons or cards . . . if the Secretary determines that there is *substantial evidence* that such store or food concern had an *effective policy and program* in effect to prevent violations of the chapter and the regulations, including evidence that—
>
> > (i) the ownership of the store or food concern was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; and
> >
> > (ii) (I) the management of the store or food concern was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; or
> >
> > (II) the management was aware of, approved of, benefitted from, or was involved in the conduct of no more than 1 previous violation by the store or food concern;

7 U.S.C. § 2021(b)(3)(B) (emphasis added). The statute's requirement of "substantial evidence" of an effective policy and program means that an owner must put forth "more than a 'scintilla,' but less than a preponderance of the evidence." *Wis. Power & Light Co. v. FERC*, 363 F.3d 453,

461 (D.C. Cir. 2004) (citing *Burns v. Director, Office of Workers Comp. Programs*, 41 F.3d 1555, 1562 n. 10 (D.C. Cir. 1994)).

      The Secretary of Agriculture (the "Secretary") interpreted the civil monetary penalty statute by promulgating 7 C.F.R. § 278.6(i), which contains the criteria that the agency uses to determine if a store is eligible for a civil monetary penalty in lieu of permanent disqualification for trafficking.  Under this regulation, "FNS *may* impose a civil monetary penalty . . . if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program." 7 C.F.R. 278.6(i) (emphasis added).  Furthermore, under the regulations, "the firm shall, at a minimum, establish by substantial evidence its fulfilment" of four criteria.  *Id.*  First, the store must have an effective compliance policy.  To determine whether a store has an effective compliance policy, FNS considers "written and dated statements of firm policy which reflect a commitment to ensure" compliance.  *Id.* § 278.6(i)(1).  Second, a store must establish that its policy and program were in operation prior to the alleged violations.  *Id.* § 278.6(i).  This requirement is fulfilled "only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation." *Id.*  Third, the store must have developed and instituted an effective personnel training program which must be documented "by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s)."  *Id.* §§ 278.6(i), 278.6(i)(2).  Finally, firm ownership must not have been involved in the violation.  *Id.* § 278.6(i).

### B. Preliminary Injunction Factors

#### 1. Likelihood of Success on the Merits

Plaintiff asks this Court to enjoin operation of 7 C.F.R. § 278.6(i) on three bases: (1) that it is in direct conflict with the Food Stamp Act; (2) that the regulation is arbitrary and capricious because the Secretary failed to consider the negative impact that it would have on small store owners; and, (3) that the regulation violates plaintiff's Fifth Amendment Due Process rights. For the reasons explained below, the Court determines that plaintiff's suit has no likelihood of success on the merits.

##### a. Plaintiff's Compliance with Statutory Requirements

Before reaching plaintiff's challenge to the agency's regulations, the Court first looks to whether plaintiff has complied with the statutory language governing eligibility for a civil monetary penalty. The only evidence that plaintiff cites in her favor is her own affidavit stating that her "store employee had been trained and that the employee knew that it was prohibited to (a) exchange cash for food stamp benefits; and (b) to accept food stamp benefits for ineligible items." (Affum Aff. ¶ 4.) Plaintiff does not refute defendants' claim that she provided no other documentation that would tend to establish that her store had the requisite effective compliance policy and program. (*See* Opp. at 6.) Plaintiff's affidavit alone cannot be sufficient under the statute because "[s]tore owners cannot simply attest to having effective antifraud programs; rather they must prove it." *Traficanti v. United States*, 227 F.3d 170, 175 (4th Cir. 2000). If a store owner's affidavit were sufficient, then all store owners would simply declare that they had told their employees that trafficking was prohibited, and all owners would be eligible for a civil monetary penalty. This result cannot be that which Congress intended. It thus must be the case

that failure to submit any additional proof ensures that permanent disqualification is mandated by statute. *See id.* In such situations, store owners have not provided the requisite "substantial evidence" of an effective policy and program, and allowing for a civil monetary penalty in lieu of disqualification would be contrary to the statute. *See Kim v. United States*, 121 F.3d 1269, 1276 (9th Cir. 1997) (noting that a civil monetary penalty cannot be permitted as a penalty for trafficking violations where the store did not have an effective policy and program). For this reason, the statute confers no discretion upon the Secretary in plaintiff's case and mandates that plaintiff be permanently disqualified from the Food Stamp Program.

The Court notes the harshness of the sanction imposed on plaintiff in this case but also recognizes that Congress imposed such a penalty in an effort to deter widespread fraud in food stamp transactions. *See Traficanti*, 227 F.3d at 177. Congress placed the burden on store owners to prevent fraud because they were in the best position to do so. *See id.* Owners like plaintiff Affum who do not show that they have effective anti-fraud programs in place when they or their employees commit trafficking violations are thus mandatorily disqualified from the Food Stamp Program. *See id.*

      **b.**  **Plaintiff's Lack of Standing to Challenge Regulatory Scheme**

Having determined that plaintiff has not met the statutory standard set forth in 7 U.S.C. § 2021(b)(3)(B), the Court has no occasion to entertain her claim that the relevant regulations are contrary to the statute, arbitrary and capricious, and violate Due Process. Assuming arguendo that the regulations did suffer from one or more of these deficiencies, plaintiff would have no

standing to challenge them because they inflict no redressable injury upon her.[2] *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732–33 (D.C. Cir. 2003) (stating that to establish standing, plaintiffs must allege injury-in-fact, causation, and redressability); *see also Spencer v. Kemma*, 523 U.S. 1, 7 (1998) (noting that plaintiffs must establish an injury "likely to be redressed by a favorable judicial decision") (citation omitted).  Regardless of whether the regulations are enforceable, the statute itself, which plaintiff does not challenge, inflicts the injury upon plaintiff of which she complains.  Hence, plaintiff has no standing to assert her challenge to the Secretary's regulations and she has virtually no likelihood of success on the merits of such a claim.

### 2.     **Irreparable Injury**

Irreparable harm is a high standard wherein the alleged injury must be "certain and great" and "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  However, "economic loss may constitute irreparable harm where

---

[2] The Eighth Circuit has found that the regulations' "elaborate requirements may be appropriate to measure the compliance efforts of a two-hundred-store supermarket chain.  They seem unsuitable for a one-clerk store in a low income trade area." *Ghattas v. United States*, 40 F.3d 281, 285 (8th Cir. 1994).  That court also labeled the regulations as "virtually unsatisfiable" and found that the Secretary's compliance with the statute had been "grudging, at best" *See id.* at 285 n.5, 287.  Today, this Court has no occasion to comment on the Eighth Circuit's decision because the Court has determined as a matter of law that plaintiff's declaration that she told her employee not to traffic food stamps cannot be sufficient to qualify for a civil monetary penalty.  If a small store owner were to come forward with more evidence than her own declaration but not so much evidence that she satisfied the regulations' elaborate requirements, this Court would then properly inquire into the validity of the Secretary's regulations as they pertain to small owners.  Here, plaintiff Affum's complete lack of evidence of policies, procedures, and training makes such an inquiry unnecessary today.

the loss threatens the very existence of the movant's business . . . ." *World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 67 (D.D.C. 2000) (Lamberth, J.) (citing *Wis. Gas Co.*, 758 F.2d at 674). This Court has previously found that a loss of approximately one-third of a plaintiff's overall business was sufficient for a finding of irreparable injury. *Id.*

According to plaintiff, at least ninety percent of Asafo Market's gross receipts are from food stamps, the store has operated at a significant loss while disqualified from the program, and permanent disqualification will force her out of business. (*See* Affum Aff. ¶ 3.) Defendants respond that an unsubstantiated affidavit stating that a store owner will be driven out of business absent injunctive relief is insufficient to constitute irreparable harm.[3] Neither party points to law in this Circuit regarding whether an affidavit may substantiate a claim of irreparable injury in this context, and the case law does not appear clear on the issue. *Compare Young Jin Choi v. United States*, 944 F. Supp. 323, 326 n.2 (S.D.N.Y. 1996) (finding irreparable harm based on an affidavit stating that plaintiff would lose forty percent of his business if disqualified from the Food Stamp Program), *with Phany Poeng v. United States*, 167 F. Supp. 2d 1136, 1143 (S.D. Cal. 2001) (requiring objective and reasonable documentary evidence beyond plaintiff's mere assertion that he would lose fifty percent of his business while barred from the Food Stamp Program). In any event, even if this Court were to disregard plaintiff's affidavit as it pertains to the percentage of sales derived from food stamps, the Court would still find that plaintiff's

---

[3] In fact, defendants submit data to the Court indicating that plaintiff had at one point stated that her annual sales were approximately $650,000 (*See* Admin. R. at 6.) and that in the month of October 2006 her sales were $19,106. (*See id.* at 12.) Defendants use this data over a limited time period to raise the possibility that Asafo Market's revenue derived from food stamps may account for far less than ninety percent of gross revenues—perhaps for as little as twenty-nine percent of revenues.

disqualification subjects her to some irreparable harm. Defendants do not appear to contest the fact that plaintiff derives a significant amount—at a minimum twenty-nine percent—of her business from food stamps, a quantity that would still be adequate to find irreparable harm. Further, as plaintiff's reply brief points out, Asafo Market's true harm is likely greater than its raw percentage of food stamp sales because food stamp patrons likely purchase non-eligible products with cash at the same time as they make their food stamp purchases.

Defendants also contend that plaintiff's two month gap between the conclusion of administrative review and seeking injunctive relief is a delay that demonstrates that irreparable harm was not imminent. *Cf. Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 178 (2d Cir. 2000) (determining that a plaintiff's lack of urgency following denial of injunctive relief may confirm that irreparable injury was not imminent). The Court disagrees. In this case, the two-month gap is reasonable and entirely consistent with plaintiff's acting swiftly to gain a decision from this Court. The timing of plaintiff's application for relief left this Court with adequate time to rule prior to May 16, 2008, the date when plaintiff's independent six-month disqualification for selling ineligible items for food stamps ends, and the first date that the Court's relief would be of any benefit to plaintiff.

The Court concludes that plaintiff will suffer some degree of irreparable harm in the absence of injunctive relief.

### 3.     Government Harm and the Public Interest

Plaintiff asserts that an injunction will inflict no harm on defendants because the offending employee no longer works at Asafo Market and there is no reason to believe that plaintiff would commit another violation while this litigation remains pending. While it may be

true that the government would have no need for concern about a future violation while this suit is pending, the government has an interest in deterring food stamp trafficking. *See Abdelaziz v. United States*, 837 F.2d 95, 98 (2d Cir. 1988) (noting that Congress has repeatedly expressed its concern that trafficking undermines the Food Stamp Program's goals). Congress implemented a strict liability scheme for first-time traffickers, a scheme which would be partially thwarted if it became known that owners could have access to injunctive relief if they simply swore that they had told their employees that trafficking was prohibited. Thus, the factor of harm to other parties weighs against granting injunctive relief.

Plaintiff additionally argues that the public has an interest in the continued existence of a store that serves a chronically under-served area of the District of Columbia. Although the importance of Asafo Market's role in serving its community is far from clear,[4] the Court accepts that there is a public interest in serving an under-served community. Nonetheless, the Court sees a far greater public interest in enforcing compliance with food stamp trafficking legislation. Food stamp trafficking costs the public as much as $1 billion each year. *See* H.R. REP. No. 104-651, at 68–69 (1996). And, Congress, recognizing that trafficking harms needy food stamp recipients, has implemented a strict regime aimed at increasing compliance and ultimately assisting those members of the public whom the program serves. In light of the questionable extent of the public interest in Asafo Market's service to its community and the strong public interest in deterring fraud within the Food Stamp Program, the Court finds that the factor of public interest weighs against granting plaintiff's requested injunction.

---

[4] FNS data indicates that there are at least sixty other retail stores within a one-mile radius of Asafo Market that accept food stamps. (*See* Opp. at 23 n.7.)

### C. Balance of Factors Weighs Against Preliminary Injunction

Having balanced the abovementioned four factors, the Court finds that they weigh against granting injunctive relief in favor of plaintiff. The only factor in plaintiff's favor—irreparable harm—is insufficient to overcome plaintiff's extremely small likelihood of success on the merits and the harm to both the government and public interest that an injunction would entail.[5] Because plaintiff has not made the requisite clear showing of entitlement to injunctive relief, the Court must refrain from granting the extraordinary and drastic remedy which plaintiff seeks.

## III. CONCLUSION

For the reasons set forth in this Opinion, the Court concludes that plaintiff Philomena Affum's application for stay of administrative action and for preliminary injunction shall be DENIED.

A separate order shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on May 7, 2008.

---

[5] If this Court were to employ the 7 U.S.C. § 2023(a)(17) standard for stay of administrative action, which looks only to the factors of likelihood of success and irreparable injury, the Court would still deny plaintiff's application for stay. When balancing the remote likelihood of success on the merits with the infliction of some irreparable injury, in this case the Court would find that the balance of the factors weighs against entitlement to extraordinary relief in the form of a stay of agency action.