UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ <br> PHILOMENA AFFUM <br> d/b/a Asafo Market, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA <br> and ED SCHAFER, <br><br> Defendants. <br> _____ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 08-300 (RCL) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>NOTICE OF FILING</u>

The Clerk will please file the attached transcript of the April 18, 2008 preliminary injunction hearing before the Honorable Royce C. Lamberth.

Respectfully submitted,

   /s/   _____
Charles B. Wayne (#935858)
DLA Piper US LLP
500 8th Street, N.W.
Washington, D.C.  20004
(202) 799-4000
(202) 799-5000 (fax)

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day 19th of June, 2008, I caused Plaintiff's Notice of Filing to

be served by the Court's electronic case filing system on:

Harry B. Roback
Assistant U.S. Attorney
Civil Division
501 Third Street, N.W.
Washington, D.C.  20530


＿＿/s/＿＿＿＿＿＿＿＿＿＿＿＿＿
Charles B. Wayne

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILOMENA AFFUM
d/b/a Asafo Market,

        Plaintiff,

      vs.

UNITED STATES OF AMERICA and
ED SCHAFER,

      Defendants.

CA No. 08-300
Washington, DC
April 18, 2008
3:45 p.m.

TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:

CHARLES WAYNE, ESQUIRE
DLA Piper US, LLP
500 8th Street, NW
Washington, DC  20004
(202) 799-4253

For the Defendant:

HARRY ROBACK, ESQUIRE
U.S. Attorney's Office
Civil Division
555 Fourth Street, NW
Washington, DC  20530
(202) 616-5309

Court Reporter:

Lisa M. Hand, RPR
Official Court Reporter
U.S. Courthouse, Room 6706
333 Constitution Avenue, NW
Washington, DC  20001
(202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                    P R O C E E D I N G S

2           COURTROOM DEPUTY:  Civil 08-300, Philomena Affum

3    versus United States of America, et al.  Mr. Wayne, for the

4    plaintiff and Mr. Roback for the defendant.

5           THE COURT:  All right.  Mr. Wayne, you may proceed

6    with your Motion for Preliminary Injunction.

7           MR. WAYNE:  Thank you, Your Honor.  Your Honor, Ms.

8    Affum under the statutory regime is what's called an innocent

9    owner.  That is someone who, without liability of her own, was

10   ill-served by an employee who trafficked in food stamps.  In

11   this case the trafficking was perhaps the most benign example,

12   that is, just giving cash back much like somebody would give

13   cash back on a bank card -- a regular bank card in a grocery

14   store, but that is prohibited under the law and it constitutes

15   trafficking.  Even though the employee had been told not to do

16   that and also told not to accept food stamps for ineligible

17   items, the employee did both of those things.  But we're here

18   primarily on the -- I guess solely on the trafficking charge.

19          And as Your Honor notes from having looked at the

20   briefs, that the punishment for trafficking is permanent

21   disqualification from the Food Stamp Program unless the

22   retailer qualifies for a -- what's called a civil money

23   penalty.  And Ms. Affum and others like her, that is, other

24   small store owners, we argue to the Court, are precluded from

25   the very beginning from qualifying for that civil money

1   penalty because of the regulations promulgated by the

2   Secretary of Agriculture that we say are directly contrary to

3   the enabling legislation, are arbitrary and capricious and

4   also violated her substantive due process rights.

5          Very briefly, Your Honor, and if Your Honor has

6   read the briefs, Your Honor has seen the history of the Food

7   Stamp Act in this regard.  But from 1982 to 1988 the only

8   punishment available for trafficking was permanent

9   disqualification.  There developed a split in the circuits

10   which -- some of the -- one side said there was such a thing

11   as an innocent owner defense.  In 1988 and 1990 Congress

12   passed legislation, passed the amendments to the Food Stamp

13   Act that essentially eliminated the innocent owner defense,

14   but in exchange gave the Secretary discretion, and this is in

15   the legislative history, and intended to give the Secretary of

16   Agriculture discretion to impose a civil money penalty on a

17   retailer, an innocent owner, that is, a retailer that did no

18   wrong, but nonetheless trafficking occurred in that store.

19   And allowed the Secretary to impose a civil money penalty,

20   that is a fine, in lieu of permanent disqualification if there

21   was -- and this is in the language of the statute --

22   substantial evidence that there was an effective policy in

23   place to deter such conduct.

24          And from the legislative history it's clear that

25   the Congressional intent was to give the Secretary discretion

1   and assure that the punishment would better fit the crime, was

2   the language of the House report.  The regulations that were

3   promulgated in 1990, however, effectively -- by the

4   Secretary -- effectively deprived him of that discretion and

5   that's why they're unlawful.  And it deprived the Secretary of

6   that discretion because it set up, as we argue to the Court in

7   the briefs, rigid criteria for eligibility for this civil

8   money penalty.  Rigid criteria, which is at odds with the

9   concept of substantial evidence, which in the administrative

10  law context means, as decisions by this circuit have stated,

11  more than a scintilla but less than a preponderance of the

12  evidence.

13          So, what we have here are four or five requirements

14  that must be met or it's determined there is no substantial

15  evidence.  And these requirements are unyielding, and it's

16  because of these requirements set forth in the regulations,

17  and these requirements are contrary to the enabling

18  legislation.  Those requirements, being among them, A, you

19  must have a written policy, you must have training curriculum,

20  you must have dated contemporaneous records of the training of

21  the employees.  And if you don't have these things, you cannot

22  have substantial -- you cannot satisfy the substantial

23  evidence standard as defined by the Secretary, regardless of

24  what you show.

25          The Eighth Circuit has held that -- in the Ghattas

1  case, which we cited to the Court -- that the Secretary is

2  hostile to the civil money penalty, as shown by the

3  regulations, and as in fact abdicated his responsibility to

4  exercise discretion.  And the regulations that Court held,

5  again, in the Ghattas case, were contrary to both the 1988 and

6  1990 amendments.

7          And as we've cited to the Court, and I don't need

8  to cite to Your Honor now, Courts don't hesitate to strike

9  down regulations at odds with enabling legislation,

10  particularly where there is a definition at issue.  And we

11  cite a number of those indications to the Court on Page 19 of

12  our initial brief.

13          In addition --

14          THE COURT:  Walk me through the language of the

15  statute that the regs are, you say, violating.

16          MR. WAYNE:  Sure.

17          THE COURT:  And where is that statutory link?

18          MR. WAYNE:  That would be -- one second, Your

19  Honor.  That would be at Page 4 of our initial brief, Your

20  Honor.  If Your Honor is there, that's 7 U.S.C. Section 2021

21  (b)(3)(B).

22          THE COURT:  Right.  If the Secretary determines

23  that there's substantial evidence at such store or food

24  concern, had an effective policy and program in effect to

25  prevent violations.  All right.  So, how would his regulatory

1  definition of what substantial evidence is violate that

2  statutory provision, which gives him the discretion to decide

3  what's substantial evidence.

4          MR. WAYNE:   The point is that the very definition

5  removes all discretion because there are -- rather than saying

6  substantial evidence may be shown, and may be shown by X, Y,

7  or Z.   In fact, what the regulations do is say there are four

8  or five things that must be shown, and if you don't have these

9  things you cannot have substantial evidence.   Those are listed

10  first on Page 6 in one form of our brief, but I think it is

11  bulleted on Page 17 of our initial brief, Your Honor.   And

12  those would be --

13          THE COURT:   -- written dated policy.

14          MR. WAYNE:   Exactly, dated training curriculum.

15  Now, there's a couple things wrong with this.   If you don't

16  have these things, you cannot -- you can never show that --

17  you can never satisfy the substantial evidence standard.   So,

18  in that sense, forget the size of the store, forget anything

19  else.   This definition clearly is at odds with the flexible

20  concept of substantial evidence that's in the statute.   And,

21  again, as this Circuit and as Courts in this Circuit have

22  recognized, substantial evidence means more than an scintilla,

23  more than a preponderance.   And the way these are applied --

24  first of all, the way the statute reads, you must have these

25  things, and this is the way they are applied.   You must have

1    these or you cannot satisfy the substantial evidence standard

2    and you are not eligible for a civil money penalty.

3             THE COURT:   What is the substantial evidence that

4    you would rely on here?

5             MR. WAYNE:   In this case, this gets to the size of

6    the store issue.   There's a fundamental unfairness here, Your

7    Honor, and the fundamental unfairness is that there's

8    absolutely no notification to the retailer that this is --

9    that this is what the game is.   They didn't used to even give

10   them the regulations, now they give them the regulations when

11   they come into the program.   Well, it's 70 pages from the

12   C.F.R.   Unless you're Safeway, unless you're Giant, unless

13   you're 7-11, you can't figure this out.

14            In addition, there's a brochure that they give, you

15   know, a glossy brochure.   The glossy brochure doesn't mention

16   any of this.   There's a video on the website.   The video on

17   the website mentions none of this, it's absolutely unfair.   To

18   say what is this substantial evidence that we would say, here

19   Ms. Affum, who is with us here at counsel table, Ms. Affum

20   told the officer in charge what you would expect someone in

21   her position to tell the officer in charge, which is, I told

22   the employee, you know, not to give cash back.   I told the

23   employee not to sell the benefits.   I told the employee only

24   to -- again, the eligible items, which is really to one side.

25   But that's what she did.   That's all she would know to do, and

1    that's what she knew to do.  There was nothing -- all this

2    other stuff -- she would need a lawyer in order to take her

3    through this.  A lawyer in order to develop the materials for

4    her.  And the Secretary doesn't give them -- it's not like

5    they are materials that the Secretary provides and she ignored

6    them, there are no materials.

7         And I would note with regard to the lawyer point,

8    Your Honor, ordinarily this wouldn't be relevant, but

9    obviously I feel a need to point out we're doing this case pro

10   bono.  She is not somebody of means who can afford what this

11   type of representation costs, obviously, and I figured the

12   Court probably knew that but --

13        THE COURT:  Much less you.

14        MR. WAYNE:  Much less me, correct.

15        THE COURT:  Sorry, I couldn't resist.

16        MR. WAYNE:  That's all right.  I'll be sure to take

17   that back.  In any event, that is why that sort of -- that

18   gets into the point why the regulations are arbitrary and

19   capricious because they discriminate against small stores.

20   And, again, that is what the Ghattas court found.

21        THE COURT:  Walk me through that holding -- the

22   actual holding there.

23        MR. WAYNE:  If you look on Page 8 of our brief.

24        THE COURT:  All right.  Not 8.

25        MR. WAYNE:  Sorry.  Page 20, sorry.

1          THE COURT:  Okay.

2          MR. WAYNE:  The first paragraph, it's sort of the

3   guts of the Ghattas holding is, is that these elaborate

4   requirements, and we're talking about what I was speaking

5   about a moment ago.

6          THE COURT:  Go ahead.

7          MR. WAYNE:  May be appropriate to measure the

8   compliance efforts of a 200-store supermarket chain.  And I

9   would note in the Government's brief they point out -- they

10  give an example of a couple of cases where a civil money

11  penalty was imposed and a civil money penalty -- in two of

12  those cases those store owners owned a 7-11.  And, yes, we

13  would know that a 7-11 chain would provide to its franchisees

14  what they would need in order to qualify.  And that's a

15  perfect example, even though that might look like a little

16  neighborhood store, it's part of a huge chain, and they have a

17  big general counsel's office, I'm sure something that Ms.

18  Affum did not have.

19          So, there's a fundamental unfairness there, and

20  that goes to the heart of our arbitrary and capricious

21  argument.  As well as -- the very similar would be the Fifth

22  Amendment argument, Your Honor, that her substantive due

23  process rights are violated by that.  There is a separate

24  point with regard to the civil money penalty computation which

25  the Government says Your Honor shouldn't decide.  That has to

1    do with the fact that even if you do qualify for the civil

2    money penalty, the system is rigged so that every unknowing

3    first offender, that is, every innocent owner who is an

4    offender pays the maximum, and the maximum now is $54,000

5    because of the way they have the formulas set up.  And we

6    would say that is ripe for Your Honor's decision as well.

7            And, again, the Eighth Circuit, another Eighth

8    Circuit case has held those regulations to be arbitrary and

9    capricious and contrary to statute.  That is the regulations

10   governing the computation of the civil money penalty.  With

11   regard to -- we believe we satisfied the other elements of the

12   preliminary injunction standard proceeding under Rule 65.  The

13   Government spent some time saying that we couldn't proceed

14   under the Food Stamp Act, we believe we can for the reasons

15   stated in our brief.  We certainly can proceed under Rule 65,

16   there's nothing to prohibit that.  In fact, I don't think we

17   needed to proceed under the Food Stamp Act at all, but I

18   wanted to -- because I'm sure the Government would say in

19   response that we needed to proceed under the Food Stamp Act or

20   had to.

21           So, we proceeded under both, we're permitted to

22   proceed under both, and the standards are essentially the same

23   under both, and we believe Ms. Affum is entitled to a

24   preliminary injunction putting her back in the program --

25           THE COURT:  And when does something happen?  What

1    is this May 16th date?  How does that effect us?

2              MR. WAYNE:  There was something in the statute

3    years ago, in the scheme years ago, there was an automatic

4    stay pending administrator review.  They eliminated that in

5    the late 80s -- or in the 80s.  So, she's been out for five

6    months.  She's been permanently disqualified for five months.

7    Based on the initial administrative decision, she's out as of

8    that date, and the machine was removed from her store as of

9    that date.  The six months -- she also is serving concurrently

10   a six month suspension for the sale of ineligible items.  Her

11   clerk also used -- accepted food stamp benefits for items that

12   were not eligible, that was a six month penalty.  That six

13   months is up on May 18th.

14             THE COURT:  That's what's up May 18th.

15             MR. WAYNE:  So, she's out of the program,

16   admittedly, until May 18th, but this motion is not premature,

17   although the Government argues that is such.  If Your Honor

18   would rule, the relief simply would kick in on -- on May 16th,

19   rather.

20             THE COURT:  Right.  The urgency of my ruling is not

21   today?

22             MR. WAYNE:  That is correct, Your Honor.  Your

23   Honor has time.

24             THE COURT:  Okay.  All right.  Thank you,

25   Mr. Wayne.

1          MR. WAYNE:  Thank you, Your Honor.

2          THE COURT:  Mr. Roback.

3          MR. ROBACK:  Thank you, Your Honor.  Your Honor,

4    the United States believes that it has addressed all of the

5    arguments that Mr. Wayne has raised here today as well as in

6    his brief and his opposition and would rely principally on

7    that.  However, there are a few additional points that I want

8    to make and emphasize.  The first is that as the Court just

9    recognized, to the extent that Ms. Affum is seeking an order

10   requiring the United States Department of Agriculture to

11   permit her back into the Food Stamp Program immediately.

12          THE COURT:  Wouldn't be effective until May 16th.

13          MR. ROBACK:  It would not be effective until

14   May 16th.  The second thing is Ms. Affum has spent

15   considerable time today as well as her entire brief arguing

16   that the regulations promulgated by the Secretary are

17   inconsistent with the statute.  But in the Government's view

18   there's a threshold question that Ms. Affum would have to meet

19   in order to be entitled to the civil money penalty.  And that

20   is, as the Fourth Circuit held in Traficanti, she has to meet

21   the statutory requirements itself, regardless of whether she

22   would also meet the standard set forth in the regulation.  In

23   order to be entitled to a civil money penalty as opposed to

24   being permanently disqualified from the Food Stamp Program,

25   she has to meet the requirements set forth in the statute.

1   The requirements set forth in the statute under 7 U.S.C. 2021

2   is that the Secretary has to or must disqualify Ms. Affum

3   permanently, even on the first instance of a trafficking

4   offense, unless, in the Secretary's discretion, the Secretary

5   determines that there's substantial evidence that Ms. Affum

6   had an effective policy and program in place at the time of

7   the violation to combat trafficking.

8          In this case, as in Traficanti, which is a recent

9   Fourth Circuit decision, which we believe is on all fours with

10  the case presented here.  The Fourth Circuit held that a store

11  owner has to prove that they had an -- under the statute -- an

12  effective program and policy in place at the time of the

13  violation.  The store owner cannot merely assert that they had

14  one, they have the present evidence that they did.  And this

15  rule makes good sense because under the scheme set forth by

16  Congress in the Food Stamp Act, Congress recognized that

17  nearly a billion dollars annually in food stamp benefits does

18  not go towards recipients receiving the food that they deserve

19  and need, but rather it's exchanged for cash or for other

20  ineligible items.

21         Congress decided to enact a remedial scheme under

22  which the risk of disqualification is put on the store owner

23  precisely so that the store owner will take the necessary

24  means to ensure that trafficking does not occur.  Because the

25  store owner, Your Honor, is in the best position to do that.

1    In this case, Ms. Affum's only evidence --

2         THE COURT:  Before you get to this case, in

3    Traficanti, what was the policy that the store owner was

4    arguing was effective?

5         MR. ROBACK:  Essentially, the store owner argued

6    that informing the employee, although the Fourth Circuit

7    decision is not -- does not discuss at length what the store

8    owner claims that he had done.  The store owner appears to

9    argue, as Ms. Affum does here, that he had informed the

10   employee not to exchange food stamp benefits for cash, and the

11   employee nevertheless did so.  And in that case I believe the

12   employee did so specifically to get back at -- she had an

13   argument with the owner and she trafficked in the food stamp

14   benefits to essentially get back at the owner.

15        In that case, the Fourth Circuit held that while

16   under the statute and the regulations the store owner could

17   qualify for a CMP, he did not, because he did not present

18   sufficient evidence under either the statute or the

19   regulations promulgated by the Secretary to show that he had

20   an effective training policy in effect at the time.  And so

21   here --

22        THE COURT:  Was that a store owner of like one

23   store and two employees, or what was it in Traficanti?

24        MR. ROBACK:  (No response).

25        THE COURT:  That's okay, I'll reread it.

1          MR. ROBACK:  Your Honor, I don't recall how many

2     employees there were.  I think that there were more than one,

3     but I don't think that it was a national chain, I'm not

4     certain on that, but it does not appear at a minimum that the

5     owner in that case --

6          THE COURT:  So, that's why you think it's so

7     similar to this?

8          MR. ROBACK:  That's correct.  But also the

9     Government believes that -- well, without diverting from the

10    statutory requirement.  If what Ms. Affum has presented in

11    this case, that is to say, a declaration saying, I told my

12    employee not to engage in trafficking but she did it anyway.

13    If that is sufficient to satisfy the statutory requirement

14    then essentially the entire remedial scheme set up by Congress

15    and implemented by the Department of Agriculture would be

16    rendered null.  A store owner could always come in after the

17    fact, claim that they had told the employee not to engage in

18    trafficking but the employee did.

19          In those circumstances it would essentially

20    turn the scheme set up by Congress on its head.  Instead of

21    having permanent disqualification be the norm, and the civil

22    money penalty be the exception, it would make the civil

23    penalty money the norm and permanent disqualification be only

24    applicable when a store owner cannot even come forward and say

25    that they told the employee not to engage in trafficking.  In

1   light of the specific findings of Congress and the agency
2   regarding the significant harm attributed to trafficking each
3   year, not to mention the considerable and scarce -- not to
4   mention the scarce resources that are being diverted from
5   individuals who qualified for food stamp benefits under the
6   program, we don't think that that result would be just or
7   proper.
8          Leaving aside the statutory requirements, we also I
9   guess have two additional points to make.  One is, we think
10  that Ms. Affum has it exactly backwards when she says that the
11  small stores are treated unfairly under the regulations and
12  that it's harder for them to qualify for the CMP.  As an
13  initial matter, the record specifically shows that small,
14  large and medium size stores have all qualified for civil
15  money penalties over the last several years.  That is set
16  forth in the declaration from Andrea Gold that is submitted
17  along with the Government's brief in this case.
18         Second, there is several cases that the plaintiff
19  herself cites where small stores and large stores receive
20  civil money penalties under the regulatory scheme set forth by
21  the Department of Agriculture.  If Ms. Affum is correct in
22  that the regulatory scheme has unyielding requirements that no
23  one can ever meet, the courts -- or the agency in those cases
24  would not have concluded that a CMP was appropriate.  In that
25  regard, I would specifically direct the Court's attention to

1   the Vasudeva case out of the Ninth Circuit, which recognized

2   that not only in that case had the Department of Agriculture

3   exercised its discretion on a case-by-case basis to conclude

4   that the plaintiff qualified for a CMP, but that that's

5   precisely how the Department of Agriculture makes these

6   determinations in each case.  In this case Ms. Affum had one

7   employee that she should have trained.  As far as the record

8   is concerned, the only evidence we have regarding the

9   training -- or that she provided, was her own statement that

10  she had told the employee not to engage in trafficking.

11          THE COURT:  Nothing from the employee?

12          MR. ROBACK:  Nothing from the employee.  Which I

13  note that in some cases the plaintiffs were able to present

14  affidavits or declarations from the employees that

15  specifically set forth what the employees had been told.  No

16  such declaration has been submitted in this case.  But in

17  terms of the regulations and being consistent with the

18  statute, Your Honor, we think that they plainly are, and here

19  is why.  The statute specifically -- the statute specifies

20  that an employee or that a store owner has to have an

21  effective policy and program in effect.  Now, plaintiff has

22  focused her attention on what substantial evidence -- showing

23  that there is one.  But as a pure definitional matter, we

24  think it's within the Secretary's broad discretion to

25  determine just what is an effective policy and program.  And

1    in this case, both before issuing the final regulation, the

2    Secretary addressed the requirement of having written

3    documentation showing the training.  And the Secretary

4    specifically concluded that it was important to have

5    documentation.  That it was important for a store owner to

6    have documentation, precisely, because otherwise it would be

7    impossible for the Secretary to exercise her discretion

8    because in each case a person would come forward and say, as

9    Ms. Affum has here, I told my employee not to do it, but they

10   nevertheless did.  In terms of the --

11            THE COURT:  Is the Eighth Circuit wrong or is it

12   distinguishable?

13            MR. ROBACK:  I think Your Honor -- the Government's

14   position would be both.  But specifically in terms of

15   distinguishing the case here, I think it's important to

16   recognize what the Eighth Circuit held in Ghattas.  The Eighth

17   Circuit did not hold that the regulations themselves are

18   contrary to the statute, or hold that in that particular case

19   the store owner had met the statutory requirements or the

20   regulatory requirements.

21            Rather, if you look at the last page of the

22   opinion, it says, and I quote:  The FNS have refused, and this

23   is italicized in the opinion, refused to consider Ghattas'

24   subsequent contention that he is an innocent store owner who

25   warrants a lesser sanction under the 1988 and 1990 amendments.

1   By these rulings the agency has improperly applied as

2   procedural regulations to abdicate its responsibility to

3   exercise the discretion Congress has delegated.  Closed quote.

4            That is to say in Ghattas, the Eighth Circuit ruled

5   that the Secretary never exercised any discretion because the

6   Secretary did not even consider the store owner -- consider

7   whether the store owner was eligible for the civil money

8   penalty.  In this case the Secretary specifically did consider

9   whether Ms. Affum was eligible for a CMP.  And concluded that

10  under the statutory and regulatory scheme set up by Congress

11  and the agency, she had failed to provide sufficient evidence

12  that she had an effective training policy and program in

13  effect at the time the employee engaged in trafficking.

14            So, we think that this Court does not have to

15  disagree with -- in ruling in the Government's favor, does not

16  have to disagree with the Eighth Circuit.  We think that the

17  case is simply distinguishable because this case does not

18  involve a situation where the agency has refused to exercise

19  the discretion afforded it by the statute.

20            If the Court does not have any other questions --

21  well, actually there's one additional point I want to make.

22  Ms. Affum in her reply brief, as well as here, contends that

23  she was never informed of what the penalties were and was

24  never provided with any evidence -- was never informed of what

25  those penalties could be or ways in which she could meet the

1   statutory and regulatory requirements.  We know that ignorance

2   of the law is generally not an excuse to what the

3   repercussions could be for violating it.  But in this case

4   I'll direct the Court's attention to Page 9 of the

5   administrative record in which the document -- Ms. Affum's

6   application for entry into the Food Stamp Program, which she

7   was able to complete without the assistance of counsel.

8          In that on Page 9 it specifically says that she

9   recognizes or that she not only accepts responsibility on

10  behalf of the firm for violations of the Food Stamp Act --

11  Food Stamp Program regulations, including those committed by

12  any employee of her firm.  But it also acknowledges that she's

13  aware that the violations of the program can result in fines,

14  legal sanctions, withdraw or disqualification from the Food

15  Stamp Program.

16         Moreover, Your Honor, I'll direct the Court's

17  attention of Page 2 -- Pages 1 and 2 of the administrative

18  record where it appears as though at the time Ms. Affum was

19  permitted to enter into the Food Stamp Program that she was

20  made aware of -- this is on Page 1, all rules and regulations

21  regarding the sale of ineligible items as well as trafficking.

22         So, in this case, Your Honor, we think that she

23  should have been aware of the regulatory and statutory

24  requirements and ensured that her employee did not violate

25  them.  To the extent she believes she's entitled to a civil

1    money penalty in lieu of permanent disqualification, then

2    prior to -- prior to permitting the employee to work, she

3    should -- and accept money from the Food Stamp Program, she

4    should have developed an effective training policy and

5    program.  But by her affidavit by itself it does not appear

6    that she did so.

7            THE COURT:  What would have told her that she had

8    to have a training policy and procedure?

9            MR. ROBACK:  I think that the regulations

10   themselves would plainly --

11           THE COURT:  The 70 pages he was talking about?

12           MR. ROBACK:  I think it would not only have been

13   included in there, but I think the statute itself would say

14   that.  And on Page 1 of the administrative record it says that

15   all rules and regulations have been gone over with Ms. Affum.

16   But I will note that the regulations are not new, they have

17   been in effect since -- for more than 15 years.  And so to the

18   extent Ms. Affum believes that the Government should have done

19   something more to inform her about its training program, I

20   think the Government's position is that to the extent that

21   she's able to fill out the application herself to enter the

22   program and on a monthly basis she's able to accept thousands

23   of dollars in food stamp benefits, that she should have been

24   able to -- if she's able to do those things, she should be

25   able to apprise herself of what the requirements of the

1   program are, including the need to effectively train her

2   employees -- or employee, to be precise.

3            THE COURT:  All right.

4            MR. WAYNE:  Your Honor, to answer Your Honor's last

5   question.  The requirements for the training program and the

6   requirement for the dated curricula, the records, all that,

7   there's only one place and it's in the regs, and that's 70

8   pages from the C.F.R., and that's what they give these people.

9   Now, the -- and that's it.  And that's what the nub of this is

10  about.  There's an axiom in the law that adequate notice or

11  proper notice is that which is intended to notify.

12           And there's absolutely no intent here on the part

13  of the Secretary to notify these retailers of what the game

14  is.  And, like I said, the 7-11's of the world and the

15  Safeways of the world, they know.  But if you're opening a

16  store, a neighborhood store in a poor neighborhood and you're

17  going to take food stamps, you're not going to know.  And I

18  don't think it's unfair to say that the Secretary likes it

19  that way, because I've been -- this is the -- I had the first

20  case of this type 10 years ago and nothing has changed.  The

21  regs have been in place for 15 years, that's exactly right,

22  nothing has changed.  There is no intent to notify here.  The

23  glossy brochure, the video on the web, none of that contains

24  the information you need in order to qualify for the civil

25  money penalty.

1           Your Honor had a question about the Traficanti

2     case.  Yes, that is a small store.  Yes, if you read that

3     case, yes, we think that the Fourth Circuit decided it

4     wrongly, but arguments were not made in that case that are

5     being made here, which is, there is a prejudice inherent in

6     these regulations against small store owners that cannot be

7     surmounted.

8           With regard to --

9           THE COURT:  How would the store owner just telling

10    the employee, don't do it, ever meet that statutory test?

11          MR. WAYNE:  Thank you, Your Honor, I wanted to get

12    to that point.  What we want here, we think the regulations

13    should be struck down as contrary to the statute as arbitrary

14    and capricious.  They should come up with --

15          THE COURT:  Before you get to the reg, though, if

16    you just take the statutory --

17          MR. WAYNE:  The statute that I --

18          THE COURT:  The Secretary has discretion under the

19    statutory wording to decide if there's substantial evidence

20    that the store owner had an effective policy and program.

21          MR. WAYNE:  I hear Your Honor, and I apologize to

22    the court reporter.

23          THE COURT:  It's okay.

24          MR. WAYNE:  The answer to that question is, under

25    the current regime, which is the Secretary's own creation,

1   which is that -- and the Secretary pursuant to that statute,

2   the Secretary is supposed to implement that statute.  The

3   implementation is faulty, the implementation is flawed.

4           THE COURT:  Because the Secretary hasn't decided

5   that exact question.

6           MR. WAYNE:  That's correct.  And, in fact, hasn't

7   decided -- hasn't given these people the tools with which to

8   begin to comply.  So, when I said in my first argument that,

9   you know, here is our evidence.  Ms. Affum told the -- as she

10  told the officer in charge, I told my employee not to do it.

11  I told her what the rules were.  What else do we expect?

12  That's all she could do.  That's all any small store owner

13  could do.  I mean, this isn't a surprise.  This isn't

14  deficient, this is compliance, as best as they can comply.

15          My only other point would be that Mr. Roback said

16  that there were three cases where the civil money penalty was

17  given to a small store owner, I alluded to two of those.  The

18  two of those that he mentioned were 7-11 owners, and the third

19  is a case called Freedman that was -- that dealt with a period

20  of time before these regulations even became permanent.  And a

21  reading of that case reveals that they weren't applying these

22  regulations.  In fact, they were doing something in Freedman

23  as accepting affidavits from the store owner and listening to

24  the explanation of the store owner that should be more like

25  something the Secretary should be doing here rather than

1    applying the rigid criteria.

2              If Your Honor has no further questions, we will

3    rest on our points.

4              THE COURT:  Thank you.

5              MR. WAYNE:  Thank you.

6              THE COURT:  All right.  The case is submitted, I'll

7    rule as promptly as I can.  Thank you all very much for coming

8    down today.

9    END OF PROCEEDINGS AT 4:25 P.M.

10

11

12

13                    C E R T I F I C A T E

14              I, Lisa M. Hand, RPR, certify that the

15    foregoing is a correct transcript from the record of

16    proceedings in the above-titled matter.

17

18

19

20    _____

21    Lisa M. Hand, RPR

22

23

24

25